IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN GREEN, JR., father on behalf of
ALEXANDER GREEN

        Plaintiff,

V.                                                C.A. NO. 04-920 KAJ

CAPE HENLOPEN SCHOOL DISTRICT, ET AL

        Defendants,

**REPLY TO DEFENDANTS' MOTION TO DISMISS
And REQUEST FOR OTHER RELIEF**

        Now comes, John Green, Jr., father on behalf of the minor child Alexander Green, pro se and responds as follows;

        Delaware is a small state who's Department of Education appears to be scared to death of unfunded federal mandates and a state legislature that has economically been overly generous to disabled children and fears the education system would be bankrupted if children were given the rights promised by the State and Federal Legislatures. Virtually all school districts in Delaware are represented by the Morris James law firm. There is effectively no parent education law bar or public interest law firms as in most other states. Delaware is the only state in the country where the state Supreme Court has found that parent advocates, as provided in IDEA (the individuals with disabilities education act 20 USC 1401 et seq) are engaging in the unauthorized practice of law at Due Process Hearings, accordingly there are none in Delaware. Delaware is one of the few states where the State Department of education has a direct economic interest in the outcomes

1

of IDEA due process hearings (the state legislature requires them to fund 70% of costs for private placement and the special education children are often, as in this case, educated at a joint venture consortium with the state. In Delaware the people who have the most to economically loose pick the "judges" on a per case basis. The "Judges" are not education lawyers and since on average there are only 2 IDEA Due Process decisions a year in Delaware and a big panel the "judges" have no on the job training. Since the parents and "judges" don't know the law and there are effectively no lawyers or advocates to ask, the Morris James firm gets to tell everyone what the law is and they regularly and intentionally misstate the law as it applies in Delaware and go unchallenged (a parent cannot even effectively look up the law. The Delaware Due Process decisions are locked in a file cabinet at the Department of Education and in violation of federal law not distributed, except to LRP publishers who *may* publish them in their, for parents, prohibit ably expensive services. Non lawyer citizens are prohibited from using the County Bar Library. Education Law publications are not available in the general libraries. Educational law material is not even available in this courts own library). The State Department of Education and the Morris James firm have been emboldened by the Hayes decision (their exhibit C, Civ.A. 02-55-SLR) their summary of argument states "Because parents cannot represent their minor children in proceedings before the federal courts in the third circuit, the complaint should be dismissed". If the Defendants are right and there is no appeal for a parent, especially one without deep pockets, there is no need to give them even the pretext of procedural due process or fundamental fairness at Due Process hearings. This is what is happening and it is a fundamental violation of both the parent's and child's civil rights.

The Plaintiff further states:

1. This case involves the procedural due process in deciding the appropriate services and educational placement of a child now 15 years old that all parties agree is disabled and entitled to the services provided by IDEA and the State Education Law.
2. There is no dispute that the child suffers from a pervasive development disorder called Asperger's.
3. There is also no dispute that the child suffers from AD/HD and Specific Learning Disability.
4. There are other additional disorders that may be in dispute.
5. There is no dispute that the Child has at least normal intelligence.
6. There is no dispute that the child does not have autism.
7. There is no dispute that the child was placed in a "life Skills" autism program at the Sussex Consortium for 7th and 8th grade.
8. There is no dispute that "Life Skills" amount to going to McDonalds and Kmart and learning how to buy things and take care of yourself, including brushing your teeth and doing the dishes.
9. There is no dispute that the child remained in the Sussex Consortium Autism program in the 9th grade.
10. The Sussex consortium is a "non graded" program
11. In the 7th 8th and 9th grade the child was taught primarily by a teacher with only a elementary school special education certification.

12. This past fall the child was finally reassigned to the regular high school. He was given a full schedule of 10th grade college prep courses and appropriate service modifications by the regular education teachers on their own. He had a 90 gpa for the fall term (even though he was effectively denied any meaningful middle school education). The same services where withheld this semester and the grades are near failure.

13. During the IEP (individual lesson plan) meetings held at the school the father asked that the recommendations of the treating psychologist and John Hopkins Kennedy Krieger Institute be adopted and that the child receive the services which the Third Circuit has subsequently found appropriate for Aspergers children (H.W. et al v. Highland Park Bd. of Ed. (2004). These requests were ignored.

