IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN GREEN, JR.,                              )
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )          Civil Action No.  04-920 KAJ
                                             )
CAPE HENLOPEN SCHOOL DISTRICT,  )
MORRIS, JAMES, HITCHENS &          )
WILLIAMS LLP, JENNIFER BRIERLEY,  )
Esq., GARY R. SPRITZ, Esq., VICKI    )
MCGINLEY, NANCY HORTSMANN,        )
SECRETARY OF EDUCATION           )
VALERIE WOODRUFF, KRIS            )
BATTAGLINI, SHANNON PALMER        )
                                             )
                    Defendants.             )

## MEMORANDUM OPINION

---

John Green, Jr., 1 White Oak Road, Rehoboth Beach, Delaware 19971; Pro Se.

David H. Williams, Esq., Morris, James, Hitchens & Williams LLP, 222 Delaware Avenue, P.O. Box 2306, Wilmington, Delaware 19899; Counsel for Defendants The Cape Henlopen School District, Kris Battaglini, Shannon Palmer, Morris, James, Hitchens & Williams LLP, and Jennifer Brierley, Esq.

Louann Vari, Esq., Department of Justice, 102 West Water Street, Dover, Delaware 19901; Counsel for Defendants Secretary of Education Valerie S. Woodruff.

John B. Hindman, Esq., Department of Justice, 102 West Water Street, Dover, Delaware, 19901; Counsel for Defendants Gary R. Spritz, Esq., Dr. Vicki McGinley, and Nancy Horstman.

---

December 13, 2005
Wilmington, Delaware



JORDAN, District Judge

## I.    INTRODUCTION

Before me is a Motion to Dismiss (Docket Item ["D.I."] 7, the "Motion") filed by defendants Cape Henlopen School District (the "School District" or the "District"), Morris James, Hitchens, & Williams, LLP, Jennifer Brierley, Esq., Gary R. Spritz, Esq., Vicki McGinley, Nancy Hortsmann, Valerie Woodruff, Kris Battaglini, and Shannon Palmer (collectively, "Defendants"). Also before me is a motion by plaintiff John Green, Jr. ("Green") requesting court appointed counsel for his son (the "Motion for Representation").[1] (D.I. 12 at 12, ¶ 2.) In his complaint, Green alleges, on behalf of his son, violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et. seq., (D.I. 1 at ¶¶ 4-5, 12), as well as violations of his son's civil rights (D.I. 1 at ¶¶ 1-2, 13, 15-17), a conspiracy to violate his son's civil rights (D.I. 1 at ¶ 18), and violations of his own rights to procedural due process. (D.I. 1 at ¶¶ 6-9). Jurisdiction is appropriate under 28 U.S.C. § 1331.

For the reasons that follow, the Defendants' Motion will be denied to the extent that Green's claims regarding his own procedural due process rights can proceed. That Motion will be granted in all other respects, the remainder of the claims being dismissed without prejudice. Additionally, Green's Motion for Representation will be denied.

---

[1] Green makes a request in his response to Defendants' Motion that "[t]he Court appoints an attorney to assist with Plaintiff's case at the expense of the School District and the State Department of Education." (D.I. 12 at 12, ¶ 2.) I construe that request as a Motion for Representation.

## II.    BACKGROUND

Green, a pro se litigant, brings this action alleging violations of IDEA.[2]  He

requests that the District provide accommodations for his son, A.G.,[3] at a mainstream

school.[4]  (D.I. 12 at 13, ¶ 5.)  A.G. has Asperger's Syndrome, a pervasive

developmental disorder on the same spectrum of developmental disorders as autism.

(Id. at 3, ¶ 2; Id. at 11, ¶ 45.)  Pursuant to the District's current educational plan, A.G. is

assigned to a "life skills" program for children suffering from autism.  (Id. at 11, ¶ 46.)

