**Federal District Court for Delaware**

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2006 FEB 28  PM 1:01

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | John Green, Jr. |
| 9 | Suite 9-143 |
| 10 | 17252 N. Village Main Blvd. |
| 11 | Lewes, DE 19958 |
| 12 | Plaintiff |
| 13 | v. |
| 14 | |
| 15 | Cape Henlopen School District |
| 16 | 1270 Kings Highway |
| 17 | Lewes, DE 19958 |
| 18 | |
| 19 | Morris, James, Hitchens & Williams LLP |
| 20 | 222 Delaware Aye, 10th Floor |
| 21 | Wilmington DE 19801-1621 |
| 22 | |
| 23 | Jennifer L. Brieley |
| 24 | Moths, James, Hitchens & Williams LLP |
| 25 | 222 Delaware Aye, 10th Floor |
| 26 | Wilmington DE 19801-1621 |
| 27 | |
| 28 | Gary R. Spritz |
| 29 | Suite 211, Second Floor |
| 30 | Wilson Building |
| 31 | Concord Plaza |
| 32 | 1511 Silverside Rd. |
| 33 | Wilmington, DE 19810 |
| 34 | |
| 35 | Vieki MeGinley |
| 36 | 108 Hermit St. |
| 37 | Philadelphia, PA 19127 |
| 38 | |
| 39 | Nancy Hortsmarm |
| 40 | 4800 Washington St. Extended |
| 41 | Wilmington, DE 19809 |
| 42 | |
| 43 | Valerie Woodruff (individually and as Secretary of) |
| 44 | Delaware Department of Education |
| 45 | P.O. Box 1402 |
| 46 | Dover, DE 19903 |

**Case No. 04-920-KAJ**

1
2
3    Kris Battaglini
4    Cape Henlopen School District
5    1270 Kings Highway
6    Lewes, DE *19958*
7
8    Shannon Palmer
9    Cape Henlopen School District
10    1270 Kings Highway
11    Lewes, DE 19958
12
13  And in addition
14
15    Dane A. Brandenburger
16    3 Meadowridge Lane
17    Milton, DE 19968
18
19    George Stone
20    Cape Henlopen School District
21    1270 Kings Highway
22    Lewes, DE 19958
23
24    Lynne VanHauter
25    Cape Henlopen School District
26    1270 Kings Highway
27    Lewes, DE 19958
28
29    Robert R. Meade
30    Individually and as a member of the
31    Cape Henlopen School Board
32    1270 Kings Highway
33    Lewes, DE 19958
34
35    Gary Wray
36    Individually and as a member of the
37    Cape Henlopen School Board
38    1270 Kings Highway
39    Lewes, DE 19958
40
41    M Camillia Conlon
42    Individually and as a member of the
43    Cape Henlopen School Board
44    1270 Kings Highway
45    Lewes, DE 19958
46

1
2
3
4
5          Peter J, Coveleski
6          Individually and as a member of the
7          Cape Henlopen School Board
8          1270 Kings Highway
9          Lewes, DE 19958
10
11         Noble W. Prettyman
12         Individually and as a member of the
13         Cape Henlopen School Board
14         1270 Kings Highway
15         Lewes, DE 19958
16
17          Allan J. Redden
18         Individually and as a member of the
19         Cape Henlopen School Board
20         1270 Kings Highway
21         Lewes, DE 19958
22
23         Esthelda Parker Selby
24         Individually and as a member of the
25         Cape Henlopen School Board
26         1270 Kings Highway
27         Lewes, DE 19958
28
29
30         Margaret Spellings, individually and as Secretary of Education
31          of the United States Department of Education
32          400 Maryland Ave S.W.
33          Washington, DC 20002
34
35                        Defendants
36
37
38
39    **Amended Notice of Appeal to United States District Court for Delaware and**
40                               **Complaint**
41
42    John Green, Jr., Plaintiff, pro se, appeals to the United States District Court of Delaware

43    from the order entered in the Due Process proceeding of the Delaware Department of

44    Education styled as DE DP 04-07 dated May 6, 2004. Defendant asks that this Court

1    grant a trial de novo or the order be reversed or remanded for retrial in the manner

2    ordered by the Court, and that the child, be placed in the requested private placement in

3    the interim. The Plaintiff further alleges that Beginning September 10, 2001 and

4    continuing to this date violations of the father's right to due process and other civil rights

5    have occurred protected under The Civil Rights Act (CRA) 42 U.S.C. 1983, The

6    Individuals with Disabilities Education Act of 1997 and as reenacted as the Individuals

7    with Disabilities Education Improvement Act of 2004 (IDEA) 20 U.S.C. 1400 et. Seq.,

8    the No Child Left Behind Act of 2001 (NCLB) 20 U.S.C. sec 6301 et seq, The Family

9    Education Records and Privacy Act (FERPA) 20 U.S.C. 1232, The Rehabilitation Act of

10   1973 section 504 (504) 29 U.S.C. Chapter 16 , the Americans' with Disabilities Act

11   (ADA) 42 U.S.C. Title 1 12102(2)(A)and 1415, 14 Delaware Code, and Common Law

12   including but not limited to intentional inflection of mental distress. Plaintiff demands

13   the funds to provide compensatory services to the son, actual and punitive monetary

14   damages, injunctive relief and other remedies prescribed by Law and as directed by the

15   Court.

16

17   A jury trial is requested.

18

19   This case revolves around a parent's right to be an equal partner with the public schools

20   in crafting the education of their child. A right promised by the Congress of the United

21   States in both NCLB and IDEA. These laws also provide that the parent is entitles to

22   have their children educated to at least certain minimum standards. If our children are not

23   educated sufficiently to enable them to be productive members of society it damages not

4

1    only our country as a whole but also our basic economic unit in our society the family. In

2    crafting this education the parent is entitled to certain due process and basis fairness.

