

Slip Copy                                                                                                               Page 1
Slip Copy, 2006 WL 83447 (E.D.Pa.)
**(Cite as: 2006 WL 83447 (E.D.Pa.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Zsazsa MILLINGTON
v.
**TEMPLE UNIVERSITY SCHOOL** OF
**DENTISTRY**
No. Civ.A. 04-3965.

Jan. 9, 2006.
Zsazsa Millington, Philadelphia, PA, pro se.

Karen L. Palermo, Michael C. Wagner, Rubin Fortunato Harbison & Dougherty, P.C., Paoli, PA, for Defendant.

*MEMORANDUM*

BARTLE, J.

*1 Pro se plaintiff ZsaZsa Millington ("Millington") brings this action against defendant **Temple University School** of **Dentistry** (" Temple") under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.,* the Rehabilitation Act of 1973 ("RHA"), 29 U.S.C. § 701 *et seq.,* the Civil Rights Act of 1866, 42 U.S.C. § 1981, the "Civil Rights of People with Disabilities Act" ("CRPDA"), and the "Privacy Rights Act" seeking declaratory and injunctive relief in addition to compensatory and punitive damages. Before the court is Temple's motion to dismiss the plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.
During the 2002-2003 school year, Zsazsa Millington was enrolled as a student at Temple. At all times relevant here Millington suffered from "orthopedic, arthritic, and neurological impairments, hearing loss, irritable bowel syndrome ("IBS"), premenstrual dysphoric disorder ("PMDD"), chronic migraine cephalgia, chronic pain syndrome, bilateral carpel tunnel syndrome, neck sprain and strain." Am. Compl. at 1. Millington contends that she is disabled due to these conditions and requires accommodations from Temple. She alleges that she and her doctor sent a letter to Temple on July 13, 2002 that requested the following accommodations for her disabilities:

1. Extended time to complete clinic and didactic requirements.
2. Didactic test taking increased to double time in a quiet proctored setting such as DRS (Disability Resources Center).
3. Student will be allowed to use an alternative to the "clinic cart" as she is not able to push dental cart.
4. Duty days to be limited to half days and will not be scheduled on consecutive days with the understanding that the student will complete needed service on any patient on the day on which that patient is seen, in accordance with professional standards.
5. Student's physical condition will be considered in the determination of the number of patients assigned to her, with the understanding that she will see a minimum of three patients to start and can increase on Student's request.
6. A hard chair with a hard back will be made available to Student on each clinic floor while she works on patients.
7. A hard chair with a hard back will be made available to student for lectures.
8. Student will be allowed to alternate between sitting and standing during some procedures.
9. Dental assistant will be made available to student during some procedures.
10. Student will be allowed to stand and walk during lectures.
11. Student will need to utilize note-taking

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 2

Slip Copy, 2006 WL 83447 (E.D.Pa.)

**(Cite as: 2006 WL 83447 (E.D.Pa.))**

services available "thru" DRS.
12. Student may need to utilize test-taking in a DRS setting due to possibility of needing more than one test taking opportunity due to physical condition.

Am. Compl. at 1-2. Temple contends it informed Millington during the summer of 2002 that her requests had been rejected.

*2 Millington maintains that Temple discriminated against her when it failed to provide the requested accommodations. She further states that her physical disabilities prevented her from completing her academic requirements. Because she was not able to keep up with the work required at Temple, she was informed in September, 2003, that she had been dismissed from Temple "forever." Despite Temple's initial rejection of her accommodations proposal, Millington apparently submitted additional letters seeking the same accommodations throughout the 2002-2003 school year. Temple denied these subsequent requests.

Millington also alleges that Temple discriminated against her on the basis of race. Am. Compl. at 5. She contends that "in fall to spring 2003" she received an e-mail stating "all students of a certain color should leave Temple University" that she felt was directed solely at her. Millington does not say to what racial minority, if any, she belongs, who sent the e-mail, whether she was the only recipient, whether the e-mail was written to her specifically, or which students of "color" the e-mail targeted.

On September 2, 2004, Millington filed a complaint against Temple. Temple moved to dismiss the complaint or, in the alternative, for a more definite statement. In our order dated July 18, 2005 we denied the motion to dismiss but granted the motion for a more definite statement and ordered the plaintiff to file and serve an amended complaint detailing her allegations. On August 8, 2005, Millington filed an amended complaint alleging Temple's refusal to accommodate her disabilities violated her rights under the "American with Disabilities Act, Civil Rights of People with Disabilities Act, Privacy Rights Act, Section 504 of Rehabilitation Act." Am. Compl. at 1. Millington further alleges that Temple discriminated against her on the basis of race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. On August 22, 2005, Temple filed the motion to dismiss currently before the court.

