**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOHN GREEN, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAPE HENLOPEN SCHOOL DISTRICT, | : | |
| MORRIS, JAMES, HITCHENS & | : | C.A. No. 04-920 |
| WILLIAMS LLP, JENNIFER BRIERLEY, | : | |
| ESQUIRE, GARY R. SPRITZ, ESQUIRE, | : | |
| VICKI MCGINLEY, | : | |
| NANCY HORTSMANN, | : | |
| SECRETARY OF EDUCATION VALERIE | : | |
| WOODRUFF, KRIS BATTAGLINI, | : | |
| SHANNON PALMER, | : | |
| | : | |
| Defendants. | : | |

**STATE and HEARING OFFICER DEFENDANTS' ANSWERING
BRIEF IN OPPOSITION OF PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Mary L. Cooke, I.D. #3441
Department of Justice
102 W. Water Street
Dover, DE 19904
(302) 739-7641
mary.cooke@state.de.us
Attorney for Gary R. Spritz, Esq.,
Dr. Vicki McGinley, and
Nancy Horstmann

Craig R. Fitzgerald, I.D. #3730
Department of Justice
102 W. Water Street
Dover, DE 19904
(302) 739-7641
craig.fitzgerald@state.de.us
Attorney for Secretary of Education
Valerie Woodruff

Dated: March 14, 2006

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... iii

NATURE OF CASE AND STAGE OF PROCEEDINGS .................................................1

SUMMARY OF ARGUMENT ..............................................................3

STATEMENT OF FACTS ...............................................................4

ARGUMENT .........................................................................9

I.      STANDARD FOR MOTIONS TO AMEND ........................................9

II.     THE MOTION TO AMEND SHOULD BE DENIED AS THE AMENDED
        COMPLAINT IS FUTILE AND CANNOT WITHSTAND A RENEWED
        MOTION TO DISMISS. ...................................................10

        A.      Green's Attempt to Repackage and Resurrect IDEA Claims Cannot
                Withstand a Motion to Dismiss and the Motion to Amend Should be
                Denied as Futile ...........................................10

        B.      Green has Failed to Exhaust his Remedies under the IDEA. ....13

        C.      Green Cannot Maintain his Action Against the Individual Defendants in
                Their Individual Capacities under Section 504 of the Rehabilitation Act of
                1973. .......................................................14

        D.      Green's Claims for Money Damages Against the State and Hearing
                Officer Defendants under Title I of the ADA are Barred by the Eleventh
                Amendment ...................................................15

        E.      Green Cannot Maintain his Action Against the Individual Defendants in
                Their Individual Capacities Under Title I of the ADA. ........17

        F.      FERPA Creates No Personally Enforceable Rights. ............17

        G.      There Is No Implied Private Right of Action Under NCLB. ....18

        H.      Green's General Assertion of a Claim For Infliction of Emotional Distress
                Cannot Withstand a Motion to Dismiss and the Motion to Amend Should
                be Denied as Futile. .......................................22

I.     The "Amended Notice and Complaint" Otherwise
       Fails to Articulate..................................................................................24

# TABLE OF AUTHORITIES

## CASES

**Page**

*Adams v. Gould Inc.,* 739 F.2d 858 (3d Cir.1984), *cert. denied,* 469 U.S. 1122 (1985).....9

*Alexander v. Sandoval*, 532 U.S. 275 (2001).....................................................20

*Aumiller v. University of Delaware*, 434 F.Supp. 1273 (D.Del.1977) ............................23

*Association of Comm. Organizations for Reform Now v. New York City Dept. of Educ.*, 269 F.Supp.2d 338 (S.D.N.Y. 2003)...........................................................20, 21

*Barnes v. Gorman*, 536 U.S. 181 (2002) .........................................................25

*Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989)...............................................9

*Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001)....................16

*Burlington Sch. Comm. v. Massachusetts Dept. of Educ.*, 471 U.S. 359 (1985)................4

*Butler v. City of Prairie Vill.,* 172 F.3d 736 (10th Cir. 1999)..............................17

*California v. Sierra Club,* 451 U.S. 287 (1981) ..............................................19

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)..............................................20

*Carpenter v. Pennell School Dist. Elementary Unit v. Children & Youth Services*, No. 01-6270, 02-625, 2002 WL 1832854 (E.D.Pa. Aug. 9, 2002) ................................13

*Collinsgru v. Palmyra Board of Education*, 161 F.3d 225 (3d Cir. 1998).........................................................1, 6, 10, 11, 12

*Conley v. Gibson,* 355 U.S. 41 (1957) ........................................................9

*Dov. County of Centre, PA*, 242 F.3d 437 (3d Cir. 2001) ......................................15

*Ex parte State of New York No. 1*, 256 U.S. 490, 494 (1921)...................................15

*Emerson v. Thiel*, 296 F.3d 184 (3d Cir. 2002) ...........................................14, 17

*Fresh Start Academy v. Toledo Bd. Of Educ.*, 363 F.Supp.2d 910 (N.D.Ohio 2005) .......21

*Garica v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98 (2d Cir. 2001)...........................17

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ...............................................................17, 19

*Foman v. Davis,* 371 U.S. 178 (1962) ..............................................................................9

*Hafer v. Melo*, 502 U.S. 21 (1991) ................................................................................24

*Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463 (D.N.J. 1990)............9

*Hendrick Hudson Bd. of Educ. v. Rowley,* 458 U.S. 176 (1982) ...................................4, 11

*Hindes v. FDIC*, 137 F.3d 148 (3d Cir. 1998) ................................................................14

*Hohman v. State of Delaware Dept. of Corrections*, No. 01-562-GMS, 2001 WL 1593222 (D.Del. Dec. 11, 2001)....................................................................................................15

*Hufford v. State of Delaware, et al.,* C.A. No. 95-461-SLR, Robinson, J. (D. Del. January 22, 1996), *aff'd*, 96 F.3d 1433 (3d Cir. 1996).....................................................................8

*Irene and Gary B. v. Philadelphia Academy Charter Sch.*, No. 02-1716, 2003 WL 24052009 (E.D.Pa Jan. 29, 2003) ...............................................................................12, 13

*Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289 (3d Cir.1988) .................9

*Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161 (3d Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003)................................................................................................14, 17

*Lake v. Arnold,* 232 F.3d 360 (3d Cir. 2000)...................................................................9

