Westlaw.

Not Reported in F.Supp.2d                                                                                     Page 1

Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)

**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
IRENE and Gary B., individually and on behalf of
their son, Jason B.
Plaintiffs,
v.
PHILADELPHIA ACADEMY CHARTER
SCHOOL, Nobel Learning Communities, Inc., Brien
Gardiner, individually and officially, Pennsylvania
Department of Education,
and Charles Zogby, Secretary of the Pennsylvania
Department of Education
Defendants.
No. Civ.A. 02-1716.

Jan. 29, 2003.

Jennifer Lowman, Lorrie McKinley, Nancy Curtis Ryan, Philadelphia, PA, for Plaintiffs.

Claudia M. Tesoro, Philadelphia, PA, for Defendants.

Memorandum and Order

YOHN, J.

*1 Plaintiffs, Irene and Gary B., individually and on behalf of their son, Jason, filed the current action against defendants Philadelphia Academy Charter School ("PACS"), Nobel Learning Communities, Inc. ("Nobel"), the principal of PACS, Brien Gardiner ("Gardiner"), the Pennsylvania Department of Education ("PDE"), and the Secretary of the PDE, Charles Zogby. Plaintiffs allege that defendants violated both federal and state law. Specifically, plaintiffs allege that defendants violated: (1) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et. seq. (Supp.2002)(Count I); (2) section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (" § 504")(Count II); (3) Section 1983, 42 U.S.C. § 1983 (" § 1983")(Count III); and (4) Pennsylvania's Charter School Law, 24 Pa. Cons.Stat. Ann. §§ 17-1701-A through 17-1732-A(Supp.2002)(Count IV). Currently pending before the court is the combined motion to dismiss of defendants PACS and Gardiner [FN1] for lack of subject matter jurisdiction, pursuant to Federal Rule Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule Civil Procedure 12(b)(6). For the reasons stated below, the court will grant defendants' motion in part and deny it in part.

> FN1. Defendant Nobel also submitted a motion to dismiss (Doc. No. 8); the court has responded separately to these two motions, and therefore this memorandum and order concerns only the combined motion to dismiss of defendants PACS and Gardiner.

The court will dismiss all claims, Counts I through IV, brought by plaintiffs Irene and Gary, on their own behalf. As to the claims brought on Jason's behalf, the court will dismiss all of these claims against defendant Gardiner in his official capacity. In addition, the court will dismiss his § 504 claim, Count II, as to defendant Gardiner in his individual capacity. As to Count III, the court finds that plaintiffs have failed to state a claim under § 1983 premised on the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, and the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, and thus, those claims will be dismissed. The balance of § 1983 claims may proceed. As to Count IV, the court will dismiss plaintiffs' claim under the Pennsylvania Charter School Law, as to both defendants. [FN2] Finally, the court will not permit plaintiffs' request for

Not Reported in F.Supp.2d                                                                                                   Page 2

Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)

**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

punitive damages against PACS. [FN3]

> FN2. Plaintiffs concede in their Opposition Memorandum to Defendants' Motion to Dismiss that their claims based on the Pennsylvania Charter School Law should be dismissed because this statute does not provide a claim for monetary damages. Accordingly, I will dismiss this claim, as against both defendants PACS and Gardiner, without discussion.

> FN3. The following claims will remain viable: plaintiffs' claims on behalf of their son Jason: (1) under the IDEA, against both defendants PACS and Gardiner; (2) under § 504, against PACS only; (3) under § 1983, premised on violations of the IDEA and § 504, against defendant Gardiner in his individual capacity and against defendant PACS. In addition, plaintiffs' request for punitive damages may proceed against defendant Gardiner in his individual capacity.

BACKGROUND

Because the IDEA [FN4] is at the heart of this case, the court will begin its analysis of the pending motion with a discussion of this statute. The IDEA protects the rights of disabled children in American public schools. [FN5] It guarantees that "[a] free appropriate public education [FAPE] is available to all children with disabilities ... between the ages of 3 and 21...." 20 U.S.C. § 1412(1)(A). In exchange for federal funds, primary responsibility for ensuring that schools comply with the IDEA's requirements falls upon the "state educational agency," which in Pennsylvania is the PDE. *Id.* § 1401(28); Compl. ¶¶ 13, 14. In order to ensure that a each disabled child receives a FAPE, the statute requires that "[a]n individualized education program [be] developed, reviewed, and revised for each child with a disability...." *Id.* § 1412(4). An individualized education program ("IEP") is a written document that identifies a child's present performance levels, establishes long-term and short-term achievement goals, and articulates the special instruction and related services the child will receive in order to progress towards these goals. Compl. ¶ 16.

> FN4. The IDEA was formerly the Education for the Handicapped Act ("EHA"); therefore, some of the caselaw relied upon in this opinion will refer to the statute by its former title.

> FN5. It is uncontested that this includes charter schools, such as PACS.

*2 The IDEA and its implementing regulations establish procedural rights that empower parents to ensure that their disabled children receive a FAPE. *Id.* § 1415; 34 C.F.R. 300.660-662. Section 1415 establishes administrative procedures that parents may pursue to enforce the statutory protections for their child. These procedures are a prerequisite to filing suit in federal court. 20 § 1415(1). Certain regulations promulgated under the IDEA establish the minimum state complaint procedures that states must provide to parents dissatisfied with the services provided to their disabled children. 34 C.F.R. 300.660-662. Plaintiffs allege that despite these procedural safeguards, their son Jason was denied his rights under the IDEA.

Jason is a 15-year old boy with Down Syndrome, mental retardation, and profound hearing loss in his right ear. Compl. ¶ 33. Although he is currently at a first or second grade level academically, he is able to perform most basic life skills, such as dressing, feeding, and using the bathroom, without the assistance of others. *Id.*

Prior to September 1999, Jason attended public schools in Philadelphia. *Id.* ¶ 34. In the Spring of 1999, Jason's mother contacted the founder and principal of PACS, defendant Brien Gardiner, and the President of the PACS Board of Directors, Marilyn Belancio, to discuss her son's educational needs. *Id.* ¶ 35. At this point, Ms. Belancio represented to Jason's mother that PACS would meet Jason's educational needs and would develop a new IEP for him that would include life skills and academics. *Id.* ¶ 36. She stated to Jason's mother that this would be completed prior to the beginning

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 3

Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)

**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

of the school year 1999-2000. *Id.*

When Jason entered the eighth grade at PACS in September of 1999, his parents provided the school with Jason's prior IEP, developed in January of 1999, when he was a student in the Philadelphia School District. *Id.* ¶¶ 38, 40. This prior IEP established that Jason would receive 1) instruction by a certified special education teacher, 2) hearing and speech therapy twice per week, 3) individual tutoring three times per week, and 4) transportation to and from school every day. *Id.* ¶ 39. Although this prior IEP had been scheduled for review in March of 1999, the IEP team did not instigate revisions at that time because Jason was to receive the necessary life skills programing the upcoming fall and a new IEP was to be developed at PACS. *Id.* ¶ 38.

