# Westlaw.

Not Reported in F.Supp.2d                                                                                                                Page 1

Not Reported in F.Supp.2d, 1998 WL 961906 (E.D.Pa.), 14 NDLR P 131

**(Cite as: 1998 WL 961906 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Matthew MAGAGNA, et al., Plaintiffs,
v.
SALISBURY TOWNSHIP SCHOOL DISTRICT, et al., Defendants.
No. Civ.A. 98-1033.

Dec. 29, 1998.

Elizabeth J. Kapo, Allentown, PA, for Matthew Magagna, an Adult Individual, Plaintiff.

Elizabeth J. Kapo, (See above), for Diane Magagna, an Adult Individual, Plaintiff.

John E. Freund, III, King Mccardle Herman & Freund, Allentown, PA, for Salisbury Township School District, Defendant.

John E. Freund, III, (See above), for Albert Fields, Individually and in his Capacity as Superintendent of Salisbury Township School District, Defendant.

John E. Freund, III, (See above), for Michael Platt, Individually and in his Capacity as Principal of Salisbury High School, Defendant.

John E. Freund, III, (See above), for Gary Troxell, Individually and in his Capacity as Assistant Principal of Salisbury High School, Defendant.

John E. Freund, III, (See above), for Mary Snyder, Individually and in her Capacity as Director of Special Education for Salisbury Township School District, Defendant.

Scott C. Heckman, Heimbach, Spitko & Heckman, Allentown, PA, for Roberta Yannick, Individually and in her Capacity as Director of the Triad Alternative School, Defendant.

*MEMORANDUM*

GAWTHROP, J.

*1 Before the court in this discrimination action is defendant, Roberta Yanick's motion to dismiss all of plaintiffs' claims against her. Plaintiffs allege that defendants discriminated against Matthew Magagna ("Matthew") because he suffers from Attention Deficit Disorder ("ADD"). They sue under (1) 42 U.S.C. § 1983; (2) the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 790, *et seq;* and (3) the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*

Ms. Yanick argues that since she is not a state actor, the § 1983 claim should be dismissed. She further contends that not only does the Rehabilitation Act not apply to her, but also that the alleged discrimination is insufficient to create a cause of action. She finally alleges that the ADA claim must fail because Matthew was not disparately treated, and because she is not a public entity.

*I. Background*

Ms. Yanick is the coordinator of the Triad Alternative School, an alternative school program operated by Salisbury School District (the "District") in conjunction with two other school districts to provide alternative instruction for special-needs students and for students serving suspensions. The school districts own Triad but do not directly employ Ms. Yanick. Rather, she is paid by St. Luke's Renewal Centers, a non-profit corporation that operates Triad as an independent contractor to the districts.

Matthew's ADD caused the Salisbury School District and Matthew's mother to enter into a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 2

Not Reported in F.Supp.2d, 1998 WL 961906 (E.D.Pa.), 14 NDLR P 131
(Cite as: 1998 WL 961906 (E.D.Pa.))

service agreement which detailed an individualized educational program for Matthew. The school district apparently complied with the agreed-to educational program until January 1997, when the District sent Matthew to Triad to serve a five-day suspension from his regular school, Salisbury High School. At the suggestion of the Salisbury High principal, and after consultation with Matthew's mother, Matthew remained at Triad after the suspension expired. The district did not meet its obligations under Matthew's service agreement while he was at Triad, and, in May 1997, Ms. Yanick expelled Matthew from Triad. That expulsion is claimed to be the culmination of a series of allegedly discriminatory acts against Matthew.

II. Discussion

In deciding a motion to dismiss, one accepts as true all allegations in plaintiffs' pleadings and gives plaintiffs the benefit of every favorable inference that could be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991).