14. Father will at trial demonstrate over 100 procedural violations of IDEA which contributed to the denying the child a free and appropriate public education. All of which were ignored by the Due Process panel.

15. IDEA grants the parent the right to represent their child at the IEP and the Due Process hearing.

16. The appeal from the Due Process hearing is to this honorable court and that is why we are here today.

17. The father agrees that he is not competent to represent the Child. The father's mental capacity is severely impaired, due to a head injury. He has for the last 10 years received total disability for this injury and his license to practice law in Maryland is suspended. But if he does not who will?

4

18. The School District alone has spent $100,000.00 in legal fees opposing services for Alex.

19. The State of Delaware has assigned two assistant attorney generals to oppose services for Alex.

20. The father lives on a $2,000.00 a month disability check and has two other children in college he is unable to hire legal counsel to defend this action even if it were available.

21. The father has made numerous inquires and could only find an attorney (assuming he could have some how found the money to pay the retainer out of state and was asked to find a local council which he could not).

22. The father was unable to even hire a non lawyer advocate as provided for in IDEA because the Delaware Supreme Court in the Arnes case (the only state in the nation to do so) has found that being represented by an advocate at Due Process is the unauthorized practice of law..

23. If Alex had committed a petty crime he would have been assigned a public defender, however where the state expends over $100,000.00 in legal fees fighting his educational services, which effect his whole life, he is denied any representation. The court should find this a violation of basis fairness and the denial of equal protection under the law.

24. The father asks that this court appoint effective legal counsel to protect the Childs' rights.

25. Absent the appointing of counsel, the father asks that he be allow to proceed at least to the procedural and civil rights violations of the rights of

5

both the parent and child in as much as even an ineffective representation is better than no representation at all.

26. The father at trial will show an intentional pattern of the individual parties involved to act outside their official capacities to deny both the father and the child the rights afforded to them by Federal and State Law.

27. The mother was approached by the District's attorney with an offer of free legal services if she would cooperate to have the State Court remove the fathers parental rights thereby stopping the Due Process Action. This is a clear attempt to violate the father and child's civil rights.

28. On filing the due process the father was approached by the counsel for the district who attempted to blackmail him with an incident more than 20 years old to get him to drop the Due Process Hearing, an intimidation in violation of the civil rights of the parent and child.

29. On filing the due process the father was approached by an assistant attorney general who threatened to have his taxes audited and the state police harass him if he did not drop the due process, an intimidation in violation of the civil rights of the parent and child.

30. The Due Process system itself is a sham in Delaware. The father will produce at trial a transcript of a recorded meeting of all panel members where they were told Delaware could not afford giving the services the federal law required.

31. The Due Process hearings in Delaware are heard by a three member panel appointed on a per case bases by the State Department of Education. If

Alex had been afforded the services requested the State Department of Education would be responsible for over $100,000.00 of the costs.

32. Panel members are well aware they serve at the pleasure of the State Department of Education and that if their decisions are not liked they will not be invited back.

33. The Legislature of Delaware enacted a law that in effect gives children with multiple disabilities the right to private placement. At trial the father will provide testimony that the staff of the Department of Education has stated if they allowed this they would be bankrupted.

34. In violation of the due process itself the attorney member held numerous "pre trial conferences" and excluded testimony and made findings without the other panel members. The attorney panel member specifically stated during one of these "pre trial conferences" that the State Law providing for private placement of multiple disabled children would not be considered and would not be allowed to even be raised.

35. IDEA provides for multiple disabilities as a classification of disability but the Delaware Regulations written by the Department of Education skips over this classification. The schools then argue that since there is no "multiple disability" classification in Delaware regulations, Delaware children can not be so classified; thereby denying them the federal classification and the rights afforded them under IDEA and the Delaware Code. A clear violation of the supremacy clause.

36. The transcript of the Due Process Hearing, a specified right under IDEA contains numerous omissions, including the entire testimony of Dr. Benson and the threatening of Dr. Cox by the Attorney panel member "that Johns Hopkins gets a lot of money as consultants from the Delaware Department of Education and how dare she testify against the Department of Education". Both Doctors will testify to these omissions. Numerous other threats and rulings of the attorney panel member failed to made it to the record. The reporter will be called to testify that she regularly was told to leave statements off the record. This violates the requirement of a transcript in IDEA. The actions of the panel attorney clearly indicate this hearing was not held as an informal evaluation of the needs of the child but as a threat that a parent wanted money from the state. The lack of a complete transcript prevents a trial on the record and requires a trial de novo.