In December 2003, Green filed a request for an administrative due process

hearing (the "Administrative Hearing")[5] with the Secretary of the Delaware Department

of Education, claiming that the District had failed to meet his son's educational needs

for the previous three school years.  (D.I. 8 at 4.)  Green requested the Administrative

Hearing to appeal the District's decision to place A.G. in a school for autistic children.

(D.I. 12 at 11, ¶ 46.)  His request was granted, and, after a six day hearing conducted at

---

[2] IDEA requires that all handicapped children have available to them "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs ... ."  20 U.S.C. § 1400(c).

[3] To preserve the child's confidentiality, he is referred to as "A.G."

[4] Previously, Green requested residential care for his son.  (D.I. 8 at 12.)  In his latest submission to the court, however, Green requests that the accommodations described in an appellate court decision be provided.  (D.I. 12 at 13, ¶5.)  The United States Court of Appeals for the Third Circuit recently held that a proposed education plan for a student with Asperger's Syndrome did not violate IDEA.  H.W. & J.W. v. Highland Park Bd. of Ed., 108 Fed. Appx. 731 (3d Cir. 2004).  The proposed plan included one-on-one instruction in arts, reading, and mathematics, in addition to occupational, speech, and physical therapy.  Under the proposed plan, the student would attend some mainstream courses, as well as lunch and recess, with other children the same age.  Id. at 732.

[5] This hearing is also commonly known as a due process hearing.  I have chosen to refer to it here as the Administrative Hearing, to avoid confusion during the discussion of the alleged violations of Green's due process rights at that hearing.

intervals over several weeks, the hearing panel agreed with the District's education plan for A.G. (D.I. 8 at 4-5.)

Having exhausted his administrative remedies, Green filed this suit. (Id.) Green alleges that the State of Delaware failed to provide A.G. with a free appropriate public education, as is required by IDEA. (D.I. 1 at ¶ 13.) Green's complaint also focuses on perceived violations of the due process provisions of IDEA. In particular, Green complains of harassment by the School District's attorney, failure by the District to accommodate Green's own disability in presenting his case, insufficient opportunity to cross-examine the District's witnesses, inappropriate pre-trial conferences in which findings of fact and evidentiary decisions were made without the full panel present, prejudicial limits on expert testimony, no opportunity for discovery, and an incomplete and inaccurate transcript of the hearing. (D.I. 1 at ¶¶ 5-9; see also D.I. 12 at 6-9, 12.)

In addition to the procedural due process allegations, Green also alleges that the State of Delaware is systematically avoiding compliance with IDEA. (D.I. 1 at ¶ 1-3.) Specifically, Green alleges that the State of Delaware Department of Education ("DDOE") has amended its regulations to dictate that children with Asperger's Syndrome are autistic and should be educated in autism programs. (D.I. 12 at 11, ¶45.) Green argues that those regulations effectively defeat the spirit of IDEA, which emphasizes an educational program tailored to an individual's needs. (Id.) He further alleges that the Defendants conspired to prevent enforcement of IDEA. (D.I. 12 at 10, ¶ 44.)

In their Motion, Defendants essentially make three arguments in support of dismissal. First, and most significantly for purposes of this opinion, Defendants argue

that parents cannot represent their children in proceedings before federal courts. (D.I. 8 at 8-10.) Defendants also argue that Green has failed to state a claim entitling him to relief, as, even under the facts asserted by Green, there are no actionable violations of due process, no procedural violations of IDEA, no viable conspiracy claims, and there is no liability under 42 U.S.C. § 1983. (Id. at 10-14.) Finally, Defendants assert that several of the Defendants are protected by sovereign immunity, absolute immunity, or qualified immunity. (Id. at 17-24.)

## III.    STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id.

In the case of a pro se plaintiff, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003); Taylor v. Cox, 912 F. Supp. 140, 143 (E.D. Pa. 1995). A pro se complaint can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

4

(1957).[6]  The moving party has the burden of persuasion.  *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV.    DISCUSSION

Without addressing the merits of whether the allegations are sufficient to adequately state a claim for relief under IDEA, I will grant the Motion to Dismiss as to all of the claims Green brings on behalf of A.G.  Furthermore, I will grant the Motion to Dismiss as to the claim to a free appropriate public education that Green brings on his own behalf.  However, I will deny the Motion to Dismiss as to Green's claims that his procedural due process rights were violated at the Administrative Hearing.