3    Nether has been provided. Plaintiff has been told by numerous education officials that the

4    Federal Government has not paid for what they promise or that the State Legislature of

5    Delaware did not realize the costs of what they promised and the officials are justified in

6    ignoring the Laws of the land. The Plaintiff has also been told that he is a parent, does not

7    understand the education process a should leave education to the professionals. This total

8    arrogance for parents and for the Law by educators is the substance of this case.

9

10    My son is a minor and can not plead his own case before this court without an attorney,

11    which he has no money to pay for, and I as his parent can not represent him. All I can do

12    here is present this case in terms of how my personal rights have been denied and how I

13    have been personally damaged. Alex is a bright student he is currently in Cape Henlopen

14    High School with a GPA of 84.84 and taking College Prep courses in Spanish, Algebra 2

15    trig, Biology, American Literature and Level III Leadership Education and Training

16    (JIROTC). In seventh and eight grade the Cape Henlopen School District had him in the

17    Sussex Elementary School Consortium in a "Life Skills" program where he learned to

18    brush his teeth, do the dishes (the 12 step process) and how to buy things at McDonalds,

19    Kmart and SuperFresh. This case is about how the District and State tried to keep the

20    parents in the dark and obstructed efforts to effect change. Although, successful in finally

21    getting Alex into the proper academic courses. The State and District still refuse

22    necessary ancillary services promised by the Congress of the United States to make the

23    child a functioning adult and able to go on to further education. Alex has Specific

5

1    Learning Disability, AD/HD, Asperger's Syndrome, Cognitive Processing Difficulties,

2    Oppositional Defiant Disorder, Borderline Personality Features, Rage Outbursts, and

3    Hyper-Sensitive Hearing. Alex's individual lesson plan for the 11th grade calls for one

4    hour a week individual and one hour a week talking to other staff of a "speech and

5    language" specialist, 4 hours a month, none of it individual, of a School psychologist and

6    some shared services of a general special education teacher. The child needs the services

7    of a psychiatrist and I can only provide 40 minutes every two months outside the school

8    setting where it is needed. Congress in IDEA and other Federal Statutes promises parents

9    that the public schools will provide this and all the other minimally necessary services as

10   part of the education process.

11

12   The State Department of Education tells parents and the Federal Government that there

13   are 18 independent school districts in Delaware and that it oversees these districts, I will

14   demonstrate that that simply is not true. The State Department of Education provides the

15   funds to build schools, pays the majority of teacher and staff salaries, sets teaching

16   standards and administrates the employee medical insurance and retirement of all the

17   district staff as state employees. Everyone's paycheck says State of Delaware at the top.

18   There is even more control by the State Department of Education (State) when it comes

19   to Special Education Students. There are 3 consortiums in Delaware one in each county

20   operated as a joint venture with the state by one of the districts in each respective county.

21   There is really no oversight in Delaware and the people providing the education make all

22   the rules and enforce them with impunity ignoring both Congress and the State

23   Legislature.

6

1

2    Congress gave the parents a right to be an equal partner in their child's education. This

3    right is taken away when they are lied to and kept in the dark:

4         The State and Cape Henlopen School District (District) on their web site and

5         in the past with a banner over the front door represented the Sussex

6         Elementary School Consortium as "One of the best schools in the country"

7         The 2001 Autism School of the Year as awarded by the Autism Society of

8         America. They fail to revel that the Autism Society of America will take

9         anyone as a member that has $15.00 and any school that has *$500.00.* That

10        the "Award" was based on unverified essays and amounted to $500.00 for the

11        school's library fund.

12        The District always refers to the Sussex Elementary School Consortium as

13        "the Consortium" the "Sussex Consortium" and rarely as the "Sussex E.S.

14        Consortium" but never as by it true name The Sussex Elementary School

15        Consortium. This denies the parents of middle and High School Students basic

16        knowledge needed to make informed decisions about their children's education.

17        The District and the State at no time voluntarily disclose that the Sussex

18        Elementary School Consortium is a "non graded" school despite the fact that it

19        has students with normal IQ's.

20    .   The District repeatedly represented that my son's special education teacher was

21        "fully" certified when in fact she only had certification for K-S despite teaching

22        part of the time 9th grade and no supplemental certification for the specialties

23        needed for my son. This was justified by the District stating the Consortium was a

1    non graded school and the teachers did not need to be certified.