In evaluating a motion to dismiss under Rule 12(b)(6), we are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A claim should be dismissed only where "it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *see also Smith v. Nat'l R.R. Passenger Corp.,* 25 F.Supp.2d 578, 579 (E.D.Pa.1998). We may consider "the allegations contained in the complaint, exhibits attached thereto, and matters of public record." *Beverly Enterprises, Inc. v. Trump,* 182 F.3d 183, 190 n. 3 (3d Cir.1999); *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). This said, courts have long been required to construe the pleadings of pro se litigants liberally and to "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Dluhos v. Strasberg,* 321 F.3d 365 (3d Cir.2003); *Higgins v. Beyer,* 263 F.3d 683, 688 (3d Cir.2002).

II.

*3 At the outset we note that Congress has not enacted any law entitled the Civil Rights of People with Disabilities Act. While Rhode Island has passed a statute by that name, the law governs only entities doing business in that state. *See* R.I. Gen. Laws § 47-87-2. Neither party contends Rhode Island's CRDPA is in any way applicable to Millington's dental education in Pennsylvania. Consequently, even read broadly, the amended complaint does not state a claim under the CRPDA. Therefore, we grant Temple's motion to dismiss Millington's CRPDA claims.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                       Page 3

Slip Copy, 2006 WL 83447 (E.D.Pa.)

**(Cite as: 2006 WL 83447 (E.D.Pa.))**

Millington also claims a violation of a statute called the Privacy Rights Act. However, Congress has passed no such law. Giving Millington's amended complaint the liberal construction required by our Court of Appeals, we read Millington's claim as one arising under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g. Congress enacted FERPA pursuant to its power under the Spending Clause in Article I of the United States Constitution in an effort to reduce the inappropriate release of educational records to improper persons. FERPA conditions an institution's receipt of federal funds on its refusal to disclose educational records to improper persons. Congress did not, however, include in FERPA an explicit private right of action to enforce its provisions. Instead, it empowers the Secretary of Education to enforce FERPA by denying funding to offending institutions. *See* 20 U.S.C. § 1232g(f).

Because FERPA does not contain an explicit private right of action, Millington may only proceed, if at all, under 42 U.S.C. § 1983 or an implied right of action. The Supreme Court has held that FERPA's spending provisions fail to confer rights enforceable under 42 U.S.C. § 1983. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 287, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). Therefore, Millington must rely on the courts to imply a right of action from the text of FERPA on which she can sue. While the Court's opinion in *Gonzaga* does not explicitly hold that FERPA contains no implied right of action in favor of private individuals, it all but compels the conclusion that no implied right of action exists.

Private rights of action must be created by Congress. *Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). The Supreme Court has stated that the inquiry regarding whether a court can imply a private right of action is different from the question of whether a violation of a statute may be enforced by § 1983. *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 508 n. 9, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The two inquiries, however, "overlap in one meaningful respect." *Gonzaga,* at 283. A court faced with either inquiry must first determine whether Congress intended to create a federal right by looking at the text of the statute. *Id.* Private litigants may not enforce a statute's provisions unless Congress clearly creates a private right of action in the text of statute by using language that "unmistakably focus[es] on the benefitted class." *Gonzaga,* at 284 (citing *Cannon v. Univ. of Chicago,* 441 U.S. 677, 691, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). Where the court is asked to imply a right of action, the plaintiff must further demonstrate the text of the statute manifests an intent to "create not just a private right but also a private remedy." *Alexander,* at 286 (citing *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)). When a statute is "phrased as a directive to federal agencies engaged in the distribution of public funds ... there is far less reason to infer a private remedy in favor of individual persons." *Id.* at 289; *see also Gonzaga,* at 287; *Cannon,* at 690-93; *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

*4 In *Gonzaga,* the Supreme Court stated that "there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights." 536 U.S. at 287. FERPA's provisions "entirely lack the sort of rights-creating language critical to showing the requisite congressional intent to create new rights." *Id.* (internal punctuation and citation omitted). Instead, FERPA provides only the Secretary of Education with enforcement powers, commanding that "[n]o funds shall be made available" to any "educational agency or institution" which employs a prohibited "policy or practice." 20 U.S.C. § 1232g(b)(1). The Court further noted that FERPA's nondisclosure provisions "speak only in terms of institutional policy and practice, not individual instances of disclosure." *Id.* at 288. In short, because FERPA's text does not purport to create or confer rights on a particular class of persons, Congress did not intend private enforcement of FERPA. Accordingly, we will not imply a right of action from the text of FERPA in favor of private parties such as Millington to enforce violations of FERPA's provisions.

Because FERPA does not contain either an express or implied private right of action and cannot be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                     Page 4
Slip Copy, 2006 WL 83447 (E.D.Pa.)
**(Cite as: 2006 WL 83447 (E.D.Pa.))**

enforced by § 1983, Millington cannot state a claim under FERPA. Therefore, we grant Temple's motion to dismiss Millington's FERPA claims.