*Lane v. Pena*, 518 U.S. 187 (1996)................................................................................14

*Magagna v. Salisbury Township Sch. Dist*, No. 98-1033, 1998 WL 961906 (E.D.Pa. Dec. 29, 1998) ..................................................................................................17

*Mandaleka v. Boyd*, 1993 WL 258798 (Del.Super. June 14, 1993) ................................23

*Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir. 1983), *cert. denied*, 464 U.S. 937 (1983)......................................................................................................................9

*Mattern v. Hudson*, 532 A.2d 85 (Del.Super. 1987).......................................................23

*Matthew M. v. The William Penn School District*, No. 01-7177, 2002 WL 1286910 (E.D.Pa. June 11, 2002) .................................................................................................13

*Maull v. Division of State Police*, 141 F.Supp.2d 463 (D.Del. 2001), aff'd, 39 Fed. Appx. 769 (3d Cir. 2002)................................................................................................16

*McCachren v. Blacklick Valley School Dist.*, 217 F.Supp.2d 594 (W.D. Pa. 2002) .........13

*McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F.Supp.2d 393 (E.D.Pa. 2002) ......17

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)...............15, 16, 22

*Quality Botanical Ingredients, Inc. v. Triarco Indus., Inc.* (In re Quality Botanical Ingredients, Inc.), 249 B.R. 619 (Bankr.D.N.J. 2000) ......................................10

*Riley v. Taylor,* 62 F.3d 86(3d Cir. 1995) ..........................................................9

*Robinson v. McCorkle*, 462 F.2d 111 (3rd Cir. 1972), *cert. denied*, 409 U.S. 1042 (1972)........................................................................................23

*Santiago v. New York State Department of Correctional Services*, 945 F.2d 25 (2d Cir. 1991), *cert. denied*, 502 U.S. 1094 (1992)........................................................17

*Schukylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405 (3d Cir. 1997), *cert. denied*, 522 U.S. 977 (1997)........................................................10

*Smith v. New Castle County Vo-Tech*, 574 F.Supp 813 (D.Del. 1983) ............................24

*Susavage v. Bucks County Sch. Intermediate Unit No. 22*, No. 00-6271, 2002 WL 109615 (E.D. Pa. Jan 22, 2002) ..................................................................................25

*Suter v. Artist M.*, 503 U.S. 347 (1992) ..........................................................20

*United States v. Georgia*, 546 U.S. ____, 126 S.Ct. 877, 163 L.Ed.2d 650 (Jan. 10, 2006)........................................................................................16

*Walker v. Snyder*, 213 F.3d 344 (7th Cir. 2000), *cert. denied*, 531 U.S. 1190 (2001) .......17

W*aterfront Guard Assocation v. Amstar Corp.*, 363 F. Supp. 1026 (D. Md. 1973), *aff'd*, 508 F.2d 839 (4th Cir. 1974), *cert. denied*, 421 U.S. 1000 (1975).....................................8

*W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995) ....................................13, 14, 24, 25

*Wesley v. Vaughn*, No. 9901228, 99-1229,2003 WL 1493375 (E.D.Pa. March 19, 2003) ..................................................................................17

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)............................24

## **STATUTES**

10 *Del. C.* § 4001 ..................................................................................15, 24

14 *Del. C.* § 604(c) ...................................................................................................5

14 *Del. C.* § 3134(b) .................................................................................................5

14 *Del. C.* § 3135 ......................................................................................................5

14 *Del. C.* § 3136 ......................................................................................................5

14 *Del. C.* § 3137 ......................................................................................................5

20 U.S.C. § 1412(a) ...................................................................................................4

20 U.S.C. § 1414(d) ...............................................................................................4, 10

20 U.S.C. § 1415(b)(2) ............................................................................................12

20 U.S.C. § 1415(i)(2)(A)

20 U.S.C. § 1415(l) ..................................................................................................13

20 U.S.C. § 6311(g)(2) ............................................................................................21

42 U.S.C. § 1983 ....................................................2, 7, 12 14 18, 19, 21, 22, 24

42 U.S.C. § 12112(a) ...............................................................................................17

42 U.S.C. § 12131(1) ...............................................................................................17

U.S. Const. Amend. XI ........................................................................................14, 16

U.S. Const. Amend. XIV .............................................................................................16

Fed. R. Civ. P. 12(b)(6) ............................................................................................8

Fed. R. Civ. P. 10(b) ................................................................................................7

Fed. R. Civ. P. 15(a) ................................................................................................9

## **<u>OTHER</u>**

Restatement (Second) of Torts § 46 .........................................................................23

## NATURE AND STAGE OF PROCEEDINGS

On August 4, 2004, Green filed a "Notice of Appeal and Complaint" naming nine Defendants, including the Cape Henlopen School District, three hearing panelists who sat on his son's special education due process panel, Secretary Woodruff, individually and in her role as Secretary of the Department of Education, Morris, James, Hitchens & Williams LLP, Jennifer Brierley, Esquire, and two Cape Henlopen District employees. On October 18, 2004, all nine Defendants filed a Joint Motion to Dismiss the "Notice of Appeal and Complaint" in its entirety. Relying on *Collinsgru v. Palmyra Board of Education*, 161 F.3d 225 (3d Cir. 1998), Defendants argued Green cannot represent his child's interests in the federal courts of the Third Circuit, and licensed legal counsel must enter an appearance to proceed. Among other things, Defendants argued Green failed to state a claim entitling him to relief, and the State and Hearing Officer Defendants asserted the protections of sovereign immunity, absolute immunity and qualified immunity.

On December 13, 2005, this Court issued its Memorandum Opinion on the Joint Motion to Dismiss ruling that Green is not permitted to represent his son's interests in federal court. (D.I. 16) The Court dismissed all claims Green brought on his son's behalf. The Court, however, denied Defendants' Motion to Dismiss "to the extent that Green presents a claim for violations of his own procedural due process rights." (D.I. 16, at 15).