Plaintiffs contend that PACS failed to fulfill its duties to Jason during the year that he was enrolled there. During that school year, other than speech therapy, which commenced in October of 1999, and bus transportation at the end of the school year, they contend that PACS provided none of the services promised by Jason's prior IEP. *Id.* ¶ 42. In addition to not implementing Jason's prior IEP, PACS did not establish a new IEP for him. This was so despite Jason's mother's numerous requests, both verbal and written, that PACS provide the services promised in his prior IEP, and develop an updated IEP, adding new services, including life skills programming. *Id.* ¶¶ 41, 43. PACS also failed to provide a written explanation of why it would not schedule an IEP meeting. *Id.* ¶ 44. Plaintiffs also assert that PACS failed to inform them of the procedures through which they could challenge PACS' failure to convene an IEP meeting for Jason. *Id.* ¶ 44.

*3 Finally, in March 2000, an IEP meeting was conducted for Jason. The IEP was not completed, however, because PACS had no life skills training to offer Jason. In fact, no objectives were developed for Jason for the remainder of the year. *Id.* ¶ 46. Plaintiffs assert that, even if it had wanted to, PACS could not have properly implemented an IEP for Jason because it did not have the requisite special education staff. *Id.* ¶ 62.

During this same time, plaintiffs claim that members of PACS staff behaved inappropriately by giving Jason demerits and detentions for disability-related behavior, threatening suspension and expulsion, and giving him grades of Ds and Fs. *Id.* ¶ 48. Plaintiffs also assert that defendant Gardiner behaved improperly based on an event that occurred in May 2000. Following an incident in gym class involving Jason, defendant Gardiner screamed at Jason, dragged him into his office, and said to him "I'm going to kick your rear end out of school." As a result, Jason's arm was bruised, he went home crying and upset, and his parents kept him home for two weeks based on their concern for his physical and emotional well-being. *Id.* ¶ 49.

For the 2000-2001 school year, Jason attended ninth grade at Franklin Towne Charter High School ("Franklin Towne"); however, his parents withdrew him in part because that school was not complying with Jason's IEP. [FN6] *Id.* ¶ 52. Frustrated by the year and a half in which Jason was enrolled in PACS and Franklin Towne without receiving the educational services to meet his needs, Jason's parents filed a special education complaint ("education complaint") with the PDE's Division of Compliance, Monitoring, and Planning ("DOC") on January 19, 2001. *Id.* ¶ 24, 53-54; *see* 34 C.F.R. § 300.662 (providing guidelines for filing education complaint).

> FN6. During the Rule 16 conference, plaintiffs' counsel advised the court that since that time, Jason B. has been receiving an appropriate education elsewhere.

In their education complaint, plaintiffs asserted the allegations articulated above, that PACS failed to hold an IEP meeting despite repeated requests, failed to develop a timely IEP, and failed to provide Jason with prescribed special education services throughout the 1999-2000 school year. *Id.* ¶ 55. They requested that the PDE provide relief in the form of private educational placement at public expense, which plaintiffs did not understand was unavailable to them. *Id.* ¶ 56. Following the filing of this education complaint, when a DOC's special

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 4
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
(Cite as: 2003 WL 24052009 (E.D.Pa.))

education advisor contacted Jason's mother by telephone, she asked the adviser if he would accept documentation from her to substantiate the allegations in plaintiffs' complaint; he refused except for a few pages of notes written between Jason's parents and PACS teachers. Id. ¶ 57. Subsequently, Jason's mother contacted the adviser to determine the progress of the complaint investigation, however, he refused to discuss it with her. Specifically, he stated that DOC "is not into fact finding" and that he could not discuss anything about the investigation until after he had filed the Complaint Investigation Report ("CIR"), which DOC did on March 26, 2001. Id. ¶¶ 58, 59.

*4 Under 34 C.F.R. 300.661, the agency responsible for educational services provided under the IDEA, in this case the PDE, is required to issue a written decision that includes findings of fact and conclusions and reasons for its final decision. 34 C.F.R. § 300.661(a)(4)(i) and (ii). Despite this, the CIR issued by DOC in response to plaintiffs' educational complaint did not contain any findings of fact to support its conclusions or state reasons to support its final decision. Id. ¶ 60. Instead, plaintiffs allege that it simply stated conclusions, specifically, that an IEP meeting was held on January 27, 2000, that PACS had fulfilled Jason's IEP, and that therefore, corrective action was unnecessary. Id. ¶ 59. The CIR did note that Jason's mother had requested IEP conferences numerous times between September and December 1999 and yet, only meetings outside of the IEP team process were held with her. Id. ¶ 63. However, DOC found no violation of Jason's rights. Id. Additionally, plaintiffs claim that DOC applied an incorrect statute of limitations of one year, and thus did not review events that occurred before and through December 2000. Id. ¶ 64; 34 C.F.R. § 300.662(c). [FN7]

FN7. Under 34 C.F.R. § 300.662(c), if the complaint requests compensatory services for a violation that occurred within three years proceeding the complaint, the one year limitation does not apply. Plaintiffs assert that a request for compensatory services was inherent in their complaint. Id. ¶ 64.

On April 23, 2001, Jason's mother requested that DOC reconsider its decision. Id. ¶ 65. In this letter, she specifically requested compensatory education and argued that the applicable statute of limitations was three years. Id. ¶ 66. She also informed DOC that she had many documents relevant to the complaint which were not accepted during the initial investigation. Id. ¶ 67. DOC's Chief of the Division of Technical Assistance instructed her not to send any of her documentation because DOC would rely instead on the documents in PACS' possession. Id. Plaintiffs assert that DOC failed to return repeated phone calls from Jason's mother regarding the request for reconsideration. Id. ¶ 69. Then, in May 2001, DOC informed Jason's parents that its initial investigation was sufficient and that reconsideration was denied. Id. ¶ 70.

Plaintiffs also allege improprieties with respect to Jason's educational records. They assert that Gardiner and PACS tampered with and withheld them. Id. ¶ 72-74. They further assert that this tampering was PACS' response to discovering that DOC was investigating plaintiffs' complaint and that the tampering influenced DOC's findings. Id. ¶ 75-78. They claim that if DOC had fully investigated plaintiffs' complaint, it would have discovered the tampering and found in favor of Jason. Id. ¶ 79-80. Plaintiffs aver that defendants acted with deliberate indifference to the rights of Jason and his parents, which resulted in educational deprivation to Jason and emotional and psychological distress to both Jason and to his parents. Id. ¶ 81-83.

STANDARD OF REVIEW
The purpose of a Rule 12(b)(6) [FN8] motion is to test the legal sufficiency of the complaint. *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). Accordingly, the court "must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them." *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir.2001) (citing *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir.1993)). After so doing, the court must deny the motion unless "it is clear that no relief

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

could be granted under any set of facts that could be proved consistent with the allegations." *Doe,* 257 F.3d at 313 (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). This does not mean, however, that the court must accept as true "unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir.1997). As indicated by our court of appeals, "courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. [They] do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 (3d Cir.1998).