A. Section 1983 Claim

Ms. Yanick argues that she is not a state actor and thus is not liable under § 1983. Section 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when the deprivations occur "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." 42 U.S.C. § 1983. Whether a person "acted under color of state law" for the purposes of § 1983 depends upon whether the alleged deprivation of federal rights is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 97 (3d Cir.1984). "The factual context in which the particular issue arises must be the focus of a state action inquiry." *Sullivan v. Barnett*, 139 F.3d 158, 170 (3d Cir.), cert. granted, sub nom. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 119 S.Ct. 29 (1998). Thus, the determination of whether an individual can be said to have acted under color of state law is a question of fact on the record as it now stands.

*Lopez v. Department of Health Servs.*, 939 F.2d 881, 883 (9th Cir.1991).

*2 When acting in their official capacities, school district authorities are state actors for § 1983 purposes. *Mangold v. Albert Gallatin Area Sch. Dist.*, 438 F.2d 1194 (3d Cir.1971). Because she is not a state employee but, rather, an employee of a private corporation, Ms. Yanick contends that plaintiffs' § 1983 cause of action should be dismissed.

However, it is the nature of one's actions rather than the titular status of one's employer which determines whether § 1983 applies. *Bates v. New York City Transit Auth.*, 721 F.Supp. 1577, 1580 (E.D.N.Y.1989) (collecting cases). Thus, one must go beyond labels and look at the substantive context of Ms. Yanick's employment to determine if her acts were sufficiently related to education to constitute a state function. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); *Davenport v. Saint Mary's Hosp.*, 633 F.Supp. 1228, 1233 (E.D.Pa.1986).

The Third Circuit has not addressed whether a private entity which runs a public school may be liable to that school's students under § 1983. The Tenth Circuit, however, has imposed such liability. *Milonas v. Williams*, 691 F.2d 931 (10th Cir.1982). There, plaintiffs were maladjusted students from public school districts who were sent to a privately owned and operated school. The court concluded that there was a sufficient nexus between the conduct of the school authorities and the state's assignment of students to the school to support a claim of state action against the private school's personnel. *Id.* at 939-40. [FN1]

   FN1. I recognize that just this month the Fifth Circuit dealt in the § 1983 context with the very same school that was adjudicated in *Milonas*. *Taylor v. Charter Medical Corp.*, No. 97-10084, 1998 WL 850525 (5th Cir. Dec. 9, 1998). The court turned aside plaintiff's argument that the *Milonas* holding collaterally estopped defendants from arguing that they were not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 1998 WL 961906 (E.D.Pa.), 14 NDLR P 131
(Cite as: 1998 WL 961906 (E.D.Pa.))

state actors, finding "[t]he facts underlying the two disputes [to be] by no means the same." Specifically, the Fifth Circuit held that since the enrollment decision there had been made not by a school district, but by the student's mother, the private school did not act as a state actor. *Id.* at *2-4.

In the case before this court, of course, Triad is not a private school, and it was the District, not the parent, who chose to send the lad to Triad.

With that reasoning I agree. When a public school assigns a student to a teacher or supervisor who is a nominally private actor, that student can maintain a § 1983 cause of action against that nominally private actor. Otherwise, a public entity could avoid § 1983 liability simply by using private surrogates to do the job for which the public actor is chartered. [FN2] The purpose of § 1983 is to deter state actors from using their authority to deprive individuals of their federally guaranteed rights and to provide a remedy to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992); *Carey v. Piphus*, 435 U.S. 247, 254-257 (1978). Although § 1983 does not provide a cause of action against a private person acting in a truly individual capacity, that section is implicated where the individual acts for the government entity towards governmental ends. To allow intermediaries who are only nominally private to violate federally protected rights would be inconsistent with the aims of § 1983. Just as the Fourth Amendment may not be circumvented by hiring a private eye to do the searching and seizing for the police force, serving as an evidentiary collection agency and a conduit for and to those police, *see State v. von Bulow*, 475 A.2d 995, 1012-14 (R.I.), *cert. denied*, 469 U.S. 875 (1984), neither may § 1983 be surrogately circumvented at bar.