37. The parent asked several times for discover and was told on the record that there was no discovery in due process hearings. Both the school district attorney and an assistant attorney general were present but no one told the parent that he was entitled to what he wanted just by sending a simple letter under the IDEA regulations directly to the school. The entire hearing was conducted with these highly procedural niceties with total disregard to the mandated informal requirement of the act and with no objective to arrive at what was best for the child. The failure to provide this disclosure severely hampered the hearing.

38. The parent was told by the panel attorney that he could present the testimony of the outside expert witnesses or the testimony of the school district employees but not both. This was a clear violation of due process and the panel attorney defended it is saying he had a right to limit the time of the hearing and Federal District Judges do it all the time.

39. The panel attorney after threats to not allow the calling of school district witnesses back to the stand as part of the parents case got the parent to agree to delay his cross examination to the witness was called in the parents case. The panel attorney then refused to allow the parent to call the witnesses back due to his using up time presenting expert testimony, thereby denying the parent the simple right to cross examine witnesses.

40. In the case of witnesses not being called by the parent in his case, when cross examination of the representative of the State Department of Education became embarrassing to the State the panel attorney denied the calling of the witness back to the stand the following day. This a direct violation of the right to cross-examine witnesses. Justified by the panel attorney that Federal Judges limit testimony all the time.

41. The pretrial hearing record will show that the panel attorney meeting without the other members of the panel made a ruling that No Child Left Behind the basis federal law on education does not apply to special education children and ordered no reference be made to it. This as a clear matter of law is not the case and shows the attorney panel member who

was advising the other panel members of the applicable law had no even minimal understanding of it himself. Rendering the hearing invalid.

42. The pretrial hearing record will show that the panel attorney meeting without the other members of the panel made a ruling that the Delaware Code was not applicable and ordered no reference be made to it. Preventing the parent from raising the multiple disability private placement provisions. This as a clear matter of law is not the case and shows the attorney panel member who was advising the other panel members of the applicable law had no even minimal understanding of it himself or was intentionally misconstruing the law. Rendering the hearing invalid.

43. Parent was denied full readable copies of much of the transcripts only being given multi page proofs denying him the basis provisions of IDEA.

44. The immunity of state officials applies only to the extent that they are lawfully operating within their positions and are not conspiring to deny Federally granted rights. In this case these officials were operation on the premise that they had a right to subvert the process to keep from bankrupting the State Department of Education due to "unfunded federal mandates" and well intentioned but economically irresponsible State Law. A fair hearing will show there was never any intention of allowing the Provisions of IDEA or the State Law to be applied. There had even been a meeting of the hearing panel members warning them of the "costs" and

these people were hired on a case by case basis by the state who ultimately would pay 70% + of the costs should services be granted.

45. Testimony will show that Alex's civil right of a free and appropriate public education were violated for economic reasons. The State Department of Education has since even amended its regulations to dictate that Asperger children are Autistic and are to be in the autism programs. This violated the core of IDEA that these decisions should be made individually especially when medically Aspergers is not Autism but they are both disabilities under the pervasive development spectrum. If a child rides a regular school bus the district gets a little over $400.00 a year if he rides a autism consortium bus the District gets over $4000.00 a year. Alex was put on a consortium bus which got him to school too late for first period (there are only 4 periods a day thus effectively costing his ¼ of his school day) for no other reason than the money.

46. Alex was damaged and his civil rights violated by placing him in a autism program (life skills) for children of minimal intelligence solely for the money (although the District refuses up to this last week disclosure father has reason to believe the benefit of inappropriate placement is in excess of $26,000.00 per year per child. The District did this, the State condoned it and encouraged it and the panel members intentionally looked the other way. This callus disregard for the welfare of the child puts the actions of the officials and employees outside the immunity protections

47. Through out the Due Process proceeding the panel attorney and Morris James attorneys played procedural games. Although ordered to do so Morris James did not provide the names of various District employees until after the due date set for witness lists, when the names were then provided the father was not allowed to call the witnesses because he had not included them on the witness list and was not allowed to amend the list. The attorney panel member forced the parent to drive for 6 hours to deliver pleadings and only after it was clear he was on the road, emailed him telling him he could put them in the mail. The hearings where held one day at a time over a long period and moved all over the county. It was try and find the hearing room if you can.