### A.    A.G.'s Claims

#### i.    The Right to a Free Appropriate Public Education

A litigant in federal court has the right to proceed as his or her own counsel.  28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel ... ").  However, "a non-lawyer may not represent another person in court."  *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998).  Furthermore, a non-lawyer parent is not entitled to represent his or

---

[6] As an initial matter, Defendants claim that Green is not entitled to the liberal pleading standard normally applied to pro se plaintiffs, as Green is trained as a lawyer and has practiced in other jurisdictions.  (D.I. 8 at 11, n.1.)  In light of the fact that Green's law license was suspended after he suffered a head injury, which Green alleges has left his "mental capacity ... severely impaired," (D.I. 12 at 4, ¶ 17), this argument has no merit.  Green's complaint will be considered in light of the liberal pleading standard given to pro se complainants.

Defendants also claim that, because Green styled his complaint as an "appeal" rather than an "original civil action," his complaint should be dismissed.  Because Green is proceeding pro se, and because his pleading meets the notice pleading standard of Federal Rule of Civil Procedure 8, it will not be dismissed on this ground.

her child in proceedings before a federal court.[7]  *Osei-Afriyie by Osei-Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876, 883 (3d Cir. 1991)  (holding that a father "was not entitled, as a non-lawyer, to represent his children in place of an attorney in federal court").  The United States Court of Appeals for the Third Circuit has stated that this rule applies to cases under IDEA.  *Collinsgru*, 161 F.3d at 232 (holding that "the plaintiffs have failed to meet their burden of showing Congress's intent [by passing IDEA] to change the common-law rule against non-lawyer representation," and thus that parents may not represent their children in federal court in cases under IDEA).

In coming to this conclusion, the Court relied on the fact that IDEA extends some specific procedural rights to parents, including the right to represent their children in administrative proceedings.  *Collinsgru*, 161 F.3d at 232.  However, the Court interpreted Congress's deliberate dedication of procedural rights in the administrative context as an indication that, if Congress had intended parents to have a similar right in federal court, Congress would have granted parents that right.  *Id.*  ("In the IDEA, Congress expressly provided that parents were entitled to represent their child in administrative proceedings. That it did not also carve out an exception to permit parents to represent their child in federal proceedings suggests that Congress only intended to let parents represent their children in administrative proceedings.").  Therefore, although Federal Rule of Civil Procedure 17 permits Green to bring suit on his son's behalf, he is not permitted to represent his son in federal court.  Thus, to the extent that Green is asserting his son's right to a free appropriate public education, he is not

---

[7] Because minors are precluded from determining their own legal actions, the Federal Rules of Civil Procedure allow a representative or guardian to "sue or defend on behalf" of a minor.  Fed. R. Civ. P. 17(c).  However, this rule does not permit a non-lawyer representative to act as counsel for the minor in federal court.

permitted to represent his son before federal courts in this Circuit. *Id.* at 235. As a result, any claims that Green brings on behalf of A.G. under IDEA will be dismissed without prejudice.

ii.    Procedural Due Process and Conspiracy

For the same reasons that Green may not as a pro se litigant pursue the right to a free appropriate public education on A.G.'s behalf, Green may not pursue any of the other claims that he makes on behalf of A.G. This includes Green's claims that A.G.'s civil rights and due process rights were violated at the Administrative Hearing. (D.I. 1 at ¶¶ 13, 15-18.) Therefore, all of the claims that Green attempts to bring on A.G.'s behalf will be dismissed without prejudice. If Green wishes to assert these claims as A.G.'s next friend under Federal Rule of Civil Procedure 17, he must find a lawyer to represent A.G. in federal court.