2    The District and State continue to refuse to discuss staffing as part of the Individual

3    Lesson Plan (IEP) development. They also refuse to list specific training and

4    experience in the IEP and when the teachers are assigned they refuse to disclose their

5    training and experience except for the minimum requirements under No Child Left

6    Behind but not what is needed for students with special needs.

7    The District and State both until the 10th grade refused to discuss methodology, the

8    "how" something was to be taught. Even now they refuse to put it into the IEP.

9    . The District and State refuse to implement any recognized methodology which would

10    allow the parent to make an informed decision as to its benefits for their child. They

11    simply fly by the seat of their pants both in all classes not just special ed.

12    The District repeatedly lied about having curriculum, (as described by the

13    representative of the State at the Due Process hearing, this is the written road map as to

14    what and how a subject is to be taught) for Alex's academic courses when pushed to

15    produce it. The District Administrator admitted there were none. IDEA required the

16    modification of curriculum for special education students. If there is none how can it be

17    modified? And how can the parent participate.

18    .The District and State have been unable to produce a single daily lesson plan for a single

19    course my son has taken for the last 5 years. Without lesson plans there is little ability to

20    ensure that lessons are being taught in accordance with the curriculum which doesn't

21    exist in the first. Thereby denying the parent the right to monitor his child's education

22    and be fully informed as intended by congress.

23    10. The teacher's under direct examination were unable to list the objectives and

8

1   standards they were to follow As provided for by NCLB. In the case of the 9th grade

2   English teacher she was unable to correctly name one objective. There are only four. A

3   Parent has a right to expect that state standards are being followed and without this there

4   is no way to effectively participate in educational decisions.

5   . The District and State manufactured fraudulent report cards indicating that the student

6   was a student of a school in which he was not enrolled and taking classes he was not

7   taking and earning grades where no tests were given. Making it impossible for the

8   parent to know his son's progress and violating the parents civil rights under both

9   IDEA and NCLB.

10   The District and State gave my son a passing grade for pre algebra despite only less

11   that 20% of the material being covered ( 112 pages of a 835 page out of print 3

12   editions back book with no back cover) none of it graded and the teacher having no

13   academic education teaching courses (her undergraduate degree was in nursing and it

14   is my understanding she could not pass the boards. She was passed off as a high school

15   math teacher but on testimony did not know who was the head of the high school math

16   department and had never talked to any of the other math teachers and did not know

17   what they were covering.

18   The refusal to disclose the nature of the students in the class. There is no way of

19   knowing whether a child is in a least restrictive environment if the school refused to

20   disclose the demographics of the class. Thereby preventing an informed decisions. 7th

21   and 8th grades Alex from observation appeared to be in a class with a down syndrome

22   and a Educable Mentally Disabled students. He should have been with regular education

23   students.

9

1    The District and State regularly refused to provide disclosure of relevant documents

2    needed to make an informed decision and often disclosed what was given months after

3    the fact and after meetings where it was needed. This despite the specific disclosure

4    requirements of NCLB, IDEA, FERPA, 14 Del Code and Department of Education

5    manuals.

6

7    The District refused to order necessary testing required to make informed decisions and

8    required under both Federal and State statutes and regulations.

9    The State and District intentionally themselves, and through legal counsel,

10   misrepresented the Law. This making an informed decision by the parent impossible until

11   the parent realized they were lying..

12   The State and District had legal counsel and at times multiple legal counsels attend IEP

13   meetings where the parents were not represented in violation of the spirit and letter of

14   the law. This resulted in intimidation and false reliance on the part of the parents

15   denying them an informed free participation in the process.

16   The State and District produced professional reports which they knew or should have

17   know were based on testing incompetently done. Misrepresenting the Facts to the parent

18   and preventing his informed participation. Copies of the raw tests were also withheld in

19   violation of disclosure laws and prevented an independent review. Father's written

20   request for a FERPA hearing to correct the record and remove the flawed report was just

21   ignored.

22   IDEA provides for parent Advocates to aid parents in the complicated process of being a

23   full partner in their child's education. Delaware is the only State in the United States

10

1    where acting as a Parent Advocate is the unauthorized practice of law. The result being

2    that COPAA the professional organization for Parent Advocates and Attorny's does not

3    list a single Advocate practicing in Delaware. This denies the Parent effective

4    participation in the education process. The Decisions in the Arnes case in the Supreme

5    Court of Delaware needs to be overturned.

6    20. The State and District as a matter of course spend in excess of $100,000.00 in

7    Attorney time and costs to defend a Due Process Request despite the fact that a Due

8    Process Hearing is not an adversary proceeding. This results in very few Due Process

9    Hearings in Delaware and makes it impossible for an attorney to make a living as a

10    parents attorney in Delaware an evidenced by not a single Delaware Attorney being a

11    member of the Council of Parent Attorney and Advocates being listed in Delaware. This

12    denies the parent effective parent representation and violates his civil rights.

13

14    With no Advocates or attorney's assuming the parent could afford the costs, that only

15    leaves the parent and the third circuit denies the parent the right to represent his child in

16    this court. The result is an emboldened School administration and a law firm that knows

17    it is very unlikely it will be challenged to run amuck of the civil rights of both parents and

18    students.