Millington argues that Temple has discriminated against her in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Our Court of Appeals has explained that in order to state a claim under § 1981 a plaintiff "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir.2001). Despite construing Millington's amended complaint liberally, it fails to state a claim under § 1981.

Even if we assume that Millington is a member of a racial minority and that the e-mail targeted that same minority, she cannot satisfy the other elements stated in *Brown*. We do not know who sent the e-mail or when it was sent. The amended complaint does not allege that Temple was at all involved in the creation or sending of the purported e-mail. Furthermore, the amended complaint does not state how receiving the e-mail interfered with any of Millington's rights protected by § 1981.

We have already given Millington sufficient opportunity to specify and support her claims. In this court's order of July 18, 2005 denying Temple's first motion to dismiss, we ordered the plaintiff to file and serve an amended complaint that would describe in greater detail "the specific wrongs that the **Temple University School** of **Dentistry** allegedly committed ..." Millington has not come close to satisfying even the lenient standards required of pro se plaintiffs in this regard. Accordingly, we dismiss Millington's claims of discrimination on the basis of race under § 1981.

*5 Finally, Temple asserts that Millington's claims under the ADA and RHA are barred by the applicable statutes of limitation. Neither the ADA nor the RHA includes a statute of limitations. Where Congress does not include a statute of limitations in the text of a law, the Supreme Court has held that the most closely analogous state statute of limitations shall apply unless that choice would be inconsistent with federal law. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Our Court of Appeals has instructed that in "determining which state limitations period to use in federal civil rights cases, we look to the ... statute of limitations for personal injury actions." *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir.2002). In Pennsylvania the limitations period for personal injury actions is two years. 42 Pa. Cons.Stat. Ann. § 5524. Courts in this district have repeatedly held the Pennsylvania two-year statute of limitations applies both to the ADA and RHA. *See Saylor v. Ridge*, 989 F.Supp. 680, 686 (E.D.Pa.1998) (collecting cases).

Though we borrow the applicable statute of limitations from state law, the accrual of a cause of action, that is when the statute of limitations starts to run, is determined by federal law. *See id.* "A claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir.1994). It is important, therefore, to focus on the time the plaintiff became aware or should have been aware of the legal injury, not when the injury began negatively to affect the plaintiff. *See Saylor*, at 686.

Where it cannot be determined whether the statute of limitations has run until discovery has occurred, a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is usually the "proper vehicle for dismissal" on this basis. *Saylor*, 989 F.Supp. at 684. Courts in this district have long held, however, that "if it is clear from the face of the pleadings that a statute of limitations has expired, dismissal under Rule 12(b)(6) is appropriate." *Id.* (citing *Clark v. Sears, Roebuck & Co.*, 816 F.Supp. 1064, 1067 (E.D.Pa.1993)). Our Court of Appeals has approved this practice, stating that

> [w]hile the language of Rule 8(c) [of the Federal rules of Civil Procedure] indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy   Page 5
Slip Copy, 2006 WL 83447 (E.D.Pa.)

**(Cite as: 2006 WL 83447 (E.D.Pa.))**

exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.
*Oshiver,* at 1385 n. 1.

It is not sufficiently clear from the pleadings that the statute of limitations has run. Millington contends that she and her doctor sent a letter to Temple on July 13, 2002 seeking accommodations for her listed disabilities. Though it is undisputed Temple denied the request, the record does not reflect precisely when that occurred. In addition, it is not entirely evident that Millington's requests for accommodations throughout the 2002-2003 school year were identical to her July 13 letter. Consequently, this is not a case where noncompliance with the limitations period is shown in the amended complaint. After some discovery the parties and the court will be in a far better position to evaluate the merits of Temple's statute of limitations defense through the vehicle of a motion for summary judgment. Therefore, we will deny Temple's motion to dismiss Millington's ADA and RHA claims.

*6 Accordingly, Temple's motion to dismiss will be granted in part and denied in part.

*ORDER*
AND NOW, this 9th day of January, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant **Temple University School** of **Dentistry** to dismiss the plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED in part and DENIED in part;

(2) the motion is GRANTED with respect to plaintiff's claims under the "Civil Rights of People with Disabilities Act," the "Privacy Rights Act," the Family Educational Rights and Privacy Act of 1974, and 42 U.S.C. § 1981; and

(3) the motion is DENIED with respect to plaintiff's claims under the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973.

Slip Copy, 2006 WL 83447 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2684013 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Aug. 22, 2005)

• 2005 WL 2150176 (Trial Motion, Memorandum and Affidavit) Order (Jul. 11, 2005)

• 2:04cv03965 (Docket) (Sep. 02, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.