On January 28, 2006, Green filed an "Amended Notice of Appeal to United States District Court for Delaware and Complaint" (hereinafter the "Amended Notice and Complaint") which the Court docketed as a Motion to Amend Complaint. (D.I. 37) The

"Amended Notice and Complaint" names eleven additional defendants, including the past and current Superintendents of the Cape Henlopen School District, seven members of the Cape Henlopen School District Board of Education, individually and in their official capacities as Board members, and Secretary Spellings, individually and in her role as Secretary of the United States Department of Education.  In addition, Green alleges for the first time violation of a number of federal statutes, including the Individuals with Disabilities Education Act (IDEA), the No Child Left Behind Act (NCLB), the Family Education and Records and Privacy Act (FERPA), Section 504 of the Rehabilitation Act of 1973 (Section 504),  Title I of the Americans' with Disabilities Act (ADA), and the Civil Rights Act, 42. U.S.C. § 1983 (Section1983).  This is the State and Hearing Officer Defendants' Answering Brief in Opposition to Plaintiff's Motion to Amend Complaint.

## SUMMARY OF ARGUMENT

1.     Plaintiff John Green's Motion to Amend Complaint should be denied as the amended complaint is futile and cannot withstand a renewed motion to dismiss. Plaintiff John Green's "Amended Notice of Appeal to United States District Court for Delaware and Complaint" fails to state valid claims pursuant to various federal and state statutes.

## STATEMENT OF FACTS

John Green, Jr. ("Green") is the parent of A.G.,[1] a minor student of the Cape

Henlopen School District.   A.G. is identified as a child with a disability under the

Individuals with Disabilities Education Act ("IDEA"), and Chapter 31, Title 14 of the

Delaware Code ("Chapter 31") and receives special education and related services

through the Cape Henlopen School District ("the District").    Under the IDEA and

Chapter 31, the District has a responsibility to provide a free appropriate public education

("FAPE") to its students with disabilities.  20 U.S.C. 1412(a); *Hendrick Hudson Bd. of*

*Educ. V. Rowley,* 458 U.S. 176 (1982).  The free appropriate public education must be

tailored to the specific educational needs of the child by means of an individualized

educational program, known as the "IEP".  *Rowley*, 458 U.S. at 191.  The IEP is a

comprehensive statement of the child's educational needs and the specially designed

instruction and related services to be designed to meet the child's needs.  20 U.S.C. §

1414(d); *Rowley,* 458 U.S. 176; *Burlington Sch. Comm. V. Massachusetts Dept. of Educ.*,

471 U.S. 359 (1985).

The IDEA also requires school districts to initiate and conduct IEP meetings for

the purpose of working jointly with parents to develop, review, and revise the IEP of a

child with a disability.  20 U.S.C. § 1414(d).  As a general rule, the child's IEP team

includes the parents of the child, at least one regular education and special education

teacher, as well as an administrator of the school district.  20 U.S.C. §1414(d)(1)(B).

The child's IEP team develops, revises, and reviews a child's IEP, but the school district

is ultimately responsible for assuring the IEP is reasonably calculated to provide

meaningful educational benefit.  *Rowley,* 458 U.S. 176.

---

[1]   To preserve the child's confidentiality, he is referred to as "A.G.".

If parents believe their child is not receiving FAPE, parents can request a due process hearing from the Secretary of the Delaware Department of Education. 14 *Del. C.* § 3135. Generally, unless good cause exists for an extension, the hearing must be held and a decision rendered within 45 days. *See*, 14 *Del. C.* § 3136.

This lawsuit arises from a dispute between Green and the District over whether the District provided his son with a free appropriate public education. The background of the dispute can be summarized as follows:

On or about December 30, 2003, Green filed a request for an administrative due process hearing with the Secretary of the Delaware Department of Education claiming the District had not met his son's education needs for the previous three school years. To remedy the alleged denial of FAPE, Green sought A.G.'s private placement in a 24 hour residential school at public expense. If the Panel determined A.G. was denied FAPE and his private placement was appropriate, the State of Delaware would be responsible for 70% of the costs of the private placement, and the District 30%. *See*, 14 *Del. C.* § 604(c), 14 *Del. C.* § 3134(b). Given the State's interest, the Department of Education of the State of Delaware was joined as a party to the administrative proceedings.

In accordance with 14 *Del. C.* § 3137(d), a three member panel was appointed to conduct the hearing including a Delaware attorney, an educator knowledgeable in the field of special education, and a layperson with a demonstrated interest in the education of children with disabilities. Serving on A.G.'s Panel were Dr. Vicki McGinley and Nancy Hortsmann, as well as the panel chair Gary Spritz, Esquire. Jennifer L. Brierley, Esquire of Morris, James, Hitchens & Williams LLP represented the District at the

5

administrative hearing, and Louann Vari, Esquire represented the Department.  Neither
Green nor his son, were represented by counsel.

Following a six day hearing throughout March and April 2004, the Panel rendered
a decision on May 6, 2004 finding in favor of the District and the Department on all
allegations.  Specifically, the Panel concluded the District provided A.G. a free
appropriate public education, his IEPs were reasonably calculated to provide him
meaningful educational benefit, and his placement at a 24 hour residential facility at
public expense was not warranted.

Having exhausted his administrative remedies as to A.G.'s claims at that time,
Green appealed the Panel Decision to the U.S. District Court for the District of Delaware.
Specifically, on August 4, 2004, Green filed a "Notice of Appeal and Complaint" naming
nine defendants, including the District, the three panelists, Secretary Woodruff, Morris,
James, Hitchens & Williams LLP, Jennifer Brierley, Esquire, and two District employees,
Kris Battaglini and Shannon Palmer.

On October 18, 2004, all nine Defendants filed a Joint Motion to Dismiss to the
"Notice of Appeal and Complaint" in its entirety.  Relying on *Collinsgru v. Palmyra
Board of Education*, 161 F.3d 225 (3d Cir. 1998), Defendants argued Green cannot
represent his child's interests in the federal courts of the Third Circuit, and licensed legal
counsel must enter an appearance to proceed.  Among other things, Defendants argued
Green failed to state a claim entitling him to relief, and the State and Hearing Officer
Defendants asserted the protections of sovereign immunity, absolute immunity and
qualified immunity.

On December 13, 2005, this Court issued its Memorandum Opinion ruling that Green is not permitted to represent his son's interests in federal court. The Court dismissed all claims Green brought on his son's behalf. The Court, however, denied Defendants' Motion to Dismiss "*to the extent that Green presents a claim for violations of own procedural due process rights.*" (D.I. 15, page 15).