> FN8. Although defendants stated that their motion to dismiss was brought under both rules 12(b)(1) and 12(b)(6), they failed to articulate which of their arguments they were bringing under which rule; instead, they left this task for the court. The court concludes that all of defendants arguments are properly brought under 12(b)(6).
> In addition, defendants requested either dismissal or alternatively, summary judgment in their favor under Rule 56. Typically, when a defendant attaches extrinsic evidence to a Rule 12(b)(6) motion, the court must convert that motion into one for summary judgment under Rule 56 to give plaintiffs an opportunity to respond. *Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.1970). Where, however, an attached document is integral to a plaintiff's claims and its authenticity is not disputed, the plaintiff "obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196-1197 (3d Cir.1993); *see also Pryor v. National Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir.2002) ("Documents that the defendant attaches to the motion to dismiss are *considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim;* as such, they may be considered by the court.").

The only exhibits attached to defendants' motion are: (1) the first page of a nine-page IEP by PACS for Jason and (2) a nine-page IEP from PACS for Jason. The court did not consider these documents in ruling on defendants' motion. Therefore, I find no need to convert defendants' pending 12(b)(6) motion into one for summary judgment.

### DISCUSSION

*5 I will deny in part and grant in part defendants' motion to dismiss for failure to state claim upon which relief can be granted, pursuant to Rule 12(b)(6). I will first address several threshold issues raised by the defendants in their motion to dismiss. Following that, I will address the substantive issues raised by defendants.

### I. Threshold Issues

Defendants raise four threshold arguments for dismissal, one as to the claims of Irene and Gary B and three as to all of plaintiffs' claims. With respect to the former, they argue that the claims brought on behalf of plaintiffs Irene and Gary are barred as a result of lack of standing. Regarding all plaintiffs' claims, they argue that they are barred by: (1) untimely filing; (2) failure to exhaust administrative remedies; and (3) claim preclusion. In addition, the court will address an issue not raised by either party: the duplicative nature of the claims against PACS and Gardiner in his official capacity.

### A. Standing as to Parent Plaintiffs, Irene and Gary B.

Defendants assert that plaintiffs Irene and Gary B. lack standing to sue on their own behalf under the IDEA because it does not provide them with a private right of action. As plaintiffs' claims under § 1983 and the Rehabilitation Act are premised on alleged violations of the IDEA, if the parent plaintiffs lack standing under this statute as to their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 6
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

individual claims, the other claims are also deficient. Because the court agrees with defendants' position on this issue, all claims brought on the parents' own behalf will be dismissed.

There are two types of standing: constitutional standing and statutory standing. *See Steel Comp. v. Citizens for a Better Environment,* 523 U.S. 83, 92-94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (plurality) (distinguishing between these two and their implications); *Steel Comp.,* 523 U.S. at 117-118 (Stevens, J., concurring) (same). Constitutional standing refers to whether the Article III requirements for federal court jurisdiction have been satisfied. *Steel Comp.,* 523 U.S. at 92-97. In contrast, statutory standing refers to whether the statute under which a plaintiff is suing provides him or her with a right of action. [FN9] *Id.* at 92-93; *Federal Election Com'n v. National Conservative Political Action Committee,* 470 U.S. 480, 486-87, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985); *Maio,* 221 F.3d at 482. Irene and Gary lack statutory standing to sue under the IDEA; therefore, their individual claims will be dismissed.

> FN9. A challenge to standing may properly be brought under 12(b)(1) or 12(b)(6), depending upon whether it addresses statutory or constitutional standing. *City of Philadelphia v. Beretta U.S.A. Corp.,* 277 F.3d 415, 420 (3d Cir.2002); *Maio v. Aetna, Inc.,* 221 F.3d 472, 482 (3d Cir.2000). It appears that only constitutional standing, and not statutory standing, affects a court's subject matter jurisdiction. *Steel Comp.,* 523 U.S. at 92-97 (plurality); *Id.* at 120 (Stevens, J., concurring); *see United States v. 4492 S. Livonia Rd.,* 889 F.2d 1258, 1262 (2d Cir.1989) (noting distinction between these types of standing and stating that "[o]nly lack of Article III standing would deprive this court of jurisdiction") (cited in *United States v. Contents of Accounts Numbers 3034504504 and 144-07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc.,* 971 F.2d 974, 984 (3d Cir.1992)).

In their motion to dismiss, defendants challenge both plaintiffs' constitutional and statutory standing. Mot. to Dism. at 8-12. As the Supreme Court has stated that "statutory standing ... may properly be treated before Article III standing," I will do just that. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). In conducting that analysis, as statutory standing does not challenge the court's jurisdiction, I will treat this challenge as brought under 12(b)(6). Having found that plaintiffs lack statutory standing to sue under the IDEA, I need not address the Article III requirements of standing under Rule 12(b)(1).

In order to have statutory standing to sue under the IDEA, the statute must provide plaintiffs with a private right of action. Our court of appeals has held, however, that the IDEA does not confer substantive rights on parents. *Collinsgru v. Palmyra Bd. of Educ.,* 161 F.3d 225, 233-35 (3d Cir.1998) (engaging in detailed analysis of IDEA's language and legislative history and determining that IDEA does not grant parents a private right of action). With respect to parents, the IDEA grants them *procedural* rights to enforce the *substantive rights* of their children. *Collinsgru,* 161 F.3d at 234-35 (quoting the Court's distinction between substantive rights of children and procedural rights granted parents under the IDEA in *Board of Education v. Rowley,* 458 U.S. 176, 205-06, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)); *see also W.B. v. Matula,* 67 F.3d 484, 492 (3d Cir.1995); *Susavage v. Bucks Cty Schools Intermediate Unit No. 22,* 2002 WL 109616, at *21 (E.D.Pa. Jan. 22, 2002) (applying this rule of *Collinsgru* and explaining that cases cited by parents "merely establish that parents may pursue *their children's rights.* They do not recognize substantive rights in the parents themselves"). Without independent substantive rights under the IDEA, plaintiffs lack standing to sue on their own behalf. [FN10] Accordingly, because all of Irene and Gary's individual claims against defendants are premised on IDEA violations, they will all be dismissed. [FN11]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 7
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
(Cite as: 2003 WL 24052009 (E.D.Pa.))

> FN10. Defendants, wisely, do not assert that parents lack standing to sue under the IDEA and the derivative § 504 and § 1983 grounds on behalf of their son Jason; it is well-settled that they may. *See, e.g., Jeremy H.,* 95 F.3d 272; *W.B. v. Matula,* 67 F.3d 484 (3d Cir.1995). Thus, the claims brought on Jason's behalf are the subject of the remaining opinion.

> FN11. As a result, from this point on, when this opinion refers to "plaintiffs", the court is referring to the parents, Irene and Gary, in their representative capacity, bringing the remaining claims on behalf of their son Jason.

B. Timeliness

*6 Defendants next argue that plaintiffs' claims should be barred based on their untimeliness. [FN12] As all of plaintiffs' claims are based on alleged violations of the IDEA, if their IDEA claim is barred by untimeliness, then all of their claims are barred by it. However, because I find that the statute of limitations period applicable to IDEA claims has not yet expired, all of plaintiffs' claims survive this challenge.