FN2. This is the distinction between this case and *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), upon which Ms. Yanick principally relies. There, the Court held that a regulated private school, whose income was derived primarily from public sources, did not act under color of state law when it discharged employees. *Id.* at 843. The Court concluded that the school's receipt of public funds did not make the school's employment decisions state acts. "[A]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Id.* at 841.

This case, however, is doubly distinguishable from *Rendell-Baker*. First, Triad is not a private school. Second, the plaintiff here is a student, not an employee of the school like the plaintiffs in *Rendell-Baker*. Under *Rendell-Baker*, St. Luke's is not a state actor when it decides to hire or fire teachers, janitors, or bus drivers. However, the teaching of students is the primary mission of the District and of St. Luke's, and where St. Luke's manages or teaches students on behalf of the District, it and its personnel act as state actors. *See Milonas*, 691 F.2d at 940 ("To us, *Rendell-Baker* differs from the present case in at least one important respect. The [*Milonas*] plaintiffs ... are not employees, but students, some of whom have been involuntarily placed in the school by state officials").

The District sent Matthew to Triad, a school it partly owned. The District entrusted St. Luke's, and specifically Ms. Yanick, with Matthew's education and supervision. Ms. Yanick acted at the behest of District authorities when dealing with Matthew. She was thus acting as a state actor, and the § 1983 claim against her must survive this motion.

B. *Rehabilitation Act Claim*

*3 Ms. Yanick challenges the claim under the Rehabilitation Act, arguing, *inter alia*, that since she gets no federal funds, she is beyond the scope of the statute. I agree. Section 504 the Rehabilitation Act applies only to those who receive federal financial assistance. 42 U.S.C. § 794. "Congress impose[d] the obligations of § 504 upon those who are in a position to accept or reject those obligations

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4

Not Reported in F.Supp.2d, 1998 WL 961906 (E.D.Pa.), 14 NDLR P 131

**(Cite as: 1998 WL 961906 (E.D.Pa.))**

as a part of the decision whether or not to 'receive' federal funds." *United States Dep't of Transp. v. Paralyzed Veterans,* 477 U.S. 597, 606 (1986); *see also Lee v. Trustees of Dartmouth College,* 958 F.Supp. 37, 45 (D.N.H.1997); *Lane v. Mary Haven Ctr. of Hope,* 944 F.Supp. 158, 164 (E.D.N.Y.1996).

Plaintiffs do not allege that Ms. Yanick can make any decision as to whether the District accepts or rejects federal financial assistance. Thus, even though the District and perhaps even the Triad program receive federal funds, since she has no say whether the District or Triad will accept those funds, she is beyond the statute's reach. I shall thus dismiss plaintiffs' Rehabilitation Act claim against her.

**C. ADA Claim**

Plaintiffs' complaint does not specify under which title of the ADA they assert liability, although they do aver that Ms. Yanick disparately treated Matthew on behalf of a public entity, implying a claim under Title II of the ADA.

Title II provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or, be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It defines a public entity as public railroads, state and local governments, and "any department, agency, special purpose district, or other instrumentality of the State or States or local government." *Id.* at § 12131.

Ms. Yanick, a private individual and not a "public entity," is entitled to have the ADA claim against her dismissed.

An order follows.

*ORDER*

AND NOW, this 29 th day of December, 1998, upon consideration of Defendant Roberta Yanick's Motion to Dismiss and all responses thereto, the motion is DENIED in part and GRANTED in part as follows:

(1) Defendant's motion to dismiss the § 1983 claim is DENIED;
(2) Defendant's motion to dismiss the Rehabilitation Act claim as to Ms. Yanick is GRANTED; and
(3) Defendant's motion to dismiss the Americans With Disabilities Act claim as to Ms. Yanick is GRANTED.

Not Reported in F.Supp.2d, 1998 WL 961906 (E.D.Pa.), 14 NDLR P 131

**Motions, Pleadings and Filings (Back to top)**

• 2:98cv01033 (Docket) (Feb. 27, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.