48. Despite being told by the father and his psychiatrist under oath that the father due to his brain injury could not be expected to function more than an hour and a half without a break or for more than 6 hours a day, the panel attorney insisted in 10 and 12 hour hearings thereby denying the child effective representation at the due process hearing and violation the father's rights under the American's with Disabilities Act.

Therefore:

Father asks;

1. That Defendant's motion be denied.
2. That the Court appoints an attorney to assist with Plaintiff's case at the expense of the School District and State Department of Education.

12

3. That the Plaintiff be granted a trial de novo.

4. That a pre trial conference be scheduled to set discovery periods and make any corrections or additions needed in pleadings.

5. That to avoid further damage to the child that the court order pending the final outcome of the case that the District in the interim fully implement the recommendations of Johns Hopkins – Kennedy Kreiger Institute and Dr. Borer treating psychiatrist. That the standards set out by the third circuit in H.W. et al v. Highland Bd. of Ed. be followed.

Dated May 13, 2005

John Green
414 Boxwood St.
Milton, DE 19968
302 542 7001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN GREEN, JR., father on behalf of
ALEXANDER GREEN

        Plaintiff,

V.                                                      C.A. NO. 04-920

CAPE HENLOPEN SCHOOL DISTRICT, ET AL

        Defendants,

## ORDER

**IT IS HEREBY ORDERED** this _____ day of _____, 2005 that the Defendant's Motion to Dismiss the Complaint is DENIED with prejudice.

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN GREEN, JR., father on behalf of
ALEXANDER GREEN

                Plaintiff,

V.                                                                                       C.A. NO. 04-920

CAPE HENLOPEN SCHOOL DISTRICT, ET AL

                Defendants,

## ORDER

**IT IS HEREBY ORDERED** this _____ day of _____,2005 that the Cape Henlopen School District shall within 7 days pay into the clerks office an amount equal to that paid in legal fees to oppose services to this child and that the Delaware Department of Justice shall pay in an amount equal to the number of hours of legal services expended on this matter times the billing rate of the School District's highest paid attorney. The Clerk shall use these funds to provide payment for an attorney to represent the child before this court.

                                                                 _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN GREEN, JR., father on behalf of
ALEXANDER GREEN

        Plaintiff,

V.                                                                                        C.A. NO. 04-920

CAPE HENLOPEN SCHOOL DISTRICT, ET AL

        Defendants,

## ORDER

**IT IS HEREBY ORDERED** this _____ day of _____,2005 that to avoid any further possible damage to the child beginning immediately and continuing to the final resolution of this matter that the standards set out by the Third Circuit in H.W. et al v. Highland Park Board of ED.(2004) be provided to this child. That is to say; Class size of 8 or less, one-on-one instruction offered in English, writing and math, a behavioral modification plan, a special education teacher and at least 2 paraprofessionals familiar with Aspergers.

**FURTHER ORDERED** that the recommendations of Johns Hopkins – Kennedy Krieger Institute (KKI) and the treating psychiatrist Dr. Bore shall be immediately incorporated in the child's Individual Education Plan and continue in the plan until final resolution of this matter. That is to say Classes taught by highly qualified subject certified High School teachers, class size less than 10, an outside behavioral psychologist (or clinical psychologist specializing in adolescent behavior to be contracted for 20 hours a week to observe, develop a behavioral plan and teach subject certified teachers to implement the plan, that follow up testing be scheduled at KKI.

_____

## CERTIFICATE OF SERVICE

I, John Green, hereby certify that on this 13th day of May 2005, two copies of the within **Reply to Defendants' Motion to Dismiss and Request for other Relief** and proposed **Order**'s were served by United States first class mail postage prepaid, on the following parties counsel of record at the addresses indicated below:

David H. Williams Esq.
Morris, James, Hitchens and Williams LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899

~~Louann Vari, Esq.~~ Craig Raymond Fitzgerald
Department of Justice
102 West Water Street
Dover, DE 19901

~~John B. Hindman, Esq.~~ Mary L. Cooke
Depart of Justice
102 West Water Street
Dover, DE 19901