**B.    Green's Claims**

i.    Green's Claims U 0nder IDEA

Separate from the rights that their children hold, parents do not have a substantive right to a free appropriate public education. *Collinsgru,* 161 F.3d at 235. ("Because neither the statutory language nor the legislative history clearly implies that Congress intended parents to have joint rights [to a free appropriate public education] with their children under the IDEA, we will not read joint rights into the Act."). Because the substantive rights granted under IDEA are tied to the child's interest, parents cannot sustain their own cause of action based on an inadequate education plan for their child. *Id.* at 236. Under the law of this Circuit, the child alone holds that interest.[8] *Id.* Without

---

[8] The United States Court of Appeals for the First Circuit interpreted IDEA as providing a cause of action to parents as well as children, and has thus permitted

7

a cause of action, parents lack statutory standing to sue on their own behalf under IDEA for a free appropriate public education for their children. *Irene B. v. Philadelphia Acad. Charter Sch.*, No. Civ. A. 02-1716, 2003 WL24052009, at *5 (E.D. Pa. Jan. 29, 2003). Green thus lacks standing to sue for that on behalf of A.G.

      ii.    Procedural Due Process

Green also asserts that his own procedural due process rights were violated during the Administrative Hearing. Therefore, I must determine whether Green had a due process right of his own that could be violated during the hearing, or whether the due process right at the hearing belonged solely to his son.

Parents have well-recognized procedural rights under IDEA. *See Collinsgru*, 161 F.3d at 233 ("IDEA ... clearly grants parents specific procedural rights, which they may enforce in administrative proceedings, as well as in federal court." ); *see also Cavanaugh ex rel. Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 757 (6th Cir. 2005). Under IDEA, Green was entitled to a "narrow set of procedural rights ... [including the right] to participate in due process hearings." *Cavanaugh*, 409 F.3d at 757; *see also Bucks County Dept. of Mental Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61, 66 (3d Cir. 2004) ("IDEA also entitles the parents to an impartial due process hearing."); 20 U.S.C. § 1415(f)(1) ("Whenever a complaint has been received ... the parents involved in such complaint shall have an opportunity for an impartial due process hearing"). Therefore, it appears that Green does have a right to

parents to proceed pro se in federal court. *See e.g., Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 258 (1st Cir. 2003) ("we conclude that parents are 'parties aggrieved' within the meaning of IDEA, 20 U.S.C. § 1415(i)(2)(A), and thus may sue pro se". *Id.* at 250). However, under the law in this Circuit and others, parents are not parties aggrieved under IDEA. *Collinsgru*, 161 F.3d at 236-37; *Cavanaugh ex rel. Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 757 (6th Cir. 2005).

8

procedural due process at an administrative hearing, independent of and separate from
the right that A.G. has.

Under IDEA, all parties to an administrative hearing, including a parent, are
entitled to certain specified rights, including, for example, the right to: "Present evidence
and confront, cross-examine, and compel the attendance of witnesses ... [and] Obtain a
written, or, at the option of the parents, electronic, verbatim record of the hearing." 20
U.S.C. § 1415(h); see also 34 C.F.R. §300.509(a). Green has alleged in both his
Complaint (D.I. 1) and his Reply to Defendants' Motion to Dismiss (D.I. 12) that
Defendants denied him the right to cross-examine particular witnesses (D.I. 1 at ¶ 7;
D.I. 12 at 9, ¶¶ 39-40), wrongly limited the amount of evidence that he could present
(D.I. 1 at ¶ 7; D.I. 12 at 9, ¶ 38), and failed to provide him with a complete and legible
transcript of the hearing (D.I. 12 at 8, ¶ 36; id. at 10, ¶ 43). These allegations implicate
procedural protections that Green was entitled to as a participant in the Administrative
Hearing, under 20 U.S.C. § 1415(h) and 34 C.F.R. §300.509(a). Therefore, Green has
stated a claim that his procedural due process rights were violated by Defendants at the
Administrative Hearing.[9] The next question thus becomes whether the defenses
asserted by Defendants defeat any portion of his claim.