19    The Consortium system in Delaware is designed to provide false and misleading

20    information to parents and the Federal Government. Under the Consortium System, My

21    son attended all his classes in one school. Under NCLB a "report card" is available for

22    that school. However although physically in the Middle or High School many students

23    (those who's state testing scores might be low), including through 9th grade my son, (on

1    paper only) they are attending the non graded Sussex Elementary School Consortium and

2    their test scores are not counted in the totals for the school they physically attend. This is

3    designed to Give parents a false impression of the school their child is attending and

4    denying them an informed decision in education matters in violation if NCLB and

5    FERBA..

6    Requests for contribution from the Federal Government are made two steps away from

7    the service delivery at the state level based on the individual IEP's. Alex's IEP would

8    show one hour of collaborative service from each of the areas of special services. When

9    asked what this was I was told it was the Friday morning staff meeting of the whole

10   consortium. The person in Dover would only see one hour of collaborative services on

11   each of hundreds of IEP's and ask for contribution from the federal government

12   accordingly. The same is true for Medicare reimbursement for special transportation.

13   Alex was assigned to a special school bus when there was no reason for this, in fact he

14   regularly road the activity bus home after sports practice. I was told it gave the school an

15   extra $4,000.00. Two steps away based on the IEP's with no actual Knowledge of the

16   children's needs federal contribution requests were being made by the State Department

17   of Education. To reward the school district although they are only reimbursed a little

18   under $400.00 for each student's transportation, they are reimbursed a little over

19   $4,000.00 for each student shown to need special transportation. A large economic

20   incentive to deny my son and others a least restrictive environment and mislead the

21   parent who by law is to be a full partner in the education process. This also resulted in

22   Alex not getting to school in time for first period in a school with only 4 periods a day

23   block scheduling at the time. The State and District never brought this up at the IEP

1    meetings and it only came out after the fact and after factious report cards were issued

2    showing Alex attending a class before his bus got to school. He got a 78 in it.

3

4    Decisions of the IEP "team" were regularly made by vote. The school always voted in a

5    block and being the majority won. No one advised me that decisions were supposed to

6    be by consensus not by vote. Often it was the District and State's attorney who would

7    call for the vote and is assumed to know the law. NO. 9 of IDEA Appendix A was never

8    mentioned or the regulations themselves for that matter.

9    The State and District would regularly stall and drag out IEP's holding multiple (5-8)

10   meetings during parent working hours and consuming as many as 38 hours to develop a

11   single IEP for Alex to tire out or make participation economically impossible for the

12   parent. To force agreement with whatever the school wanted to do in violation of the

13   spirit of IDEA if not the regulations.

14   The parent was denied discovery or the production of relevant documents often with the

15   attorney present saying nothing.

16   The make up of the IEP team was not representative of the services needed or being

17   received. The "Team" has at all times been dominated by the State joint venture

18   Consortium staff. Although required regular education teachers were often not at

19   meetings, the joint venture staff would try to say that a special education teacher also

20   certified as a regular education teacher although not teaching Alex could meet the

21   requirement, That a regular education teacher who could not identify Alex in a crowd

22   and  never provided him any services could be on the team as the "regular ed" teacher

23   Even when I finally after years of persistence, only one of Alex's regular education

1    teachers would be on the "team" but that person was change not only with each meeting

2    but often   different teachers would be rotated in during the one meeting making it

3    impossible for any regular education staff to be completely informed. The same practice

4    was used to deny the parent a regular education administrator as an informed part of the

5    team. The only administrator who regularly attended was Dr. Battaghni from the State

6    joint venture consortium who has no qualifications in or knowledge of the regular

7    education process. When asked an academic question he would answer I have no idea

8    and just move on. Thereby denying the parent the necessary academic program

9    information to make an informed decision. This lack of information at the table resulted

10   in Alex's academic plan being flawed by violating district policy, not taking courses in

11   proper sequence, and not the parent not being made aware of programs and courses

12   available to Alex. All denying due process and informed consent.

13       Despite Alex's complex neuropsychological processing difficulties the state and

14   district never had a behavioral psychologist, neuropsychologist or clinical psychologist

15   on the *"Team"* to give appropriate guidance to the parent and other "team" members.

16   Denying the parent an effective IEP process.

17   The State and District have refused to develop a transition plan as required by IDEA,

18   denying the parent the right to participate in transition planning or develop an appropriate

19   plan..

20   The State and District have failed to have attend any IEP meetings any Transition

21   Services Participants, denying the parent the right to participate in transition services as

22   required by IDEA.

23   The state and District refuse to provide the knowledge, experience or expertise of service

14

1   providers they have brought to the IEP team thereby denying the parent an informed basis

2   for relying on their opinions.

3   The Basic process of an Individual Education Plan developed with the full partnership of

4   the parent is a sham in Delaware. Someone able to make financial commitment must be

5   part of the Team. In Delaware that simply is not the case. The District joint venturing

6   with the State expecting the state to pay the majority of the costs. The decision to pay

7   costs is the states but they do not have a representative at the IEP rather the state has pre

8   approved plans For Autism which the State dictates includes Asperger' s syndrome (they

9   are both processing problems but to put them together is like saying a heart attack should

10  be treated like a stroke because they are both circularly problems) Delaware has only 2

11  pit-approved plans. If the District develops its own individual plan as required by IDEA

12  they have to commit to it without knowing if the state will fund the plan. This means that

13  no one in Delaware gets a truly individual plan, to do so would court financial disaster if

14  the State should refuse to fund in Direct violation of IDEA and the parents are not even

15  made aware of the existence of a pre-approved plan system thus causing a complete

16  waste of their time.