On January 28, 2006, Green filed an "Amended Notice of Appeal to United States District Court for Delaware and Complaint" which the Court docketed as a Motion to Amend Complaint. The "Amended Notice and Complaint" names eleven additional defendants, including the past and current Superintendents of the Cape Henlopen School District, seven members of the Cape Henlopen School District Board of Education, individually and in their official capacities as Board members, and Secretary Spellings, individually and in her role as Secretary of the United States Department of Education. In addition, Green alleges violation of a number of federal statutes, including the Individuals with Disabilities Education Act (IDEA), the No Child Left Behind Act (NCLB), the Family Education and Records and Privacy Act (FERPA), Section 504 of the Rehabilitation Act of 1973 (Section 504), the Americans' with Disabilities Act (ADA), and the Civil Rights Act, 42 U.S.C. §1983 (Section 1983).

### Green's Allegations

While Green's "Amended Notice and Complaint" lacks precision in many respects, it is apparent Green is seeking judicial review of the Panel Decision on his son's behalf. However, Green's "Notice of Appeal and Complaint" departs from the important pleading requirements of the Federal Rules of Civil Procedure. Rule 10(b), for example, requires each claim resting upon a separate occurrence to be stated in a

separate count.  Green's pleading fails this important test and contains no more than a series of factual allegations with interspersed legal terms and phrases.  Green's pleading leaves each of the Defendants in the awkward position of guessing what legal claims are being asserted against which Defendant.   The pleading simply does not set forth the prima facie elements of each claim in a manner to fairly apprise the Defendants of the action being taken against them.   W*aterfront Guard Assocation v. Amstar Corp.*, 363 F. Supp. 1026, 1030 (D. Md. 1973), *aff'd* 508 F.2d 839 (4th Cir. 1974), *cert. denied*, 421 U.S. 1000 (1975).   Green has not met the initial burden of pleading a claim upon which relief can be granted, and the standards for dismissal of this action under Rule 12(b)(6) are satisfied.   *Hufford v. State of Delaware, et al.,* C.A. No. 95-461-SLR, Robinson, J. (D. Del. January 22, 1996), *aff'd*, 96 F.3d 1433 (3d Cir. 1996).   Accordingly, the amendments are futile and the Motion to Amend Complaint should be denied.

## ARGUMENT

### I.     STANDARD FOR MOTIONS TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend a pleading only by leave of the court once a responsive pleading has been filed and that "leave shall be freely given when justice so requires."  *See Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).  The United States Supreme Court, in *Foman v. Davis,* 371 U.S. 178 (1962), instructed that "the grant or denial of an opportunity to amend is within the discretion of the ... Court.".  *See also Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983), *cert. denied*, 464 U.S. 937 (1983).  However, leave to file is not without limits.  The *Foman* Court also articulated the instances in which leave should be denied: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman,* 371 U.S. at 182. *See also Riley v. Taylor,* 62 F.3d 86, 90 (3d Cir. 1995) (citing *Conley v. Gibson,* 355 U.S. 41, 48 (1957)); *Adams v. Gould Inc.,* 739 F.2d 858, 864 (3d Cir.1984), *cert. denied,* 469 U.S. 1122 (1985).

"Futility" of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue.  Thus a trial court may appropriately deny a motion to amend where "the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir.1988). *See also Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir. 2000); *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (quoting *Massarsky v.*

*General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.) *cert. denied,* 464 U.S. 937 (1983));

*Quality Botanical Ingredients, Inc. v. Triarco Indus., Inc.* (In re Quality Botanical

Ingredients, Inc.), 249 B.R. 619, 629 (Bankr.D.N.J. 2000).  In applying the standards to a

12 (b)(6) the court must accept all well plead facts as true.  The Court, however, does not

have to accept "unsupported conclusions and unwarranted references."  *Schukylkill*

*Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

## II.     THE MOTION TO AMEND SHOULD BE DENIED AS THE AMENDED COMPLAINT IS FUTILE AND CANNOT WITHSTAND A RENEWED MOTION TO DISMISS.

### A.     Green's Attempt to Repackage and Resurrect IDEA Claims Cannot Withstand a Motion to Dismiss and the Motion to Amend Should be Denied as Futile.

Green admits that he cannot present his son's case in federal court without an

attorney.  (D.I. 37, pages 5, 11).  The substantive IDEA claims relating to a free

appropriate public education, the drafting and implementation of IEPs, and the

implementation of special education services belong to his son, A.G., and not to Green.

*Collinsgru v. Palmyra Board of Education,* 161 F.3d 225 (3d Cir. 1998).  Among the

**many** IDEA claims that Green has tried to resurrect include: claims that the "District and

State" refused to discuss staffing as part of the IEP development and that the "District

and State" refused to implement or discuss recognized educational methodology.  (D.I.

37, page 8);  20 U.S.C. § 1414.  Green further tries to resurrect IDEA claims that the

"District and State" did not produce daily lesson plans for his son, failed to draft IEP(s),

refused hold IEP meetings,  State personnel would stall and drag out IEP meetings, the

State's attorney would attend and even call for a vote at IEP meetings, the State

influenced the actual make up of the members of the IEP team,  the State even issued

10

grades to his son, that the State has pre-approved IEPs which it forces upon students, that the Stated drafted faulty IEPs, and that the State failed to follow these IEPs. (D.I. 37, pages 8, 9, 13, 15, 16, 17); 20 U.S.C. § 1412(a), 20 U.S.C. § 1414; *Hendrick Hudson Bd. of Educ. V. Rowley,* 458 U.S. 176 (1982). Green also assails the findings of fact and conclusions of law of made by the panel during the administrative hearing. (D.I. 37, page 21-23). Even more troubling is the fact that Green purposefully lumps together the "District and State" in his numerous allegations. Green has now alleged that representatives from the State of Delaware were involved in the IEP development process and that representatives of the State attended IEP meetings. (D.I. 37, page 16). All of these are substantive IDEA claims that relate to FAPE.