> FN12. Our court of appeals has held that timeliness is properly brought under Rule 12(b)(6). *Anjelino v. N.Y. Times Co.,* 200 F.3d 73, 87-88 (3d Cir.1999).

Because the IDEA is silent as to a statute of limitations period, the court looks to the relevant law of the forum state to make this determination. *Tokarcik v. Forest Hills Sch. Dist.,* 665 F.2d 443, 448 (3d Cir.1981) (citing early Supreme Court cases). In looking to Pennsylvania limitation rules, the Third Circuit has decided that either a two-year or six-year statute of limitations applies to actions brought pursuant to the IDEA. *Id.* at 454; *see also Jeremy H. v. Mount Lebanon Sch. Dist.,* 95 F.3d 272, 280 (3d Cir.1996) ( "We again need not, and do not, decide between a two-year and a six year limitations period."). Because plaintiffs' cause of action satisfies either the two or six year period, defendant's motion to dismiss on this ground will be denied.

The limitations period for a claim under the IDEA begins to run "once the state administrative process has run its course." *Jeremy H.,* 95 F.3d at 280-81. In May 2001, the DOC issued its final response to Jason's parents' complaint. Compl. ¶ 70. As neither plaintiffs, nor defendants, nor the DOC, took further administrative action, this final denial by DOC signifies the point at which the administrative process had "run its course." Thus, the limitation period for plaintiffs' claims began in May 2001. On March 28, 2002, plaintiffs filed this action, well within the two-year time limit.

Moreover, Pennsylvania law dictates that the statute of limitations does not begin to run against any claim of an emancipated minor until that individual reaches the age of 18. 42 Pa. Cons.Stat. Ann. § 5533(b) (Supp.2002); *see Jeffery Y. v. St. Mary's Area School District,* 967 F.Supp. 852, 855 (W.D.Pa.1997) (applying this statute to minor's IDEA claim to show timeliness). As Jason is now only 15 years old, his IDEA and derivative claims are preserved. For these reasons, timeliness cannot bar the claims brought by his parents on his behalf.

C. Exhaustion

The IDEA requires a party to exhaust [FN13] administrative remedies before it may sue in federal court. 20 U.S.C.A. 1415(1); *Lester H. v. Gilhool,* 916 F.2d 865, 869 (3d Cir.1990). Plaintiffs seem to concede, as they must, that they did not satisfy the exhaustion requirements. [FN14] They argue, however, that their failure to exhaust is excused under a recognized exception to the exhaustion doctrine. The court agrees, and will therefore deny dismissal on this ground.

> FN13. Exhaustion is properly addressed under Rule 12(b)(6). *Anjelino,* 200 F.3d at 87-88.

> FN14. Instead of directly admitting this, plaintiffs assert that they are not required to exhaust the IDEA administrative

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 8
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

procedures. Compl. ¶ 31; Mem. In Oppos. at p. 12. Thus, it is undisputed that they did not exhaust these procedures.

According to our court of appeals, exhaustion under the IDEA is excused when resort to such procedures would be "futile or inadequate." *W.B. v. Matula*, 67 F.3d 484, 495 (3d Cir.1995); *see also Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (recognizing "futile or inadequate" exception to exhaustion requirement). Where plaintiffs seek application of this exception, it is their burden to prove the futility or inadequacy of administrative exhaustion. *Honig*, 484 U.S. at 327.

*7 The Third Circuit, excusing failure to exhaust based on the futility exception, has held that "where the relief sought in a civil action is *not* available in IDEA administrative proceedings, recourse to such proceedings would be futile and the exhaustion requirement is excused." *Matula*, 67 F.3d at 496 (citing *Lester H. v. Gilhool*, 916 F.3d 865, 870 (3d Cir.1990)). In reaching this conclusion, our court of appeals looked first to the language of the statute itself. The IDEA states that "before the filing of a civil action under such laws ... seeking relief *that is also available under this subchapter*, the procedures under subsection (f) and (g) of this section shall be exhausted...." 20 U.S.C. § 1415(l); [FN15] *see also Matula*, 67 F.3d at 495 (quoting this language). Recognizing that damages are available under § 1983, but not under the IDEA administrative procedures, the *Matula* court then concluded that "by its plain terms [this section] does not require exhaustion where the relief sought is unavailable in an administrative proceeding." *Id.* at 495. In a review of legislative history, it found compelling support for applying this exception to failure to exhaust IDEA administrative procedures. *Id.*; Senate Report, 1986 U.S.C.C.A.N. at 1805 ("exhaustion of EHA administrative remedies would ... be excused where ... resort to those proceedings would be futile."); House Report at 7 (stating that recourse to administrative remedies would be futile when "the hearing officer lacks the authority to grant the relief sought").

FN15. In 1997, Congress amended the IDEA such that the provision relied upon by the *Matula* court, then § 1415(f), became § 1415(l), but this language remained the same.

Thus, where exhaustion would be futile because the relief sought in the civil action cannot be obtained through IDEA administrative proceedings, the exhaustion requirement is excused. *See, e.g., McCachren v. Blacklick Valley School District*, 217 F.Supp.2d 594, 597 (2002); *Susavage v. Bucks County Schools Intermediate Unit No. 22*, 2002 WL 109615, at *20 (E.D.Pa. Jan.22, 2002), *Andrew P. v. Bucks County Intermediate Unit*, 2001 WL 1716993, at *2 (E.D.Pa. Dec.10, 2001); *Timothy D. v. Titusville Area Sch. Dist.*, 159 F.Supp.2d 857, 862 (W.D.Pa.2001); *Jeffrey Y. v. St. Mary's Area Sch. District*, 967 F.Supp. 852, 855 (W.D.Pa.1997); *but see, e.g., Blanck v. Exeter Sch. District*, 2002 WL 31247983 (E.D.Pa. Oct.2, 2002); *Lindsley v. Girard School District*, 213 F.Supp.2d 523, 537 (W.D.Pa. Aug.1, 2002). [FN16]

FN16. While there are district courts that have refused to apply this exception to IDEA plaintiffs who have not exhausted administrative remedies, most are readily distinguishable from the one at bar. These courts focus on the issue of eligibility under the IDEA, whether the child is disabled and thus qualified for the special services under the IDEA. These courts invoke the policy underlying the exhaustion requirement, that an administrative agency, rather than a district court, is the appropriate entity to determine the factual question of IDEA eligibility. *Blanck*, 2002 WL 31247983, at *3; *Lindsley*, 213 F.Supp.2d at 535. In contrast, here defendants do not contest that Jason is disabled and thus eligible for services under the IDEA. Consequently, the same policy is not applicable in the instant case; instead, this case is more in line with those cases applying the exception to the exhaustion requirement. Although the court recognizes the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 9
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
(Cite as: 2003 WL 24052009 (E.D.Pa.))

important policy concerns that persuaded these other district courts to narrow the rule of *Matula,* where our court of appeals has explicitly held more broadly, it is that rule that must be applied by this court.