## C.    Defenses

---

[9] Green makes additional allegations regarding the violation of his due process
rights during the Administrative Hearing. For example, in his response to Defendants'
motion to dismiss, Green claims that the attorney member of the panel "held numerous
'pre trial conferences' and excluded testimony and made findings without other panel
members", (D.I. 12 at 7, ¶ 33; see also id. at 9, ¶ 41-42), and that the attorney panel
member threatened witnesses and then caused those threats to be deleted from the
record (id. at 8, ¶ 36). Further, Green claims that he was denied discovery (id. at 8, ¶
37).

9

Defendants also assert that Green's complaint should be dismissed because they are entitled to immunity from suit under the doctrines of sovereign immunity, absolute immunity, and qualified immunity. (D.I. 8 at 17-24.) These arguments will each be addressed in turn.

i.    Sovereign Immunity

The Eleventh Amendment proscribes any suit against a state, or against a state agency or department or a state official when "the state is the real, substantial party in interest," unless the state consents to suit. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984). A plaintiff may sue a state official for monetary damages, but "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury of State of Indiana*, 323 U.S. 459, 464 (1945).

Defendant Valerie Woodruff is sued in both her individual capacity and her official capacity as the Secretary of Education. (D.I. 1 at 1.) To the extent that Green is suing Ms. Woodruff for monetary damages in her official capacity, the State of Delaware is the real party in interest, and the complaint must be dismissed. However, Green's claims against Ms. Woodruff for monetary damages in her individual capacity remain in the case, as Green may be entitled to monetary damages to compensate him for the alleged denial of his procedural due process rights. *Cf. Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) ("although a hearing is an element of the relief available in a procedural due process suit, the Supreme Court has held that denial of the process

10

due is itself compensable by damages under 42 U.S.C. § 1983").[10]  Furthermore, Green

appears to be seeking other relief against Ms. Woodruff in her official capacity, namely

the procedural safeguards associated with a properly conducted administrative hearing.

Thus she remains a defendant in this case in both her individual and official capacities.

      ii.    Absolute Immunity

Green has named the three members of the panel that presided over his

Administrative Hearing, Gary R. Spritz, Esq. ("Spritz"), Vicki McGinley ("McGinley"), and

Nancy Hortsmann ("Hortsmann"), as defendants in this case.  Defendants style Green's

action as one under 42 U.S.C. § 1983, and claim that Spritz, McGinley, and Hortsmann

are entitled to absolute immunity, as they were performing a quasi-judicial function in

presiding over the hearing.  (D.I. 8 at 19-22.)  Although, Defendants admit that "the

immunity of due process hearing officers appears not to have been addressed in any

reported decision[,]" they analogize the present situation to situations where courts

have extended absolute immunity to state administrative officers.  (Id. at 20-21.)

Judges performing adjudicatory functions are absolutely immune from civil

liability for money damages. Mireles v. Waco, 502 U.S. 9, 9 (1991).  Absolute immunity

has also been extended to federal and state administrative officers presiding over

hearings in particular situations. Butz v. Economou, 438 U.S. 478, 514 (1978) ("We

therefore hold that persons subject to these restraints and performing adjudicatory

---

[10]Green has not expressly made a claim under § 1983, but it may be that he has
intended to raise such a claim and I give him the benefit of the assumption that he has.
Defendants assert that Green cannot maintain a § 1983 claim because he "has failed to
allege facts from which the Court could infer the substance of any claim against the
Defendants ... ." (D.I. 8 at 16.)  As noted, however, he has sufficiently asserted a denial
of his due process rights under IDEA to withstand the Motion to Dismiss, and his
derivative claim for damages under § 1983 will therefore not be dismissed.

functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts."); *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986) (finding that state parole board members were "entitled to quasi-judicial immunity when engaged in adjudicatory duties"); *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) ("Quasi-judicial absolute immunity attaches when a public official's role is 'functionally comparable' to that of a judge." (*quoting Butz*, 438 U.S. at 513)). However, the Supreme Court has stated that it "[has] been quite sparing in [its] recognition of absolute immunity, and ha[s] refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991).