17

18  As part of the mediation process the attorney for the district agreed with Plaintiff that one

19  of Delaware's two primary consultants on special education, Johns Hopkins would

20  evaluate Alex and the District would follow their recommendations.  When the

21  evaluation was completed it took over 3 months and dunning credit calls to me from

22  Johns Hopkins to get their bill paid.  The report indicated Alex needed services in a much

23  different manner than those offered.  The District refused to accept the recommendations.

1    The District's attorney told me "I should have gotten it in writing from her" and made no

2    effort to have them perform as she had represented they would. This has cause me

3    extreme mental anguish that a profession I love would act this way in Delaware.

4

5    The States other primary consultant Devereux then saw Alex at their school Glenhome

6    and agreed with Johns Hophins as to needed services for Alex and that was exactly the

7    services they offered at Glenhome. The Districts out of hand refusal to lessen to the

8    opinion of both their consultants and then fail to deliver any meaningful services for 5

9    years is criminal neglect and has caused me great mental anguish to see how my son has

10   been damaged.

11

12   The State and District simple failed to properly draft and follow the IEP's even after

13   spending many hours drafting them right from the beginning. The 2001 IEP required a

14   behavior management plan in place by September 2001, it was never done, the IEP

15   required multi-modality approach of high interest materials- never done, English 50 min

16   5x a week not followed, math 50 min 5x a week not followed, IEP required reading in the

17   regular classroom- not done in fact no reading instruction, Science in the regular class –

18   not done, IEP fails to state "how the child's disability affects the child's involvement and

19   progress in the general curriculum"as required 34 CFR 300.347(a)(1), IEP cover sheet

20   lists Autism but attachments reference 24% Specific Learning Disability, IEP fails to

21   state how Alex's needs and progress in the general curriculum will be meet 34 CFR

22   300.347.(a)(2), IEP has no provisions for reading disability, language difficulty or

23   provide psychologist as required by 34 CFR 300.347 (a)(3) or duration 34 CFT

1   300.347(a)(6), IEP has no provisions for supplemental aids 34 CFR 300.347(a)(3), no

2   statement of program modifications or supports for staff 34 CFR 300.347(a)(3), IEP has

3   no statement as to extent of participation with non disabled children 34 CFR 347 (a)(4),

4   IEP shows no modifications for DSTP 34 CFR  300.347(a)(5), IEP fails to state progress

5   and goals 34 CFR 347(a)(6), no middle school supports and accommodations 34 CFR

6   300.347.  The childs classification was changed from Specific Learning Disabled to

7   Autism without a notice or meeting.  Most notices over the last 4 years have been

8   defective.  The Child did not even have an IEP from 12/26/01 to 9/4/02.  The same

9   pattern of ignoring IEP's or failing to include necessary parts continues to the present

10  time. All denying the parent any meaningful participation as required in IDEA and

11  violating both his and his son's civil rights.

12

13  The State and District have intentionally written the IEP's in a vague and inappropriate

14  manner to avoid accountability denying parent a meaningful way to gauge progress.

15

16  The Due Process hearing is a sham in Delaware and violates IDEA regulations. The State

17  Department of Education Joint ventures the Consortium projects and funds most

18  education costs in Delaware. The State Department of Education also selects and trains

19  the Panel members. (Delaware does not use an administrative Judge as does most other

20  stated but rather a panel of 3 people a lawyer, an educator and a private citizen. The

21  Attorney is the chairman of the panel). State Department of Education Administrators

22  have at training sessions told panel members that if they find for the  student they could

23  bankrupt education in Delaware. Panel members are selected on a case by case basis and

17

1    how they rule could be seen as affecting whether they are asked back. Panel members are

2    encouraged to short change the Due Process Hearing process by being paid a flat fee of

3    $1200.00 for the chairman and $1000.00 for the other two members. If the panel were

4    to give a complex hearing the time it deserves, they could find themselves working for

5    less than minimum wage.

6    The State Department of Education does not provide a court room in which to hold the

7    Due Process hearings and in the case of this hearing every day it was held in a different

8    town in anywhere from a library meeting room to a state roads maintenance building

9    back room. There is no good faith due process when you first have to follow a treasure

10   map and find the unmarked state roads warehouse building or the old barracks building

11   way back down a winding road in the State Park (which is closed for the winter). IDEA

12   requires a decision within 45 days of filing a due process request. Delaware in this Due

13   Process proceeding held one day of testimony every couple of weeks stretching it out for

14   126 days.  Alex will graduate in June of 2007. This is the first court hearing arguing over

15   services for 7th and 8th . Both parties have a right to appeal. Alex may have his own

16   children before questions of his 7th grade education are resolved. Rights delayed are