Green's claims regarding whether his son received a free appropriate education belong to his son. *Collinsgru v. Palmyra Board of Education*, 161 F.3d 225 (3d. Cir. 1998); (D.I. 15, page 6). In *Collinsgru*, the parents also attempted to assert "their own rights as parents under the IDEA." *Collinsgru*, 161 F.3d at 228. The Third Circuit did determine that parents are entitled to certain "specific procedural rights" under the IDEA. *Collinsgru* 161 F.3d at 233. These rights included the right to represent their children in administrative hearings, the right to present evidence and cross examine witnesses in the administrative hearing, and the right to bring a civil action in federal court following the administrative determination. *Id*. However, even after acknowledging these procedural rights during the administrative hearing and the right to appeal the administrative determination to federal court, the Third Circuit declined to find that the parents were the real party in interest. *Id*.

The Third Circuit then framed the question as to whether the parents had their own right of action under the IDEA. *Id*. The Court stated, "[w]e note here that the Collingsrus' argument is analogous to asking us to find that they have a private right of action under the IDEA." *Id*. However, after a lengthy joint rights analysis, the Third Circuit determined that the "IDEA's language and legislative history, as well as relevant case law and policy considerations, suggest that Congress did not clearly intend to create joint rights in parents under the IDEA." *Id*. at 236.

The *Collinsgru* court also noted that educational surrogates "may act on the behalf of a child to the same extent that a parent could." *Collinsgru*, 161 F.3d at 236; 20 U.S.C. § 1415 (b)(2). This argument should be extended further by analogy, to the current context. If an educational surrogate claimed violations of the procedural rights under the IDEA (i.e. the right to represent the child during the administrative hearing, the right to present evidence or cross examine witnesses), would that educational surrogate have a private right of action pursuant to 42 U.S.C. Section 1983 based on alleged violations of the procedural rights granted to them under the IDEA? Or do those procedural rights granted to the educational surrogate serve only to enforce the substantive claims of the child under the IDEA?

In *Irene and Gary B. v. Philadelphia Academy Charter*, No. 02-1716, 2003 WL 24052009 at 1 (E.D.Pa. Jan. 29, 2003), the parents alleged violations of the IDEA, Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. Section 1983, and Pennsylania statutes. Parents filed these actions on their own behalf and on behalf of their son. *Id*. The Court reasoned that pursuant to *Collinsgru*, "the IDEA grants [parents] *procedural* rights to enforce the *substantive* rights of their children." *Id*. at 5. Applying *Collinsgru*,

the Court also reasoned that the case law did not "recognize substantive rights in the parents themselves." *Id*. The court further reasoned that "[w]ithout independent substantive rights under the IDEA, plaintiffs lack standing to sue on their own behalf." *Id*. The *Irene and Gary B* court then proceeded to dismiss all of the parent's claims. *Id* ; *See also*, *Matthew M. v. The William Penn School District*, No. 01-71772002 WL 1286910 at 3 (E.D.Pa. June 11, 2002) ("Although the IDEA endows parents with procedural rights . . .they do not have standing to sue in their own right under the IDEA"); *Carpenter v. Pennell School Dist. Elementary Unit v. Children & Youth Services*, No. 01-670, 02-625, 2002 WL 1832854 (E.D.Pa. Aug. 9, 2002).

      B.    <u>Green has Failed to Exhaust his Remedies under the IDEA</u>

      The IDEA contains provisions which require the exhaustion of administrative remedies. "[B]efore the filing of a civil action. . . .seeking relief that is available under this subchapter, the procedures under subsection (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. 1415(l); *McCachren v. Blacklick Valley School Dist*., 217 F.Supp2d 594 (W.D. Pa. 2002). "[E]xhaustion under the IDEA is excused when resort to such procedures would be 'futile or inadequate.'" *Irene and Gary B., v. Philadelphia Academy Charter School*, No. 02-1716, 2003 WL 24052009 (E.D.Pa Jan. 29, 2003); quoting *W.B. v. Matula*, 67 F.3d 484, 495 (3d Cir. 1995). It is plaintiff's burden to prove the "futility or inadequacy of administrative exhaustion." Green has alleged violations from September 10, 2001 to the present date. To the extent that Green has new alleged violations of the IDEA that were not part of the previous administrative hearing, they

should be dismissed if the relief requested is "also available" under the IDEA.  *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995).

      C.     <u>Green Cannot Maintain his Action Against the Individual Defendants in Their Individual Capacities under Section 504 of the Rehabilitation Act of 1973.</u>

      "Section 504 of the Rehabilitation Act prohibits discrimination of the basis of disability in federally funded programs or activities."  *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003). Section 504 states:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits or, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794 (a).  "Program or activity" includes the operations of a state department or agency that receives federal financial assistance pursuant to Section 504.  29 U.S.C. § 794 (a); *Koslow,* 302 F.3d at 168; *Emerson v. Thiel*, 296 F.3d 184, 190 (3d Cir. 2002).

      "The Supreme Court has recognized Section 504  of the Rehabilitation Act, following the 1986 amendment, to be an 'unambiguous waiver of the State's Eleventh Amendment immunity.'"  *Koslow* 302 F.3d at 170 (quoting *Lane v. Pena*, 518 U.S. 187, 200 (1996)).  However, "a state official sued in his individual capacity for prospective injunctive relief is a person within Section 1983 and the Eleventh Amendment does not bar such a suit."  *Koslow* 302 F.3d at 179 (quoting *Hindes v. FDIC*, 137 F.3d 148, 165 (3d Cir. 1998)).  Individuals are not liable under Section 504 of the Rehabilitation Act of 1973 absent proof that the individual received federal funding.  *Emerson*, 296 F.3d at

190.  Punitive damages are unavailable in a claim brought pursuant to Section 504 of the

Rehabilitation Act of 1973.  *Dov. County of Centre, PA*, 242 F.3d 437 (3d Cir. 2001).

"A cause of action under the Rehabilitation Act accrues at the time of the

discriminatory act."  *Hohman v. State of Delaware Dept. of Corrections*, No. 01-562-

GMS, 2001 WL 1593222.  (D.Del. Dec. 11, 2001)  The applicable statute of limitations

for any of Green's claim pursuant to Section 504 action is two years.  *Id.*; 10 Del. C. §

8119.  On August 4, 2004, Green filed a "Notice of Appeal and Complaint" that did not

allege any violations of Section 504 of the Rehabilitation Act of 1973.  As such, Section

504 claims on behalf of A.G. relating to FAPE may be barred by the statute of limitations

and bringing these claims would be prejudicial to the Defendants.  Any of Green's

*personal* claims pursuant to Section 504 may also be time barred by the statue of

limitations and prejudicial to the Defendants.  Nevertheless, Green cannot maintain the

Section 504 claims against the individual defendants and cannot pursue punitive

damages.