According to their complaint, plaintiffs are seeking compensatory and punitive damages as well as declaratory and injunctive relief. Compl. ¶ 103. However, in their memorandum submitted in opposition to this motion to dismiss, plaintiffs restricted their claims against these defendants to compensatory and punitive damages. The administrative proceedings of the IDEA do not authorize such damages. *Matula,* 67 F.3d at 496; *see* Mot. to Dism at 21 (conceding that IDEA hearing officers may order compensatory education but not compensatory damages). Therefore, as the rule of *Matula* dictates, the futility exception applies to excuse plaintiffs' failure to exhaust. [FN17] As such, defendants' motion to dismiss for failure to exhaust will be denied.

> FN17. An additional reason to excuse exhaustion is found in the same legislative history relied on by the Third Circuit in *Matula,* 67 F.3d at 495. In *Joseph M. v. Southeast Delco Sch. Dist.,* another district court cited this congressional evidence and more. It relied upon Congress's distinction between "the *implementation* of an IEP, as opposed to the *contents* of an IEP." 2001 WL 283154 at *7 (E.D. Pa 201) (quoting a Representative and a Senator making identical remarks that "there are situations in which it is not appropriate to require the exhaustion of EHA administrative remedies before filing a civil law suit. These include complaints that ... an agency has failed to provide services specified in the child's individualized education program."); 131 Cong. Rec. S10396- 01 (daily ed. July 30, 1985) and H9964-02 (daily ed. Nov. 12, 1985); *see also* House Report at 7 (discussing appropriate exceptions to exhaustion requirement of EHA and stating that "it would be futile to use due process procedures ... [when] an agency has failed to provide services specified in the child's IEP...."). Plaintiffs assert that defendants failed to implement Jason's IEP, further evidence that Congress intended exhaustion to be excused in this instance. The court, however, does not rely on this distinction in deciding to excuse plaintiffs from the exhaustion requirement.

D. Claim Preclusion/Res Judicata

*8 Defendants next assert that the court is barred from entertaining plaintiffs' claims through application of claim preclusion or res judicata. Because the action of the PDE, through the DOC, in response to plaintiffs' education complaint, did not provide plaintiffs an opportunity to present their side of the case, that decision does not warrant preclusive effect.

Defendants contend that DOC's decision regarding plaintiffs' education complaint constitutes an agency decision warranting preclusive effect. Defendants correctly assert that claim preclusion can apply to administrative proceedings. *Facchiano v. U.S. Dep't of Labor,* 859 F.2d 1163, 1167 (3d Cir.1988), *cert. denied,* 490 U.S. 1097, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989). However, contrary to defendants' suggestion, it does not apply to all administrative decisions. Claim preclusion applies to administrative decisions only "when an administrative agency is acting in a judicial capacity and resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate...." *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *see University of Tennessee v. Elliott,* 478 U.S. 788, 798, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (quoting and applying this rule); *Swineford v. Sydney,* 15 F.3d 1258, 1266 (3d Cir.1994) (quoting and applying this rule to § 1983 claims).

The alleged facts, if proved, demonstrate that the administrative procedure conducted by DOC was not adversarial and did not afford plaintiffs an adequate opportunity to present evidence to support their claim. Plaintiffs assert that "Jason's mother

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 10

Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)

**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

asked the special education adviser if he would accept documentation from her to substantiate the allegations in the complaint. However, [he] refused to accept such documentation except for a few pages of notes exchanged between the family and Jason's teacher at PACS." Compl. ¶ 57. According to plaintiffs, at one point, the special education adviser even said that "DOC 'is not into fact finding."' Id. ¶ 58. Furthermore, "[w]hen Jason's mother asked DOC to reconsider its initial CIR, she advised DOC that she had 'a box full of documents' for DOC to review that DOC had not accepted the first time around. However, [DOC] told her that she should not send any of her documentation to DOC, but rather it would rely on the documents in the possession of the charter school." Id. ¶ 68.

These allegations demonstrate that DOC did not engage in fact finding but instead summarily rejected plaintiffs' evidence without granting them an opportunity to litigate. As such, this procedure is a sharp contrast to "an administrative agency ... acting in a judicial capacity and resolv[ing] issues of fact properly before it which the parties have had an adequate opportunity to litigate...." *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Accordingly, this administrative decision does not trigger claim preclusion; therefore, the court rejects this as a valid ground for dismissing plaintiffs' claims.

E. Claims Against Gardiner in His Official Capacity

*9 Although neither party has raised the issue of the duplicative nature of plaintiffs' claims against defendant PACS and defendant Gardiner in his official capacity, in the interest of clarity and efficiency, the court is compelled to do so. The Supreme Court has explained that "the real party in interest in an official-capacity suit is the government entity itself and not the named official." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1992); *see Brandon v. Holt,* 469 U.S. 464, 471-72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) ("judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents...."). "Since official-capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent," *Monell,* 436 U.S. at 691 n. 55, it is appropriate to dismiss the claims against the individual in his official capacity and retain them against the real party in interest. *See McCachren v. Blacklick Valley School District,* 217 F.Supp.2d 594, 599 (W.D.Pa.2002) (dismissing official capacity actions for this reason involving claims under the IDEA, the Rehabilitation Act, § 1983, and the Fourteenth Amendment); *Daby v. Decrescenzo,* 1996 WL 510095, at *26 (E.D.Pa. Sept.9, 1996) (finding that such claims "merge" and thus dismissing the official capacity claims). Therefore, I will dismiss all claims against defendant Gardiner in his official capacity and retain those same claims against the real party in interest, PACS.

II. Substantive Issues Under 12(b)(6)

A. Failure to State a Claim Under IDEA (Count I)

Defendants argue that plaintiffs have failed to state a claim under the IDEA because they have not shown themselves to be "aggrieved" as required and defined by the IDEA. Mot. to Dism. at 24 (citing 20 § 1415(i)(2)(A)). This argument, however, is based on a misconstruction of the statute; under a more reasonable interpretation, the court finds that plaintiffs here were not required to demonstrate that they are "aggrieved" because such a requirement is simply an articulation of the exhaustion requirement, from which plaintiffs have already been excused.

Section 1415(i)(2)(A) of the IDEA states that "[a]ny party aggrieved by the findings and decision made under subsection (f) ... of this section who does not have the right to an appeal under subsection (g) of this section ... shall have the right to bring a civil action ...."). 20 § 1415(i)(2)(A). The subsections referred to in this provision refer to those administrative procedures that must be exhausted prior to civil suit. *Id.* § 1415(l)("before the filing of a civil action ... the procedures under subsections (f) and (g) ... shall be exhausted...."). Thus, the "aggrieved" provision quoted by defendants is simply an expression of the IDEA's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 11
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
(Cite as: 2003 WL 24052009 (E.D.Pa.))

exhaustion requirement. In fact, the Third Circuit case cited in defendants' memorandum in support of their argument on this issue found that this section expressed the IDEA's exhaustion requirement. Mot. to Dism. at 25 (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir.1994)).

*10 Accordingly, where exhaustion is excused, then showing that one is an "aggrieved party" is necessarily also excused. In essence, defendants have repeated their failure to exhaust argument, but couched it as a failure to state a claim argument. As the court determined above, exhaustion here is excused, *see supra* section I.C.; therefore, failing to assert that one is "aggrieved" under this section is not fatal to plaintiffs' claim.