In *Cleavinger v. Saxner*, the United States Supreme Court stated that the following factors are "characteristic of the judicial process" and are to be considered in determining the applicability of quasi-judicial absolute immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985). Absolute immunity is thus, in part, a factual inquiry. *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (remanding to district court to "set out what facts they relied on and the legal reasoning they used to determine whether to grant a summary judgment motion ... on absolute immunity"). On a motion to dismiss, I must accept as true all facts and inferences in Green's complaint. Defendants have the burden to prove that these factors favor granting absolute immunity to Spritz, McGinley, and Hortsmann, and they have not met this burden on the present record. Therefore, at this stage of the case, I will not grant absolute immunity

to Spritz, McGinley, and Hortsmann, as Defendants have not provided an adequate record to support such a grant.

### iii.    Qualified Immunity

Government officials are protected by the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity, a court must first determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003). Next, the court must determine whether the violated right was one that was clearly established. *Id.* at 786. To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, the unlawfulness of the conduct must be apparent in light of pre-existing law. *Id.*

Because qualified immunity is a fact specific inquiry, *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995) ("qualified immunity inquiry is an objective, fact-specific pursuit"), it would be inappropriate to dismiss the case on qualified immunity grounds at this stage for the same fundamental reason that prevents dismissal on the grounds of absolute immunity: the record is inadequate.[11]

---

[11] Nothing I've noted here should be taken as a view that immunity is inappropriate. There simply is not a record for it at this stage.

13

### D.    Motion for Representation by Counsel

In his response to the Motion, Green appears to request court appointed counsel

for his son in the event he is not permitted to serve as counsel in this case. (D.I. 12 at

12, ¶ 2.)  Indigent civil litigants have no constitutional or statutory right to be

represented by a lawyer. *Merrit v. Faulkner*, 697 F.2d 761, 763 (1983), *cert. denied*,

464 U.S. 986 (1983).[12]  Requests for counsel by civil litigants are evaluated on several

factors.  *See Parker v. University of Pennsylvania*, 128 Fed.Appx. 944, 947 (3d Cir.

2005) *citing Darden v. Illinois Bell Telephone Co.*, 797 F.2d 497, *500 -501 (7th Cir.

1986) ("three factors [are] to be weighed by the district court: the merits of the plaintiff's

claim, the plaintiff's diligence in attempting to obtain a lawyer, and the plaintiff's financial

ability to retain counsel").

Appointment of counsel is unwarranted at this stage of the case.  Although

Green claims that he has been unsuccessful in retaining an attorney, he has not

detailed the efforts he has made.  For example, Green has not indicated if he sought

assistance from local legal aid organizations.[13]  Furthermore, Green claims that he is

financially unable to retain counsel, but has not provided details to substantiate his

claim.  Based on the limited information Green provided in his response to Defendants'

Motion to Dismiss, I am unable to justify a court-requested attorney for Green's son at

---

[12] IDEA tangentially addresses representation of aggrieved parties by providing
fee shifting provisions; the successful party in a suit brought under IDEA is entitled to
recover attorney fees.  *See* 20 U.S.C. § 1415(e)(4)(B).

[13] For example, the Disability Law Program at the Community Legal Aid Society,
Inc. offers representation through their Persons with Developmental Disabilities
program that "will promote the provision of a free appropriate public education to eligible
students."  (PADD Priorities § 1, at *http://www.declasi.org/disability/ddpriorities.html.)*

this point, and his request for counsel, construed as a motion for counsel, is denied without prejudice.

## V.    CONCLUSION

Accordingly, the Motion to Dismiss (D.I. 7) will be denied to the extent that Green presents a claim for violation of his own procedural due process rights, and granted in all other respects. The portions of Green's case that are dismissed will be dismissed without prejudice. Green's Motion for Representation by Counsel (D.I. 12 at 5, ¶24) will also be denied without prejudice. An appropriate order will follow.