17   rights denied. The Delaware system is designed to deny the parents and students civil

18   rights. Despite the requirement of a 3 person panel the panel chair held telephone

19   hearings without the other panel members and made orders that issues and facts could not

20   be raised before the panel as a whole. Special Education is at best a joint venture between

21   the district and the state department of education (one could argue the district only fronts

22   for the State Department of Education) in any event they should be represented at most

23   by only one attorney. The panel allowed the large and very expert law firm of Moths

1    James (they at the time represented most of the school districts in Delaware) to double

2    team with the Office of the Delaware Attorney General and two lawyers were allowed to

3    double team an unrepresented parent. This double teaming in a process that is not even

4    supposed to be adversary is a violation of due process. In no event should the state be

5    allowed to use the attorneys who prosecute criminals to fight in an adversarial manner

6    against the rights being sought for children of Delaware. Plaintiff was told by the

7    assistant attorney general soon after filling this Due Process request that if he proceeded

8    the States Attorney's department would have his tax returns audited and would

9    investigate him and could find things to prosecute or release to the papers. The record

10   makes it clear that the state did do a full background investigation on the parent going

11   back over 20 years and information was leaked to the press. There is no way of knowing

12   what  intimidation was used against the board members. If the State wishes to treat Due

13   Process Hearings as adversary proceedings, they should be required to pay for attorney's

14   for both sides. It is the students rights that are more deserving of representation than the

15   economic interests of a state agency. To do otherwise denies the student and his parents

16   their  civil rights.

17

18   The State Department of Education violated parent's due process by refusing to issue

19   subpoena duces tecum. This allowed state witness to answer they didn't remember and

20   they did not have the documents with them.

21

22   The state Department of Education violated parent's due process by failing to provide a

23   Fair and impartial adjudicator and conducting the proceeding in a timely manner and in

1   an appropriate setting.

2

3   The State Department of Education even feels entitled to white out federal regulations.

4   Their Administrative Manual for Special Education Services on page 35 shows the

5   federal regulation on the left but there is no corresponding State regulation on the right.

6   The District and States position is you cannot have multiple disabilities in Delaware.

7   This not only flys in the face of the supremacy clause but even negates 14 Del Code

8   3124. If Delaware does not have multiple disabilities you cannot get private placement

9   for it???? This is a complete disregard for the parent's due process rights.

10

11  Under IDEA in 49 states a child with disabilities is entitled to an individual education

12  plan designed just for him.  In Delaware if he has Asperger's syndrome he is by

13  regulation placed in the Autism program.  Even though Asperger's and Autism are both

14  pervasive development disorders they don't have the same treatment.  It would be just

15  like saying heart attacks should be treated as strokes they are both circularly problems.

16  There cannot be a plainer violation of IDEA and the parent and child's rights.

17

18  The state Department of Education violated parent's due process by failing to ensure that

19  a full  and complete copy of the hearing would be provided in a timely manner as

20  required by IDEA.

21  Much of the hearing was conducted "off the record" and what was on the record was not

22  provided in a timely manner and often parents were given only 20% size proof pages 4 to

23  a page  and often hard to read. Making timely objection to what was or was not recorded

1   impossible and also being in violation of IDEA regulations.

2   The State Department of Education locks up prior Due Process decisions in a file cabinet

3   not available to the public and will only release copies when requested to repeatedly and

4   only when the parent already knows they exist. IDEA requires these opinion to be

5   published and available.  When received they are so redacted to be of little use.  The

6   Department only distributes them to LRP publishers who may publish them.  LRP

7   subscriptions are prohibitively expensive for parents or even Attorneys who can not make

8   a living in Education Law. Denying the father effective access to the law and denying

9   him his due process rights.

10

11  Even this court does not have the LRP publications in its Law Library or for that matter

12  even the prior Delaware Due Process Opinions.  Nor to that matter do any other libraries

13  in Delaware to Plaintiff's knowledge.  This prevents even this honorable court from

14  having an informed opinion of the state of Special Education Law and works to deny

15  Plaintiff his civil rights.

16

17  The Panel Chair errored by refusing to allow the father to raise his and his son's rights

18  under No Child Left Behind and the additional rights afforded by the Delaware Code.

19

20  The Panel Chair errored in finding that NCLB and the Delaware Code were not relevant.

21

22  The Panel Chair errored in holding that NCLB did not apply to children with disabilities.

23

1    The Panel Chair errored in holding that 14 Del Code sec. 3124 did not apply.

2    The Panel Chair errored by conducting the Due Process Hearing as a procedurally

3    technical adversary proceeding.8

4    The panel chair errored in not allowing discovery.

5

6    The panel chair crrored in not advising the parent of his right to documents for the asking

7    under IDEA and that the State and District had to produce them at least 5 days before the

8    next hearing.

9    The panel chair errored by not allowing the Plaintiff to cross examine the District and

10   State's witnesses.

11

12   The panel chair errored by harassing the parent's expert witness and pointing out to her

13   that Johns Hopkins received a lot of consulting money from the State of Delaware and

14   how dare she testify for the parent.

15

16   The panel chair errored by continually going "off the record" when he wanted to harass

17   the father or his witnesses.