     D.    <u>Green's Claims for Money Damages Against the State and Hearing
Officer Defendants under Title I of the ADA are Barred by the Eleventh
Amendment.</u>

The Eleventh Amendment "is a constitutional limitation on the federal judicial

power established in Art. III" of the U.S. Constitution.  *Pennhurst State School &*

*Hospital v. Halderman*, 465 U.S. 89, 98 (1984).  The Constitution "'does not embrace

authority to entertain a suit by private parties against a State without consent given: not

one brought by citizens of another State, or by citizens or subjects of a foreign State; and

not even one brought by its own citizens, . . .   . '" *Id.* (quoting *Ex parte State of New York*

*No. 1*, 256 U.S. 490, 494 (1921)).

15

A State may consent to suit in federal court, but the State's consent must "be unequivocally expressed." *Pennhurst,* 465 U.S. at 99. Congress also can abrogate Eleventh Amendment immunity "with respect to rights protected by the Fourteenth Amendment" but there must be "an unequivocal expression of congressional intent." *Id.*

The "Amended Notice and Complaint" generally alleges a violation of Title I of the ADA.[2] (D.I. 37, page 4, lines 10-11) In *Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001), the United States Supreme Court resolved the disagreement among the Circuit Courts as to whether the Eleventh Amendment bars suits for money damages brought by an individual, such as Green, against a state under Title I of the ADA. Because Congress exceeded its authority in abrogating the States' Eleventh Amendment immunity under Title I of the ADA, the Supreme Court concluded that individual lawsuits for money damages against a state for failure to comply with the ADA are barred by the Eleventh Amendment. *Id.* at 967-968. *See also, Maull v. Division of State Police*, 141 F.Supp.2d 463, 471 (D. Del. 2001), aff'd, 39 Fed. Appx. 769 (3d Cir. July 9, 2002) ("In light of the Supreme Court's decision in *Garrett*, the Court concludes that Plaintiff's claims for money damages against the State Defendants under the ADA are barred by the Eleventh Amendment.")

Further, the State of Delaware has not consented under Title I of the ADA to suit by Green. The Fourteenth Amendment's Equal Protection Clause, standing alone without congressional legislation, is "insufficient to permit private suits against states or state officials in the face of Eleventh Amendment immunity. Something more than [the Equal

---

[2] While Green has not plead a violation of Title II of the ADA which prohibits discrimination by public entities, the State and Hearing Officer Defendants acknowledge that the United States Supreme Court recently held that insofar as Title II creates a private cause of action for damages against States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity. *United States v. Georgia*, 546 U.S. ____, 126 S.Ct. 877, 163 L.Ed.2d 650 (Jan. 10, 2006).

Protection Clause's] imposition of substantive duties on the states seems to be needed before one may conclude that Congress has clearly stated its intent to abrogate immunity." *Santiago v. New York State Department of Correctional Services*, 945 F.2d 25, 30 (2d Cir. 1991), *cert. denied*, 502 U.S. 1094 (1992).

      E.     <u>Green Cannot Maintain his Action Against the Individual Defendants in Their Individual Capacities Under Title I of the ADA.</u>[3]

Title I of the ADA protects individuals with a disability from discrimination in employment. 42 U.S.C. § 12112(a). Green does not allege that he has ever been in an employment relationship with the State or Hearing Officer Defendants. Even if he had, the Third Circuit has noted that "there appears to be no individual liability for damages under Title I of the ADA" because the statute is limited to "employers" with fifteen or more employees. *Koslow v. Pennsylvania,* 302 F.3d 161, 177-78 (3d Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003); S*ee also, McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F.Supp.2d 393, 398 (E.D.Pa. 2002) (confirming that this is the "consensus view" among district courts in the Third Circuit).

      F.     <u>FERPA Creates No Personally Enforceable Rights</u>

In *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), the United States Supreme Court held that the Family Educational Rights and Privacy Act of 1974 ("FERPA"), does not

---

[3] Likewise, individuals are not liable under Title II of the ADA, which prohibits discrimination by public entities. A "public entity" is defined as "any state or local government … any department, agency, special purpose district, or other instrumentality of a State or States or local government…." 42 U.S.C. § 12131(1). The individual defendants, acting in their individual capacities, are not public entities within the meaning of the ADA and, thus, cannot be proper defendants even under Title II of the ADA. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (citing *Garica v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001); *Butler v. City of Prairie Vill.,* 172 F.3d 736, 744 (10th Cir. 1999); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000), *cert. denied*, 531 U.S. 1190 (2001) (acknowledging that individuals are not liable under Title II of the ADA); *see also Wesley v. Vaughn*, No. 99-1228, 2003 WL 1493375, *4 (E.D.Pa. March 19, 2003) (plaintiff's amendment to add two "as yet unidentified" individuals in their individual capacities denied as futile as plaintiff failed to state a claim under Title II of the ADA); *Magagna v. Salisbury Township Sch. Dist*, No. 98-1033, 1998 WL 961906, 3 (E.D.Pa. Dec. 29, 1998).

confer enforceable rights either through the Act itself or under Section 1983. "[T]here is no question that FERPA's nondisclosure provisions fail to confer enforceable rights." *Id.* at 287. The statute contains its own administrative remedy, the Court noted, giving the U.S. Department of Education (through the Family Policy Compliance Office or FPCO) power to terminate funding if a district fails to comply substantially with a FERPA requirement, provided such compliance can be secured voluntarily. *Id.* at 289.

It is also undeniable that the majority held that FERPA's confidentiality provisions created no enforceable rights under Section 1983: "In sum, if Congress wishes to create new rights enforceable under Section 1983, it must do so in clear and unambiguous terms – no less and no more than what is required for Congress to create new rights enforceable under an implied right of action." *Id.* at 290. Chief Justice William H. Rehnquist, writing for the majority, further pointed out that "FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions." *Id.*

Accordingly, because FERPA creates no personally enforceable rights either through the Act itself or Section 1983, Green's Motion to Amend Complaint is futile and should be denied as to this claim.