B. Failure to State a Claim Under § 504 (Count II) [FN18]

> FN18. "Congress specifically intended that EHA [IDEA] violations could be redressed by § 504 and § 1983 actions...." *Matula*, 67 F.3d at 494.; *Jeremy H.*, 95 F.3d 272 (applying this).

Defendants argue that plaintiffs have failed to allege the required elements of a § 504 claim against PACS. [FN19] The court finds, however, that plaintiffs' allegations, reasonably interpreted, do allege such a claim. Therefore, their motion to dismiss this claim against PACS will be denied.

> FN19. Plaintiffs concede that defendant Gardiner is not a proper defendant under § 504. Mem. In Oppos. at 22, n. 8. Accordingly, I will dismiss this claim against him. The following analysis, therefore, applies only to defendant PACS.

In order to survive a motion to dismiss a § 504 [FN20] claim, plaintiffs must adequately allege that: (1) Jason is disabled as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; (3) PACS receives federal financial assistance; and (4) Jason was excluded from participation in, denied the benefits of, or subject to discrimination at PACS. *Matula*, 67 F.3d at 492; *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir.1991). As defendants contest only the fourth prong, the court's evaluation will be limited to this element. Mot. to Dism. at 31.

> FN20. The pertinent part of § 504 states that:
> No otherwise qualified individual with a disability in the United States, as defined in section 705(2) of this title, shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

In satisfying the fourth requirement, "plaintiffs 'need not establish that there has been an intent to discriminate in order to prevail under § 504." ' *Matula*, 67 F.3d at 492 (quoting *Alexander v. Choate*, 469 U.S. 287, 297, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *Nathanson*, 926 F.2d at 1384 (same). Plaintiffs asserted in their complaint, and again emphasized in their response to defendants' motion, the following: (1) PACS failed to provide Jason with services required to address his disability which denied him an appropriate education; Compl. ¶¶ 41, 42, 45-47; Mem. in Oppos. at 23; (2) PACS staff inappropriately disciplined Jason for behavior related to his disabilities by threatening him with suspension and expulsion and giving him grades of Ds and Fs. Compl. ¶ 48; Mem. in Oppos. at 23-24; and (3) defendant Gardiner screamed at Jason, dragged him to his office, bruising Jason's arm as a result and threatened "to kick [his] rear end out of school." Compl. ¶ 49. This incident prompted Jason's parents to keep him home for two weeks from fear for his safety and emotional health. Compl. ¶¶ 50; Mem. in Oppos. at 24. Plaintiffs have sufficiently alleged facts which, if proved, resulted in denying Jason participation in, and the benefits of, an appropriate education, guaranteed to him by the IDEA, or qualify as discrimination. [FN21] Accordingly, plaintiffs have sufficiently pled a cause of action under § 504, and thus,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 12
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

dismissal on this ground will be denied.

> FN21. Defendants argue that the court should also require a showing of "bad faith or gross misjudgment" for maintenance of plaintiffs' § 504 claim. Although defendants correctly assert that some courts require this, they rely primarily on caselaw from other circuits. Mot. to Dism. at 30. They admit that our court of appeals has never applied such a requirement. They provide no law suggesting that our circuit ever will, nor any reason it should. Accordingly, I will apply the four well-settled elements of a § 504 cause of action. *See O.F. v. Chester Upland Sch. Dist.,* 2000 WL 424276, at *6 (E.D.Pa.Ap.19, 2000) (reasoning that because our court of appeals has yet to adopt this more stringent standard, it would not be required to survive a motion to dismiss); *see also McKellar v. Commonwealth of PA., Dept. of Education,* 1999 WL 124381, at *5 (E.D.Pa. Feb.23, 1999) (interpreting the "bad faith and gross misjudgment" standard not as an additional or more stringent requirement but rather as one means of establishing circumstantially the element of discrimination based on a disability). Furthermore, even if such a standard were adopted by the Third Circuit, the court cannot say that the facts alleged by plaintiffs do not qualify as "gross misjudgment," which precludes dismissal.

C. Failure to State a Claim Under § 1983 (Count III)

In order to sufficiently plead a claim under § 1983, [FN22] a plaintiff must point to (1) state action that (2) deprived him/her of a federally protected right. As bases for their § 1983 claims, [FN23] plaintiffs allege that defendants PACS and Gardiner are state agents that deprived Jason of his rights secured under: (1) the IDEA; (2) § 504 of the Rehabilitation Act; (3) the Equal Protection Clause; and (4) the Family Education Rights and Privacy Act.

> FN22. Section 1983 states that:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

> FN23. "Section 1983 does not confer substantive rights, but merely redresses the deprivation of those rights elsewhere secured. Those rights may be created by the Constitution or federal statute, and hence in a § 1983 action a person may challenge federal statutory violations by state agents." *Matula,* 67 F.3d at 493.

1. Section 1983 Claim Against PACS

*11 It is now well-settled that a municipal entity is a state actor for purposes of liability under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A public school district is a municipal entity. *See, e.g., Jett v. Dallas Independent School District,* 491 U.S. 807 (1989); *Matula,* 67 F.3d at 484. Comparably, in Pennsylvania, a charter school is "an independent public school established and operated under a charter from the local board of school directors." 24 Pa. Cons.Stat. Ann. § 17-1703-A. As such, PACS is part of the public school system. Accordingly, where a state that receives federal funds under the IDEA, in this case Pennsylvania, authorizes charter schools to effectuate the state's duties under the IDEA, it is appropriate to treat such charter schools as a state actor at least in the context of resolving claims brought under the IDEA. [FN24] Moreover, defendants nowhere challenge the finding that in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 13
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
(Cite as: 2003 WL 24052009 (E.D.Pa.))

this instance PACS is a state actor. Therefore, I conclude that PACS was acting under the color of state law and thus will be subject to § 1983 liability if plaintiffs are able to prove that the actions of PACS' agents deprived their son of any federally protected rights.

> FN24. Further support for treating this charter school as acting under the color of state law, at least for the purpose of a cause of action brought pursuant to the IDEA is found in the Pennsylvania Charter School Law which states that a charter school may "[s]ue and be sued, but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued." 24 PA. CONST. STAT. § 17-1714-A(2)(Westlaw 2002).

Such a municipal entity as we have here, however, will not be liable for the actions of its employees based on a *respondeat superior* theory. *Id.* at 691. Municipal liability occurs in instances in which a municipality has an unconstitutional or illegal policy or custom. *Id.* at 690. Thus, in order to survive dismissal of plaintiffs' § 1983 claim against these defendants, plaintiffs must assert that the actions of PACS employees that deprived Jason of his federally protected rights resulted from PACS' policy or custom. Plaintiff have so asserted. [FN25]

> FN25. Specifically, plaintiffs claim that "PACS ... and ... Gardiner have a policy or custom of engaging in the unlawful activities complained of herein and the actions taken by them and their staff were the product of official policy or represented customary behavior." Compl. ¶ 95.