18

19   The panel chair errored by directing the reporter to not report at all the testimony of Dr.

20   Benson.

21

22   The panel chair errored by holding long marathon hearings of 12 hours.

23

1   The panel chair errored in holding long marathon hearings after father due to his

2   disability had asked for a reasonable accommodation of 6 hours of testifying with two

3   breaks and produced telephone testimony of his treating doctor that this was all he was

4   capable of doing.

5

6   The panel chair errored in refusing to allow the parent to call witnesses and trying to

7   force him to either call his experts or the class room witnesses.

8

9   The panel chair errored in refusing to call back one of the state's witnesses when the day

10   ended with her halfway through her cross examination.

11

12    The panel chair errored knowing the physical condition of the parent forcing the parent

13   to fly  back from the west coast on the red eye through the night and conduct a fill day

14   hearing.

15

16   The panel chair errored in allowing both the attorney from Morris James and an assistant

17   attorney general to harass and intimidate an expert witnesss of the parent's past the point

18   of tears.

19

20   The panel chair errored in crossing the line and taking an adversarial position against the

21   parent's witnesses.

22

23   The panel chair errored in harassing and intimidating witnesses.

1

2   The panel chair errored in telling the plaintiff what questions he should ask and then

3   asking them himself while the parent was trying to conduct an examination.

4

5   The non lawyer panel members at no time objected to the actions of the panel chair and

6   in failing to do so became jointly responsible and liable for the depriving of the parent of

7   his due process rights.

8

9   The panel chair errored in that he was well aware that the parents were appearing pro se

10  and owed an affirmative duty to the parents under Rule 4.3 of the Delaware Lawyer's

11  Rules of Professional Conduct and had an obligation to see to it that the other attorneys

12  involved in the  matter also followed the rules of conduct.

13

14  The panel chair errored in failing to conduct the hearing is a timely manner.

15

16  The panel chair errored when he threatened the father for insisting on the hearing being

17  held at least for the most part in the same county if not the school district. The panel chair

18  insisted on meeting up state early in the morning in an area completely unfamiliar to the

19  plaintiff or his witness.

20

21  The panel chair errored in refusing to allow Plaintiff to call witnesses or require

22  Defendant to disclose the witness names in a timely manner.

23

1    The administration and staff regularly lied or refused to say what they were doing to

2    provide my son an education. With the consent of the Sussex Elementary School

3    Consortium I was allowed to have an educator with a master's degree and over 40

4    additional credits in related areas observe my son's class. On her 3rd observation after

5    having signed in at the office Mrs. Shannon Palmer, Alex's case administrator at the

6    time, had her escorted out of the school By the Delaware State Police ,when she found

7    Alex was sleeping in the classroom. The observer was told she had seen too much. The

8    Cape Henlopen school district now has strict rules requiring advance notice to allow for a

9    dog and pony show to prevent parents or observers from finding out what really is going

10   on. All in violation of the Father's legal rights. By tnis time the observer had discovered

11   among other things, Alex's teacher was teaching two classroom down different halls at

12   the same time with an aid, who's only education was an associates degree in law

13   enforcement in the other classroom, The observer, a Delaware science teacher of the year,

14   observed Mrs. Palmer teaching Alex Science and using a wrong Formula. After the class

15   the observer pointed it out to Mrs. Palmer who's answer was it didn't matter she graded

16   Alex. The observer witnessed Mrs. Palmer and another teacher talking that Alex and

17   another student had exactly the same IEP. The observer noted that Alex was being given

18   addition work sheets to do with no teaching while the teacher surfed the internet at her

19   desk. That the teacher and aid read romance novels, the newspaper surfed the internet

20   and had personal telephone calls all when they were required to be teaching. This was

21   brought to the attention of the Administrators and no action was taken. Denying the

22   Plaintiff the right to have his son educated and causing the Plaintiff great mental distress.

23

1    In retaliation for bring this Action the superintendent of the Cape Henlopen School

2    District with the knowledge of the Board of Education has done everything they can to

3    prevent Plaintiff from participating in the education of his son. The Father has been

4    ordered not to enter school property without an appointment or attending a regularly

5    scheduled event or he will be arrested for trespassing. The Father's ability to e-mail his

6    son's teachers or administrators has been blocked (with Alex living with the Plaintiff this

7    also prevents him from gaining any internet access to the school to check homework or

8    email his teachers). The administration has order the teachers not to talk to the Plaintiff

9    without an administrator present. When meetings are requested none is ever set. Plaintiff

10   has been ordered by the administrators to address all questions and concerns to their

11   Attorney (who is difficult to contact, doesn't know the answer and often does not get

12   back to the father with an answer. Letters to school staff are simple not acknowledged or

13   answered.