      G.    <u>There Is No Implied Private Right of Action Under NCLB</u>

Green's "Amended Notice and Complaint" makes the conclusory allegation that the District and the State have "manufactured fraudulent report cards" (D.I. 37, page 9, lines 5-9) and "refused to provide disclosure of relevant documents" (D.I. 37, page 10,

lines 1-5) in violation of his civil rights under the NCLB.  He has asked this court, *inter alia*, for compensatory and punitive damages.

First, Green makes no claim that the Hearing Officer Defendants or Secretary Woodruff personally either manufactured report cards or withheld relevant documents. Further, Green has wholly failed to articulate how the alleged conduct violates NCLB. He has cited no authority in his "Amended Notice and Complaint" for why the alleged wrongdoings constitute a claim cognizable under NCLB.  For this reason alone, the amendment is futile and the motion to amend should be denied.

Secondly, the NCLB neither authorizes a plaintiff like Green to seek an individual remedy, nor to seek private enforcement of the NCLB's provisions.  While is unclear from the "Amended Notice and Complaint" whether Green claims the NCLB creates private rights that he is attempting to enforce under 42 U.S.C. § 1983, or whether he claims the Act creates an implied private right of action, the initial inquiry is the same. As expressed in *Gongaza Univ. v. Doe*, 536 U.S. 273 (2002):

> … [T[he initial inquiry – determining whether a statute confers any right at all – is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute "confers rights on a particular class of persons."  This makes obvious sense, since § 1983 merely provides a mechanism for enforcing individual rights "secured" elsewhere, i.e., rights independently secured by the Constitution and laws" of the United States.

536 U.S. at 28 (quoting *California v. Sierra Club,* 451 U.S. 287 (1981)).

Whether Green's claims are brought under Section 1983 or under an implied private right of action, the Court must first "determine whether Congress *intended to create a federal right,* or, in other words, whether Congress intended to confer individual rights upon a class of beneficiaries."  *Gonzaga Univ. v. Doe*, 536 U.S. 2273, 283, 285

(2002). "[I]f Congress wishes to create new rights enforceable under Section 1983, it must do so in clear and unambiguous terms – no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action." *Gonzaga*, 536 U.S. at 290. "If the text and structure of the federal statute do not evince this clear and unambiguous Congressional intention to create individual rights, 'there is no basis for a private suit, whether under § 1983 or under an implied right of action.'" *Association of Comm. Organizations for Reform Now v. New York City Dept. of Educ.*, 269 F.Supp.2d 338, 344 (S.D.N.Y 2003) (quoting *Gonzaga*, 536 U.S. at 286). Moreover, "[i]t is only violations of rights, not laws, which give rise to § 1983 actions." *Gonzaga*, 536 U.S. at 283.

Green has cited no provision of NCLB which would authorize a private action for enforcement of its terms. "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'"[4] *Gonzaga*, 536 U.S. at 282 (citing *Cannon v. University of Chicago*, 441 U.S. 677, 692, n. 13 (1979)). Moreover, "even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Id.* at 284 (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)) (emphasis in original).

---

[4] By its terms, NCLB is intended to benefit students, not parents. There are clear parallels between the current case and *Suter v. Artist M.*, 503 U.S. 347 (1992). In *Suter*, a class of parents and children attempted to enforce a requirement under the Adoption Assistance and Child Welfare Act of 1980 that required States receiving funds for adoption assistance to have a "plan" and make "reasonable efforts" to keep children out of foster homes. The method to accomplish this was left to the States' discretion. 503 U.S. at 360. The HHS Secretary was authorized to enforce the law by reducing or eliminating payments to noncompliant. The Court concluded that as the Act conferred no specific, individually enforceable rights, there was no basis for private enforcement, even where, as in *Suter*, the persons attempting to bring an enforcement action were among the class of persons intended to benefit from the statutes' provisions. 503 U.S. at 363.

The two District Courts which looked at the issue of whether NCLB creates individual rights that are enforceable under Section 1983, have both held unequivocally that it does not.  In *Association of Comm. Organizations for Reform Now v. New York City Dept. of Educ.*, 269 F.Supp.2d 338 (S.D.N.Y 2003), the United States District Court for the Southern District of New York held "Congress did not intend to create individually enforceable rights with respect to the notice, transfer or … [supplemental education services] provisions contained in the NCLBA."  *Id.* at 344.  In so holding, the Court found that NCLB, like FERPA, contains no rights-creating language, focuses on the educational entities regulated rather than on any protected individuals, has an aggregate as opposed to an individual focus, and contains a centralized enforcement mechanism indicating a congressional intent that individual enforcement not be allowed. *Id.* at 344-46.

Likewise, in *Fresh Start Academy v. Toledo Bd. Of Educ.*, 363 F.Supp.2d 910 (N.D.Ohio 2005), the United States District Court for the Northern District of Ohio held, for the same reasons, that "providers of [supplemental education services] … may not bring an action under § 1983 or under an implied private right of action to enforce any provisions of the NCLBA, as the Act does not evince an unambiguous congressional intent to create rights enforceable by such individuals."  *Id.* at 916.

The State and Hearing Officer Defendants submit that there is no expression of Congressional intent anywhere in the language of NCLB to confer any individual right on Green as a parent to bring an enforcement action, not to grant any remedy to a complaining parent.  Instead, the penalty for noncompliance with the terms of NCLB is clearly stated under 20 U.S.C. § 6311(g)(2):

> Failure to meet requirements enacted in 2001. If a State fails to meet any
> of the requirements of this section, other than the requirements described
> in paragraph (1), then the Secretary may withhold funds for State
> administration under this part until the Secretary determines that the State
> has fulfilled those requirements.

Thus, just as in *Pennhurst*, the NCLB provides the federal government the discretion to withhold funds as the remedy for noncompliance.

NCLB, the law on which Green purports to base his claims, affords no right for an individual such as Green to bring a private enforcement action, nor any remedy of the kinds sought in Plaintiff's "Amended Notice and Complaint." For this reason, the Motion to Amend should be denied as it relates to claims brought pursuant to NCLB.

H.  Green's General Assertion of a Claim For Infliction of Emotional Distress
    Cannot Withstand a Motion to Dismiss and the Motion to Amend Should be
    Denied as Futile.