Pleadings that are sufficient to preclude dismissal often fall far short of the proof required at a subsequent procedural posture. In order to prevail on their § 1983 claims, plaintiffs will have to specifically name agents of PACS that, while implementing a policy or custom [FN26] of PACS, deprived their son of his federally protected rights.

At this stage, however, plaintiffs' allegations are sufficient to survive defendants' motion to dismiss.

> FN26. There are numerous ways to prove such a policy or custom, including: (1) actions by municipal legislative bodies, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); (2) actions by municipal agencies or boards that exercise authority delegated by the municipal legislative body, *Monell*, 436 U.S. at 691; (3) actions by those with final authority for decision-making in the municipality, *Pembaur*, 475 U.S. at 481-86; (4) a policy of inadequate training or supervision, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); (5) a custom that has not been formally approved but is a recognizable practice, *Monell*, 436 U.S. at 690-91; *Anela v. City of Wildwood*, 790 F.2d 1063, 1069 (3d Cir.1986).

In their Memorandum in Opposition, plaintiffs, for the first time, assert that defendant Gardiner had policymaking authority. Mem. In Oppos. at 34. To prevail on this theory, plaintiffs will have to demonstrate that defendant Gardiner had such authority with respect to the particular area or issue in question, decisions regarding a student's educational services. *Praprotnik*, 485 U.S. at 123; *Jett*, 491 U.S. at 737; *Pembaur*, 475 U.S. at 481. Furthermore, they will have to point to some Pennsylvania law that is the source of such authority. *See Jett*, 491 U.S. at 737 (holding that "final policymaking authority" is a question of state law; *Pembaur*, 475 U.S. at 483 ("[a]uthority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority).

2. Defendant Gardiner in His Individual Capacity: Qualified Immunity

The suit against defendant Gardiner in his

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 14
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
(Cite as: 2003 WL 24052009 (E.D.Pa.))

individual capacity raises the issue of qualified immunity. Defendant argues that he is immune from plaintiffs' § 1983 action based on the doctrine of qualified immunity. The court disagrees, however, and thus, I will deny defendants' motion to dismiss on this ground.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* at 818 (citing *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), which applied qualified immunity to school officials); *Doe v. County of Centre, PA,* 242 F.3d 437, 454 (3d Cir.2001). In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoted in *W.B. v. Matula,* 67 F.3d 484, 492, 499 (3d Cir.1995)). Only if plaintiffs show that defendant Gardiner behaved unreasonably may he be compelled to defend this § 1983 action against him personally.

*12 With respect to claims premised on IDEA violations, the Third Circuit has stated that "to defeat a qualified immunity defense in an IDEA action, a plaintiff must show more than that he or she was denied a free, appropriate public education in a general sense; rather, a plaintiff must demonstrate 'that the particular actions taken by defendants were impermissible under law established at the time.'" *Matula,* 67 F.3d at 499-500. Here, plaintiffs allege specifically that defendant Gardiner violated Jason's rights under the IDEA by: "(1) failing to follow mandated procedural safeguards in the statute; (2) failing to make decisions about Jason's program through the requisite multi-disciplinary team; (3) failing to convene an IEP team meeting in accordance with the law; (4) failing to provide Jason with the necessary services to provide him with a free and appropriate education to which he was entitled; (5) tampering with Jason's educational records; and (6) failing to properly expend or appropriate resources derived from IDEA funds for Jason's benefit. [FN27] Compl. ¶ 86. If proved, these are well-settled grounds for finding violations of the IDEA. *Matula,* 67 F.3d at 500 (noting that failure to develop and implement IEP in timely manner is an IDEA violation); *Collinsgru v. Palmyra Bd. of Educ.,* 161 F.3d 225, 237 (3d Cir.1998) (noting that EHA requires the educational agency to make child's records accessible to parents and to provide adequate opportunity for parents to voice complaints regarding any aspect of their child's FAPE).

> FN27. In their complaint, plaintiffs overgeneralize by alleging these violations with respect to defendants PACS, Nobel, and Gardiner. Unable to distinguish which allegations apply specifically to defendant Gardiner, the court will assume for purposes of this motion to dismiss only that the factual allegations are sufficiently specific to establish violations of clearly established rights by defendant Gardiner.

As a principal and founder of PACS, a reasonable person in defendant Gardiner's position would have realized that such actions violated the IDEA. The violations plaintiffs allege do not involve a novel issue of law or a competing duty that would preclude these actions from being a clear violation of the IDEA. *See Doe v. County of Centre, PA,* 242 F.3d 437, 454 (3d Cir.2001) (reasoning that these factors justified qualified immunity). Furthermore, plaintiffs assert that defendant Gardiner had "significant first-hand knowledge" of the alleged denial of Jason's rights under the IDEA. *Matula,* 67 F.3d at 501 (considering this a factor against applying qualified immunity). Accordingly, plaintiffs have pled facts regarding defendant Gardiner that, if proved, support a finding that a reasonable principal would have been aware that the alleged treatment of Jason violated his rights under the IDEA. This conclusion is particularly clear given the current procedural posture of this case. *See McCachren v. Blacklick Valley School District,* 217 F.Supp.2d 594, 598 (2002) ("This alleged involvement in conduct that violates established law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
(Cite as: 2003 WL 24052009 (E.D.Pa.))

Page 15

is sufficient at the motion to dismiss stage to defeat the individual defendants' assertion of qualified immunity."). Therefore, the court will not dismiss this claim against defendant Gardiner in his individual capacity based on qualified immunity.

3. Equal Protection Violation and FERPA As Basis for § 1983 Claim

*13 Defendants assert that plaintiffs have failed to state a claim based on the Equal Protection Clause. The court agrees because plaintiffs have not alleged that Jason was treated differently from other students similarly situated. Thus, equal protection may not serve as a basis of their § 1983 claim.

In order to sufficiently plead a claim for a violation of the equal protection component of the Fourteenth Amendment, under § 1983, plaintiffs must allege that Jason "received different treatment from other similarly situated individuals or groups." See *Brown v. Borough of Mahaffey, PA.*, 35 F.3d 846, 850 (3d Cir.1994)(citing *City of Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), which lists elements of an equal protection claim); *Kevin M. v. Bristol Township Sch. Dist.*, 2002 WL 73233, at *8-9 (E.D.Pa. Jan.16, 2002) (applying this rule to § 1983 claim that, like present plaintiffs' claim, was premised on an equal protection basis for violations of IDEA and citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).

Plaintiffs nowhere allege that Jason's treatment was discriminatory because he was treated differently from other students similarly situated. Although in their responsive pleading they cite several paragraphs of their complaint as support for their contention that they did so plead, those paragraphs contain nothing related to a comparison of Jason's treatment to others' treatment, much less others who are similarly situated. Mem. In Oppos. at 31 (citing Compl. ¶¶ 41-45, 48-50). Consequently, plaintiffs have failed to allege this required element of an equal protection claim. [FN28] As a result, their § 1983 claim will not be permitted based upon this theory.