14

15   In an attempt to force the Plaintiff to drop this civil action, members of the Sussex

16   Elementary School Consortium regularly harass and embarrass Plaintiff's son.

17

18   Lawyers of the Firm of Morris and James regularly misrepresented the Law, intimidated

19   the parents, engaged in inapproprate practices, and during the due process hearing

20   played procedural games. Although ordered to do so Morris James did not provide

21   manes of various District employees until after the due date set for witness lists when the

22   names were provided the father, based on Morris James objection being sustained by the

23   panel chair was not allowed to call the witnesses because he had not included them on his

1    witness list. Despite being ordered to include a summary of expected testimony with the

2    witness list Morris James failed to comply and gained an unfair advantage. Their insisting

3    on and being given strict construction of the Federal Rules of Civil Procedure in what is

4    to be a non adversary hearing with a parent not represented by an attorney violates the

5    Delaware Code of Conduct and denies the Plaintiff a fair hearing resulting in damages to

6    both the Plaintiff and his son.

7    The members of the Cape Henlopen Board of education violated parent's civil rights by

8    failing to diligently oversee the operations of the Lewes Middle School, Cape Henlopen

9    High School and most particularly The Sussex Elementary School Consortium.

10   The failure of the Board to see to it that Alex was at least exposed to the 7th and 8th grade

11   standards at the appropriate age level, The failure to ensure curriculum, lesson plans,

12   qualified teachers or appropriate support staff. The failure to follow District Policy or to

13   investigate infractions. The failure to even investigate the report of a teacher cheating

14   with DSTP tests. The failure of the board to educate the children of the school district,

15   half of the students at Cape Henlopen High School, as admitted by the principal, are

16   functionally illiterate. Not starting to the fall of 2005, over a hundred high school students

17   a term are being given a reading improvement course designed for kindergarten to second

18   grade. Teachers openly admit the majority of their High School Students cannot multiply

19   or divide without a calculator. The State Department of Education is fully aware of the

20   situation and doctored the DSTP testing to among other things, not take off for

21   misspelled words and allow use of a calculator.

22   The United States Secretary of Education and her Department failed to provide

23   meaningful oversight. The most resent traditional audit of the State of Delaware Special

1    Education programs was in 1993 at which time they agreed to correct violations within

2    60 days.  Apparently they could not agree what 60 days.  The in some cases the violations

3    are still ongoing.  The U.S. Department of education changed to and are still using the

4    audit practices discredited in the Enron scandal. Audit the system and assume the

5    information is correct. The system should work if everyone was honest (and not trying to

6    get around unfunded federal mandates).

7

8    The Father has been on total disability since 1995 resulting from head injuries and lives

9    near the poverty line on a disability check.  He can only function for limited periods of

10   time due to the injuries and when concentration is needed is forced to use strong drugs.

11   This amended brief was written using Provigal at over $10.00 a pill.  I will crash for a

12   week at least when it is finished.  These medications cause aggression and elevated heart

13   rate and no sleep.  I apologize if I have called a spade a spade, hopefully I caught any

14   inappropriate language.  By refusing to deal in good faith in day to day problems, IEP

15   and due process meetings I have been forced to use a lot of medicine that has taken a toll

16   on my general health and caused me hundreds of sleepless nights even with Ambien.

17   God put us on this earth to raise our children.  I am forced to do everything I can to see

18   that my son has a chance in life.  A District's attorney should not be outlining on a legal

19   plan how my as strained wife could have my parental rights taken away or be threatened

20   by the Attorney General's office.  In an effort to deny minimal services to my son the

21   State and District have made my life hell for over 4 years Pleas from my son wanting me

22   to do something to stop the Consortiums continuing abuse just have to stop.  I can only

23   ask for justice.

1

2      Therefore, Plaintiff requests:

3

4      1. Immediate placement of the child at an agreed upon Asperger's School,

5      2. A trial denova in the Federal District Court on the issues raised below concurrent with

6      the civil rights violations first raised here as they apply to the child.

7      3. Damages for denial of education in the amount of the cost of 4 years at the private post

8      secondary school with an Asperger's program and other needed services

9      4. Reimbursement of the time wasted by father attending meeting where there was no

10     good faith intention of follow the law in the amount of $300,000.00

11     5. Damages both actual and punitive of $1,000,000.00 from the School District, the State

12     and the members of the Cape Henlopen Board of education and the Delaware Secretary

13     of Education   individually and in their respective legal capacity

14      6. Damages both actual and punitive of $1,000,000.00 from the United States

15     Department of Education and the Secretary of Education individually and in her legal

16     capacity..

17     7. Damages both actual and punitive of $100,000.00 from each of the other  individuals

18     named.

19      8. Injunctive and other relief the court feels appropriate.

20

21     February 28, 2006

22                                              John Green, Jr., pro se
23                                              17252 N. Village Main Blvd.
24                                              Suite 9-143
25                                              Lewes, DE 19958
26                                              302 542 7001

## CERTIFICATE OF SERVICE

I, John Green, hereby certify that on this 28th day of February 2006, two copies of the within Amended notice of Appeal and Complaint were served by United States first class mail postage prepaid, on the following parties counsel of record at the addresses indicated below:

David H. Williams Esq.
Moths, James, Hitchens and Williams LLP
222 Delaware Avenue
P.O.Box 2306
Wilmington, DE 19899

Craig Raymond Fitzgerald, Esq.
Department of Justice
102 West Water Street
Dover, DE 19901

Mary L. Cook, Esq.
Department of Justice
102 West Water Street
Dover, DE 19901

February 28, 2006

John Green Jr.