The imprecision and inadequacy of the "Amended Notice and Compliant" makes it difficult to determine which claims and factual allegations go together and to know which counts are leveled against which Defendants. To the extent that Green is broadly asserting that the State and Hearing Officer Defendants have caused him "great mental anguish to see how [his] son has been damaged." (D.I. 37, page 16, lines 9-10), the "Amended Notice and Complaint" does not specify a statutory or common law basis for the intentional infliction of emotional distress claim. To the extent that Green is generally invoking § 1983 as the basis for the Defendants liability, the Amended Notice and Compliant fails to state a claim on which the Court can grant relief and, consequently, the request to amend is futile.

A plaintiff suing for emotional distress damages pursuant to 42 U.S.C. §1983 must establish (1) a constitutional violation, (2) actual emotional injury, and (3) that such injury was proximately caused by the violation of his or her constitutional rights, s/he is

entitled to a reasonable award of damages.  See *Aumiller v. University of Delaware*, 434 F.Supp. 1273, 1310 (D.Del.1977).   Green fails to allege any causal nexus between the actions of State and Hearing Officer Defendants and any alleged injury suffered by him making his claims impermissible in the context of a civil rights action. *Robinson v. McCorkle*, 462 F.2d 111, 114 (3rd Cir. 1972), *cert. denied*, 409 U.S. 1042 (1972).

In addition, under Delaware law, the requirements for a claim of intentional infliction of emotional distress are as follows: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Mattern v. Hudson,* 532 A.2d 85, 85 (Del.Super.1987).  In *Mattern,* the Delaware Superior Court defined "extreme conduct" as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as ... utterly intolerable in a civilized community." *Id.* at 86 (citing Restatement (Second) Torts § 46, cmt.d).  In addition, "the distress requirement is met where the distress inflicted 'is so severe that no reasonable man could be expected to endure it.'" *Mandelaka v. Boyd,* 1993 WL 258798, at *1 (Del.Super. June 14, 1993) (quoting *Mattern,* 54 A.2d at 86).  In the present case, Green's general unsupported allegations of "mental anguish" do not rise to the level of distress required under Delaware law. Consequently, Green has not sufficiently stated a claim for intentional infliction of emotional distress and his Motion to Amend is futile and should be denied.

Lastly, to the extent the Plaintiff may be deemed to be asserting a pendent State claim, the State Tort Claims Act shields State Defendants from personal liability for acts done in good faith, without gross or wanton negligence, and arising out of and in

connection with, the performance of official discretionary duties.  10 *Del. C.* §4001(3); *see, Smith v. New Castle County Vo-Tech*, 574 F. Supp. 813, 820 (D. Del. 1983).  State Defendants are entitled to good faith immunity under 10 *Del. C.* §4001.  In order for the State Defendants to be held liable, Green must establish that their acts either were not in connection with the performance of any official duty..., not done in good faith... or constituted gross or wanton negligence.  A thorough review of Green's "Amended Notice and Complaint" reveals that Green has failed to assert sufficient allegations to support a viable cause of action for intentional infliction of emotional distress and the Motion to Amend should be denied as to these claims.

     I.     The "Amended Notice and Complaint" Otherwise
            Fails to Articulate a Basis of Liability Under Section 1983.

Green further fails to identify the basis for his request for compensatory and punitive damages.  Presumably, he is attempting to state a claim under 42 U.S.C. § 1983.  Section 1983 provides a civil remedy for plaintiffs who demonstrate they were deprived a federally protected right by a "person" acting under color of state law.  *W.B. v. Matula*, 67 F.3d 484, 495 (3d Cir. 1995).

Green has sued Defendant Woodruff both individually and as Secretary of the Department of Education.  Secretary Woodruff cannot be sued in her official capacity under Section 1983.  A suit against state officials in their official capacities is treated as a suit against the State.  *Hafer v. Melo*, 502 U.S. 21 (1991).  Under federal law, a defendant in his or her official capacity is not a "person" for the purposes of 42 U.S.C. § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  This Court thus lacks jurisdiction over Secretary Woodruff in her official capacity for claims predicated on

24

Section 1983, and the Department of Education is outside the class of persons subject to liability under the statute.

In addition, Section 1983 does not confer substantive rights, but merely addresses the deprivation of rights created elsewhere. *W.B. Matula*, 67 F.3d at 495. To the extent that Green otherwise has failed to alleged facts from which the Court could infer the substance of any claim against the Defendants, he is also unable to withstand dismissal of claims under Section 1983.

Finally, even if the Court assumes that Green were able to demonstrate the requisite level of misconduct for an award of punitive damages, punitive damages are not available under the ADA or the IDEA. *Barnes v. Gorman*, 536 U.S. 181 (2002); *Susavage v. Bucks County Sch. Intermediate Unit No. 22*, 2002 WL 109615 (E.D. Pa. 2002). Nor are they available from the Defendants for Fourteenth Amendment violations under these circumstances. .

WHEREFORE, the State and Hearing Officer Defendants respectfully request the Court deny Green's Motion to Amend Complaint.


**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

*/s/ Mary L. Cooke*
Mary L. Cooke, I.D. #3441
Deputy Attorney General
102 W. Water Street
Dover, DE 19904
(302) 739-7641
mary.cooke@state.de.us
Attorney for Gary R. Spritz, Esq.,
Dr. Vicki McGinley, and
Nancy Horstmann

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

*/s/ Craig R. Fitzgerald*
Craig R. Fitzgerald, I.D. #3730
Deputy Attorney General
102 W. Water Street
Dover, DE 19904
(302) 739-7641
craig.fitzgerald@state.de.us
Attorney for Secretary of Education
Valerie Woodruff

## *CERTIFICATE OF MAILING AND/OR DELIVERY*

I hereby certify that on March 14, 2006, I electronically filed the State and Hearing Officer Defendants' Answering Brief in Opposition of Plaintiff's Motion to Amend Complaint with the Clerk of the Court using CM/ECF which will send notification of such filing to the following: David Williams, Esquire.  I hereby certify that on March 14, 2006, I have mailed the document by regular mail to the following non-registered participant:

> Mr. John Green
> 17252-9 North Village Main Boulevard
> Stop 143
> Lewes, DE 19958

> /s/ Craig R. Fitzgerald
> Craig R. Fitzgerald, I.D. #3730
> Deputy Attorney General
> 102 West Water Street
> Dover, DE 19901
> (302) 739-7641
> **craig.fitzgerald@state.de.us**