FN28. Plaintiffs incorrectly assert that "a school's failure to provide FAPE to children with disabilities constitutes a violation of the equal protection clause." Mem. In Oppos. at 30. This conclusory statement, notably unaccompanied by a single supportive citation, wholly disregards the required elements of an equal protection claim. Furthermore, it ignores Supreme Court caselaw differentiating discrimination and failure to accommodate for purposes of the Fourteenth Amendment's application. Only the former is prohibited by the equal protection clause. *Board of Trustees of Univ. of Alabama v. Garrett* 531 U.S. 356, 368, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."). As such, the same facts that establish a violation of the IDEA, an example of the positive law described by the Court in *Garrett*, may fail to establish an equal protection claim.

With respect to plaintiffs' § 1983 claim premised on the Family Education Rights and Privacy Act, 20 U.S.C. § 1232g, the Supreme Court held in June 2002 that FERPA may not serve as the basis for a § 1983 claim because it does not evidence congressional intent to create a private right of action. *Gonzaga University v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 2272, 153 L.Ed.2d 309 (2002). Accordingly, the alleged violation of this federal statute also will not provide a basis for plaintiffs' § 1983 action.

In summary, the § 1983 claim against defendant PACS is sufficiently pled and thus will not be dismissed. Plaintiffs' § 1983 claim against Gardiner in his personal capacity may proceed because qualified immunity does not protect him from liability based on the facts alleged. However, these surviving § 1983 claims may not proceed based on an alleged equal protection violation because plaintiffs failed to allege facts that establish the requisite differential treatment of Jason.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                             Page 16
Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)
**(Cite as: 2003 WL 24052009 (E.D.Pa.))**

Furthermore, they may not proceed under § 1983 based on FERPA because this statute does not create a private right of action. Therefore, plaintiffs' remaining viable § 1983 claims are against 1) PACS and 2) defendant Gardiner in his individual capacity, both premised on violations of the IDEA and § 504 of the Rehabilitation Act.

III. Punitive Damages [FN29]

> FN29. Plaintiffs are suing PACS as a municipal entity. As plaintiffs concede, punitive damages are not permitted against municipal entities for any of plaintiffs' claims. Mem. in Oppos. at 41; *City of Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that punitive damages are not appropriate against municipalities in § 1983 action); *Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 2103-04, 153 L.Ed.2d 230 (2002) (finding same for claims under § 504 of the Rehabilitation Act); *Susavage v. Bucks County Schools Intermediate Unit No. 22,* 2002 WL 109615, at *20 (E.D.Pa. Jan.22, 2002) (applying same to claims under IDEA by reasoning of *Doe* ). Accordingly, plaintiffs demand for punitive damages against defendants PACS will not be permitted.

*14 In contrast to the rule against punitive damages against municipalities, punitive damages may be permitted against an individual. The court will permit plaintiffs to proceed against defendant Gardiner in his individual capacity because there are facts alleged that state a claim for an award of punitive damages.

Punitive damages are appropriate when the alleged wrongful acts of the defendant reflect either bad motive or reckless indifference to the rights of the plaintiff. *See, e.g., Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); *Keenan v. City of Philadelphia,* 983 F.2d 459, 469-70 (3d Cir.1992) (quoting *Bennis v. Gable,* 823 F.2d 723, 734 (3d Cir.1987) as holding that "punitive damages in § 1983 cases are available where the defendant's have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.' ")). Defendant argues that the acts specifically attributed to defendant Gardiner contain "nothing that could be considered outrageous, and done with a reckless indifference to the interests of others, that would warrant punitive damages." Mot. to Dism. at 50. The court disagrees.

The court concludes that the facts alleged, if proved, could support a claim that this defendant's actions constitute a reckless indifference to Jason's rights, which thereby precludes me from disallowing punitive damages at this juncture. Plaintiffs allege an almost complete failure on the part of Defendant Gardiner to provide Jason with the free appropriate education he is guaranteed under the IDEA. [FN30] Certainly, such inaction, if proved, could support a finding that defendant Gardiner was recklessly indifferent to Jason's rights. Accordingly, the court will permit plaintiffs' request for punitive damages.

> FN30. As articulated previously, they allege that defendant Gardiner "(1) fail[ed] to follow mandated procedural safeguards in the statute; (2) fail[ed] to make decisions about Jason's program through the requisite multi-disciplinary team; (3) fail[ed] to convene an IEP team meeting in accordance with the law; (4) fail[ed] to provide Jason with the necessary services to provide him with a free and appropriate education to which he was entitled; (5) tamper[ed] with Jason's educational records; and (6) fail [ed] to properly expend or appropriate resources derived from IDEA funds for Jason's benefit.

CONCLUSION

For the reasons set forth above, the court will deny in part and grant in part defendants' motion to dismiss plaintiffs' claims for failure to state a claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 17

Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)

(Cite as: 2003 WL 24052009 (E.D.Pa.))

upon which relief may be granted. Specifically, I will grant defendants' motion to dismiss: (1) all claims by the parent plaintiffs, Irene and Gary, on their own behalf, for lack of statutory standing; (2) all claims against defendant Gardiner in his official capacity; (3) the § 504 claim against defendant Gardiner; and (3) their claims under the Pennsylvania Charter School Law against both defendants. The court has also determined that plaintiffs' § 1983 claim may not be premised on either Equal Protection or FERPA. Finally, the court will not permit plaintiffs to pursue punitive damages against defendant PACS.

Therefore, the following claims will remain viable: plaintiffs' claims on behalf of their son Jason: (1) under the IDEA (Count I), against both defendants PACS and Gardiner in his individual capacity; (2) under § 504 (Count II), against PACS only; (3) under § 1983 (Count III), premised on violations of the IDEA and § 504 only, against defendant PACS and defendant Gardiner in his individual capacity. In addition, plaintiffs' request for punitive damages may proceed against defendant Gardiner in his individual capacity.

*15 An appropriate order follows.

Order

AND NOW, this *29th* day of January, 2003, upon consideration of plaintiffs' complaint, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and memorandum of law in support thereof (Doc. # 6), and plaintiffs' memorandum of law in opposition thereto, IT IS HEREBY ORDERED that the motion to dismiss is GRANTED in part and DENIED in part as follows:

1. All claims against defendants PACS and Gardiner, brought on behalf of plaintiffs Irene and Gary B., individually, are DISMISSED.

2. All claims against defendant Gardiner in his official capacity are DISMISSED.

3. With respect to the claims brought by Irene and Gary B., on behalf of their son Jason B.:

a. All claims under § 504 of the Rehabilitation Act (Count II) against defendant Gardiner in his individual capacity are DISMISSED.

b. All claims under § 1983 (Count III) premised on either the Equal Protection Clause or FERPA against defendants PACS and Gardiner in his individual capacity are DISMISSED.

c. All claims under the Pennsylvania Charter School Law (Count IV) against defendants PACS and Gardiner in his individual capacity are DISMISSED.

4. All claims for punitive damages against defendant PACS are DISMISSED.

5. The balance of the motion to dismiss is DENIED.

Not Reported in F.Supp.2d, 2003 WL 24052009 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:02CV01716 (Docket) (Mar. 28, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.