# Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1

Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247

**(Cite as: 2003 WL 1493375 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Ronald B. WESLEY, Plaintiff,
v.
Donald T. VAUGHN, et al., Defendants.
**Nos. CIV.A. 99-1228, CIV.A. 99-1229.**

March 19, 2003.

*MEMORANDUM AND ORDER*

J.M. KELLY, J.

*1 Presently before the Court are two motions: (1) a Motion for Permission to File Attached Amended Complaint filed by pro se Plaintiff Ronald B. Wesley ("Plaintiff"), a prisoner currently in custody of the Pennsylvania Department of Corrections; [FN1] and (2) a Motion to Dismiss Original Complaint filed by Defendants Graterford Superintendent Donald T. Vaughn ("Vaughn"), former Corrections Health Care Administrator Donna Hale ("Hale"), Lieutenant Philip Baskin ("Lt. Baskin") and Unit Manager William D. Conrad ("Conrad"), in their individual and official capacities (collectively, the "Commonwealth Defendants"). [FN2]

> FN1. It appears that Plaintiff twice filed the same Motion for Permission to File Attached Amended Complaint, first on September 3, 2002 (Doc. No. 38) and, again, on September 4, 2002 (Doc. No. 39). As both filings are exact photostatic copies, this Court will disregard the motion filed on September 4, 2002 (Doc. No. 39), and caution Plaintiff to be more vigilant in his dealings with this Court.

> FN2. A "Dr. (Unknown) Becken," sometimes referred to as "Dr. Beken," is also named as a defendant in both his individual and official capacities. Counsel for the Commonwealth Defendants, however, indicate that "Dr. Becken" is not a Commonwealth employee and is, therefore, not represented by counsel for the Commonwealth Defendants. (*See* Commw. Defs.' Resp. to Pl.'s Motion for Permission to File an Amended Compl., at 2 n. 2.)

Plaintiff's Original Complaint alleges that the Commonwealth Defendants denied him appropriate medical care and reasonable accommodation of his asthmatic health condition in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134 ("ADA"), 42 U.S.C. § 1983 ("Section 1983") and the Cruel and Unusual Punishment Clause of the Eighth Amendment of United States Constitution. After two successive amendments were dismissed by this Court, by Order dated August 21, 2002, we reinstated Plaintiff's Original Complaint and precluded Plaintiff from filing further amendments without prior permission from this Court. In accordance with that Order, Plaintiff now seeks leave from this Court to amend his Original Complaint with a proposed third Amended Complaint that restates the same facts contained in his Original Complaint, except that Plaintiff now seeks to name Graterford Prison and two "as yet unidentified" L-Unit Supervisors as additional defendants, and to add claims of negligence and medical malpractice against a "Dr. Beken."

The Commonwealth Defendants oppose Plaintiff's request for permission to file his proposed third Amended Complaint and, in a separate motion, request that this Court dismiss Plaintiff's Original Complaint for failure to state viable ADA or Section 1983 claims. For the following reasons, Plaintiff's Motion for Permission to File an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 2
Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247
**(Cite as: 2003 WL 1493375 (E.D.Pa.))**

Amended Complaint is DENIED, and the Commonwealth Defendants' Motion to Dismiss Plaintiff's Original Complaint is GRANTED IN PART and DENIED IN PART.

I. *BACKGROUND*
A. Factual Background

Accepting as true the well-plead facts alleged in the Plaintiff's Original Complaint and all reasonable inferences that can be drawn therefrom, the facts of the case are as follow.

On August 18, 1998, while in disciplinary custody status for a period of 45 days in Graterford's Restricted Housing Unit ("RHU"), [FN3] Plaintiff experienced difficulty breathing due to allegedly inadequate ventilation within the cell. Plaintiff requested that he be taken to the dispensary for treatment and, during his walk to the dispensary, exposure to the fresh air caused the tightness in his chest to subside. Plaintiff was nevertheless taken to the dispensary, where he was examined by a nurse. The nurse later called Lt. Baskin, the RHU supervisor, to request that the door-vent to Plaintiff's cell remain open to help his breathing. Lt. Baskin informed the nurse that a medical doctor would have to make the request, which prompted the nurse to sign Plaintiff up for "sick call" to see the doctor.

>    FN3. On August 9, 1998, Plaintiff received a misconduct report and was placed in disciplinary custody status in the RHU two days later.

On August 20, 1998, Plaintiff was visited by "Dr. Becken," a medical doctor. During that visit, Plaintiff asked Dr. Becken to authorize that his door-vent remain open and also requested that his allergy medication be refilled. Dr. Becken stated that he would refer the matter to Hale, the Correctional Health Care Administrator. [FN4]

>    FN4. On August 21, 1998, Plaintiff submitted a five-page formal written request to Hale to address this matter. (Pl.'s Ex. B.)

*2 On August 26, 1998, Plaintiff again complained of inadequate ventilation in his cell and requested to be taken to the dispensary for treatment of his breathing difficulty. While at the dispensary, Plaintiff was placed on a ventilation device for approximately 20 minutes, and was informed by the nurse that Dr. Becken did not reorder his allergy medication. Plaintiff asked to be signed up for sick call. [FN5]

>    FN5. On August 26, 1998, Plaintiff submitted another formal written request to Hale informing her of the doctor's refusal to reorder his allergy medication. (Pl.'s Ex. C.) Hale's response to Plaintiff's request stated:
>    On 8/20/98 you were seen on sick call $2 charge. It is the physician's decision to renew or not renew medications. On 8/31/98 you were seen by Dr. Drizen in clinic and your CTM [allergy medication] was ordered for 60 days. You were not charged for sick call or medications on 8/20/98.
>    (*Id.*) Plaintiff alleges that he did not receive Hale's response until October 22, 1998, but concedes that his allergy medication was reordered by "Dr. Drizen," a pulmonary specialist who regularly treats Plaintiff's asthma condition.

On August 27, 1998, Dr. Becken visited Plaintiff in his cell and informed Plaintiff that he did not reorder his allergy medication. On August 30, 1998, Plaintiff submitted an Official Inmate Grievance to prison officials concerning the doctor's refusal to order his allergy medication. (Pl.'s Ex. D.)

On August 31, 1998, unidentified prison officials moved "Inmate Morris," a heavy smoker, into Plaintiff's cell. That day, Plaintiff submitted a four-page request to Vaughn requesting that he take action to provide better cell ventilation, but failed to raise a specific concern regarding the smoking cellmate. (Pl.'s Ex. E.) On September 3, 1998, as a result of Plaintiff's informal complaints, Inmate Morris was removed from Plaintiff's cell.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 3
Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247
(Cite as: 2003 WL 1493375 (E.D.Pa.))

On September 10, 1998, Plaintiff was moved from the RHU to D-block, a general population cellblock. While on D-block, Plaintiff was randomly assigned to a cell occupied by "Inmate Harris," a heavy smoker. Plaintiff objected to Unit Manager Conrad about this assignment, but was told that he would face a misconduct for refusing to obey an order, and Plaintiff moved in. [FN6] On September 25, 1998, Plaintiff visited the sick call doctor, who issued a medical clearance form restricting prison officials from placing a smoker in a cell with Plaintiff. About this time, Inmate Harris agreed that he would no longer smoke in the cell. On September 30, 1998, Plaintiff received a pass from Conrad instructing Plaintiff to move to a cell with a non-smoker, but Plaintiff informed Conrad that he wanted to remain with Inmate Harris. Regardless, Plaintiff was moved. On October 2, 1998, Plaintiff was permitted to move back into the cell with Inmate Harris.

> FN6. On September 14, 1998, Plaintiff submitted a formal written request to Conrad, Hale and Vaughn objecting to his random cell assignment with a smoker. (Pl.'s Ex. G.) In response, Hale stated that:
> The health care administrator does not make cell assignments, security does. There is no documentation in your medical record that you should be in a single cell or be in a non-smoking cell. A physician in clinic or sick call could make that recommendation.
> (Id.) Plaintiff contends that he received Hale's response on September 24, 1998.

B. Procedural Background [FN7]

> FN7. The procedural history of this case is lengthy. Plaintiff filed two separate civil suits, Civ. A. No. 99-1228 and Civ. A. No. 99-1229, alleging civil rights and ADA violations by numerous prison officials. Since both actions sought remedy for alleged unlawful conduct in connection with Plaintiff's asthmatic health condition and involved common legal questions, they were consolidated for all purposes in this Court's April 3, 2001 Order. (See Memorandum and Order dtd. 4/3/01.)

On March 10, 1999, Plaintiff filed his Original Complaint in this matter. Almost three years later, on February 6, 2002, Plaintiff first sought to amend his Original Complaint. This Court dismissed his first Amended Complaint without prejudice on June 4, 2002 because it was a "lengthy and rambling pleading consisting of 125 pages of narrative" and numerous exhibits, and failed to comply with the "short and plain statement" requirement of Rule 8(a) of the Federal Rules of Civil Procedure. *Wesley v. Vaughn, et al.*, Civ. A. No. 99-1228, 99-1229, 2002 U.S. Dist. LEXIS 10273, at *4-*5 (E.D. Pa. June 4, 2002).

On July 25, 2002, Plaintiff filed a second Amended Complaint that was over 40 pages long and that contained a voluminous set of exhibits, which this Court also dismissed on August 20, 2002 as failing to comply with the "short and plain statement" requirement of Rule 8(a). *See Wesley v. Vaughn, et al.*, Civ. A. No. 99-1228, 99-1229, 2002 U.S. Dist. LEXIS 15765, at *2 (E.D.Pa. Aug. 20, 2002). This Court determined that Plaintiff improperly asserted new allegations of, *inter alia*, medical malpractice and negligence, and improperly joined 17 additional defendants in violation of Rule 21 of the Federal Rules of Civil Procedure. *See id.* at *2 n. 2. This Court's Order also precluded Plaintiff from filing further amendments without first obtaining this Court's permission and, accordingly, reinstated Plaintiff's Original Complaint. *See id.* at *3.

*3 Presently, Plaintiff seeks permission from this Court to file a proposed third Amended Complaint, which includes Graterford Prison ("Graterford") and two "as yet unidentified" L-Unit supervisors, in their individual capacities only, as additional defendants, and alleges additional claims of negligence and medical malpractice against "Dr. Beken." Also before the Court is the Commonwealth Defendants' Motion to Dismiss Plaintiff's Original Complaint for failure to state ADA and Section 1983 claims. Both motions will be addressed in this memorandum.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247

(Cite as: 2003 WL 1493375 (E.D.Pa.))

Page 4

## II. PLAINTIFF'S MOTION FOR PERMISSION TO FILE ATTACHED AMENDED COMPLAINT

### A. Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to file an amended complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The United States Supreme Court, however, has instructed that several grounds may justify the denial of leave to amend, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Third Circuit has "interpreted these factors to mean that prejudice to the non-moving party is the touchstone for the denial of an amendment," and "[i]n the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1413-14 (3d Cir.1993) (citation and internal quotations omitted). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted, the same standard of legal sufficiency as applies under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000).

### B. Discussion

*4 Plaintiff's proposed third Amended Complaint seeks to name Graterford and two "as yet unidentified" L-Unit supervisors, in their individual capacities only, as parties to his ADA and Section 1983 claims. Plaintiff also seeks to include additional state law claims of negligence and medical malpractice against "Dr. Beken." In response, the Commonwealth Defendants contend that Plaintiff's proposed amendments are futile and made with undue delay. For the following reasons, Plaintiff's request for permission to file the proposed third Amended Complaint is denied.

#### 1. Graterford

First, Plaintiff's proposed amendment to include Graterford as a party to his Section 1983 and ADA claims is futile. It is well-settled that neither a state nor its agencies is a "person" as that term is used in Section 1983 and, hence, not subject to suit. *See Hafer v. Melo,* 502 U.S. 21, 25-27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Curtis v. Everette,* 489 F.2d 516, 521 (3d Cir.1973). Additionally, it is clear that the Eleventh Amendment bars civil rights suits against departments or agencies of the state having no existence apart from the state. *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981). Since Graterford is a state prison falling outside of Section 1983's coverage and is part of the Department of Corrections, which department has no existence apart from the Commonwealth, Plaintiff's proposed amendment seeking to include Graterford in his Section 1983 claim is denied. *See* 71 Pa. Stat. §§ 61, 66 (authorizing Department of Corrections to perform Commonwealth's administrative work).

The United States Supreme Court has determined that "[s]tate prisons fall squarely within the statutory definition of 'public entity'" under Title II of the ADA. *Pennsylvania Department of Corrections v. Yeskey,* 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). Nevertheless, Plaintiff's proposed amendment to name Graterford specifically as a defendant in his ADA claim is unnecessary as Plaintiff has already named Graterford's Superintendent as a defendant to his ADA claim. [FN8]

> FN8. Relying on a recent Supreme Court decision, the Commonwealth Defendants argue that Plaintiff's proposed amendment to include Graterford is futile as the Eleventh Amendment bars ADA claims against a State. *See Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). This Court disagrees with the Commonwealth Defendants' conclusory

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 5
Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247
**(Cite as: 2003 WL 1493375 (E.D.Pa.))**

assessment of that decision. Since the Commonwealth Defendants raise this argument again in support of their Motion to Dismiss, we discuss the Supreme Court's *Garrett* decision in greater detail below.

2. "As Yet Unidentified" L-Unit Supervisors

Second, Plaintiff's amendment to include claims against two "as yet unidentified" L-Unit Supervisors in their individual capacities is both prohibited by the ADA and time-barred by Section 1983's two-year statute of limitations.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" is defined as "any state or local government ... any department, agency, special purpose district, or other instrumentality of a State or States or local government...." 42 U.S.C. § 12131(1). The "as yet unidentified" L-Unit Supervisors, acting in their individual capacities, are not public entities within the meaning of the ADA and, thus, cannot be proper defendants under Title II of the ADA. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir.2002) (acknowledging that individuals are not liable under Title II of the ADA); *see also, Magagna v. Salisbury Township Sch. Dist.*, Civ. A. No. 98-1033, 1998 U.S. Dist. LEXIS 20625, at *9-*10 (E.D.Pa. Dec. 29, 1998) (dismissing private individual from Title II ADA claim). Thus, Plaintiff fails to state a Title II ADA claim against these two "as yet unidentified" L-Unit Supervisors, in their individual capacities only, and Plaintiff's amendment must be denied as futile.

As a matter of federal law, Section 1983 claims are subject to the state statute of limitations for personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Springfield Township School Dist. v. Knoll*, 471 U.S. 288, 289, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985) (per curiam); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir.1989). In Pennsylvania, a two-year statute of limitations applies to personal injury actions and, accordingly, to a Section 1983 claim. *See* 42 Pa. Cons.Stat. § 5524; *see also, Bougher*, 882 F.2d at 78. Since Plaintiff's amendment seeks to include two "as yet unidentified" L-Unit Supervisors four years after the incidents complained of in his Original Complaint, his Section 1983 claims as to these two unidentified parties are clearly beyond the two-year statute of limitations. Plaintiff fails to explain why he could not include these parties in his Original Complaint and his delayed attempt to name them now as additional defendants must fail.

3. State Law Medical Malpractice and Negligence Claims

*5 Finally, Plaintiff's amendment to include new state law claims of medical malpractice and negligence are both futile and prejudicial to "Dr. Beken." Since counsel for the Commonwealth Defendants have disclaimed representation of, and there has been no entry of counsel's appearance for, Dr. Beken, it is unclear to this Court whether Dr. Beken ever received notice sufficient to warrant a relation back analysis under Federal Rule of Civil Procedure 15. Nevertheless, four years have passed since the events complained of in Plaintiff's Original Complaint, and Plaintiff neither presents new facts nor explains his failure to aver these pendent state law claims in his Original Complaint. For these reasons, Plaintiff's delayed attempt to include these state law claims against "Dr. Beken" must be denied.

III. *COMMONWEALTH DEFENDANTS' MOTION TO DISMISS ORIGINAL COMPLAINT*
A. Standard of Review

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). A complaint may be dismissed for failure to state a claim upon which relief may be granted if the facts pleaded, and reasonable inferences therefrom, are legally insufficient to support the relief requested. *Commonwealth ex. rel. Zimmerman v. Pepsico, Inc.*,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 6
Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247
(Cite as: 2003 WL 1493375 (E.D.Pa.))

836 F.2d 173, 179 (3d Cir.1988). We therefore accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom. *Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985). We are not, however, required to accept legal conclusions either alleged or inferred from the pleaded facts. *Kost,* 1 F.3d at 183. In considering whether to dismiss a complaint, courts may consider those facts alleged in the complaint as well as matters of public record, orders, facts in the record and exhibits attached to a complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir.1994). In addition to these expansive parameters, the threshold a plaintiff must meet to satisfy pleading requirements is exceedingly low, and a court may dismiss a complaint only if the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

B. ADA Claim

*6 The Commonwealth Defendants petition this Court to dismiss Plaintiff's claim under Title II of the ADA for the following reasons: (a) the Eleventh Amendment of the United States Constitution bars such a claim; (b) individuals cannot be sued under the ADA; and (c) as a matter of law, the Commonwealth Defendants' alleged actions did not violate the ADA. As discussed below, the Commonwealth Defendants' Motion to Dismiss as to Plaintiff's ADA claim is granted in part and denied in part.

1. Eleventh Amendment

The Commonwealth Defendants argue that Plaintiff's Title II ADA claim is barred by the grant of sovereign immunity contained in the Eleventh Amendment. [FN9] In support of their argument, the Commonwealth Defendants rely on a recent Supreme Court decision for the proposition that it is now settled that Congress did not validly abrogate the States' immunity from ADA claims, thereby barring Title II claims against state entities. *See Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866. While the Commonwealth Defendants raise an important issue relating to federalism and state sovereignty, we disagree with the Commonwealth Defendants' conclusory assessment of that case. We note that the Supreme Court in *Garrett* addressed only the specific issue of whether Title I of the ADA was appropriately enacted legislation under Section 5 of the Fourteenth Amendment to abrogate the States' Eleventh Amendment immunity. [FN10] *See id.* at 360. Significantly, the *Garrett* Court expressly reserved consideration of whether Title II was appropriately enacted to permit suits against the States, and dismissed that issue. *See id.* at 360 n. 1. Since the Supreme Court's decision in *Garrett,* some of the Circuit Courts of Appeal have addressed whether Title II is a valid abrogation of States' immunity, and reached various results. [FN11] The Third Circuit, however, has not squarely addressed this issue. *See Koslow v. Commonwealth of Pennsylvania, et al.,* 302 F.3d 161, 166 n. 3 (3d Cir.2002) (reserving consideration of whether Congress validly abrogated States' Eleventh Amendment immunity in enacting Title II of ADA since issue not on appeal).

FN9. The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against the United Stated by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Despite the Eleventh Amendment's plain language, however, the Supreme Court has broadened its reach to bar suits by citizens of a state against his own state. *See Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

FN10. Title I of the ADA, 42 U.S.C. §§ 12111-12117, relates to employment discrimination and is not the basis of Plaintiff's claim in the instant action.

FN11. The Fifth and Tenth Circuits have held that the States should remain immune from suits under Title II for the same reasons that Title I suits cannot be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 7

Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247
(Cite as: 2003 WL 1493375 (E.D.Pa.))

maintained. *Reickenbacker v. Foster,* 274 F.3d 974, 981-83 (5th Cir.2001); *Thompson v. Colorado,* 258 F.3d 1241 (10th Cir.), *amended by* 278 F.3d 1020, 1034 (10th Cir.2001), *cert. denied,* 535 U.S. 1077, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002). The Fourth Circuit held that Congress did not validly abrogate the Eleventh Amendment in enacting Part A of Title II, 42 U.S.C. §§ 12131-12134. *Wessel v. Glendening,* 306 F.3d 203, 215 (4th Cir.2002).

In contrast, the Ninth Circuit has adhered to its pre-*Garrett* holding and held that Title II is an effective exercise of Congress' Section 5 power. *Hason v. Med. Bd.,* 279 F.3d 1167, 1170-71 (9th Cir.2002) (reaffirming *Dare v. California,* 191 F.3d 1167, 1173-76 (9th Cir.1999), *cert. denied,* 531 U.S. 1190, 121 S.Ct. 1187, 149 L.Ed.2d 103 (2001)).

The Second and Sixth Circuits have held that Title II abrogates state immunity from private suit in some cases, but not in others. *Garcia v. S.U.N.Y. Health Sciences Center,* 280 F.3d 98, 111 (2d Cir.2001) (holding that Title II validly authorizes a private suit against the state only when a "Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability"); *Popovich v. Cuyahoga County Court of Common Pleas,* 276 F.3d 808 (6th Cir.2002) (en banc) (holding that Title II does not abrogate immunity as enforcement of the Equal Protection Clause, but abrogates immunity on specific facts as enforcement of Due Process Clause), *cert. denied,* 123 S.Ct. 72 (2002).

Notably, however, the Supreme Court has held that the plain language of Title II of the ADA contemplates its application to state prisons. *Yeskey,* 524 U.S. at 213. While there is no clear pronouncement from the Supreme Court to support the Commonwealth Defendants' position that Title II is not a valid abrogation of the State's Eleventh Amendment immunity and, indeed, Supreme Court precedent support a position to the contrary, the Commonwealth Defendants' Motion to Dismiss Plaintiff's Title II ADA claim is denied.

2. Individual Liability Under the ADA

The Court finds, however, that the Commonwealth Defendants acting in their individual capacities must be dismissed from Plaintiff's Title II ADA claim. As discussed above, individuals acting in their individual capacities are not public entities within the meaning of the ADA. *See Emerson,* 296 F.3d at 189; *see also, Magagna,* 1998 U.S. Dist. LEXIS 20625 at *9-*10. Thus, the Commonwealth Defendants, in their individual capacities, cannot be liable under Title II of the ADA, and their Motion to Dismiss is granted as to this issue.

3. Sufficiency of ADA Claim

*7 Finally, the Commonwealth Defendants argue that Plaintiff's ADA claim against them in their official capacities must be dismissed because their conduct does not rise to a violation of the ADA. The Commonwealth Defendants contend that they did not exclude Plaintiff from activities, deny him benefits or otherwise discriminate against him solely by reason of his disability.

To proceed on a Title II ADA claim, a plaintiff must demonstrate that: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. *Bowers v. NCAA,* 118 F.Supp.2d 494, 511 (E.D.Pa.2000). The ADA defines "qualified individual with a disability," in relevant part, as:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 8
Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247
**(Cite as: 2003 WL 1493375 (E.D.Pa.))**

The Commonwealth Defendants do not dispute that Plaintiff, who has an asthma health condition, is a qualified individual with a disability. As to the remaining elements of Plaintiff's Title II claim, on a motion to dismiss, this Court must view well-plead facts set forth in Plaintiff's Original Complaint in the light most favorable to the non-moving party. Plaintiff alleges in his Original Complaint that he was denied the benefits of a program of a public entity, specifically, access to adequate ventilation while in Graterford's RHU and assignment to a non-smoking prison cell by reason of his asthmatic health condition. Since Plaintiff's Original Complaint states facts sufficient to withstand a motion to dismiss, the Commonwealth Defendants' request must be denied.

C. Section 1983 Claim

1. Commonwealth Defendants Acting in Official Capacities

The Commonwealth Defendants contend that Plaintiff fails to state a viable Section 1983 claim grounded on the Cruel and Unusual Punishment clause of the Eighth Amendment [FN12] because: (1) the Commonwealth Defendants, acting in their official capacities, are not "persons" subject to liability; and (2) as a matter of law, the Commonwealth Defendants' alleged failure or refusal to intervene in his medical care or override the decisions of medical doctors does not amount to deliberate indifference to his serious medical needs. In response, Plaintiff concedes that his Section 1983 claims against the Commonwealth Defendants in their official capacities should be dismissed and, accordingly, the Court will grant their Motion as to Plaintiff's Section 1983 claims against the Commonwealth Defendants in their official capacities. [FN13]

> FN12. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.
>
> FN13. Section 1983 only authorizes suits against "persons" acting under color of state law. *Hafer,* 502 U.S. at 26. The Supreme Court has recognized that when a plaintiff sues a state agent in his or her official capacity for damages the suit is not against the "person," but, rather, against the official's office. *Id.* at 27. Therefore, state officials acting in their official capacities are outside the class of persons subject to liability under Section 1983. *Id.* at 22-23.

2. Commonwealth Defendants Acting in Individual Capacities

**\*8** Moreover, the Court dismisses Plaintiff's Section 1983 claim in its entirety for his failure to state an actionable violation of his Eighth Amendment rights, and the remaining Section 1983 claim against the Commonwealth Defendants, in their individual capacities, is dismissed.

A person can be individually liable under Section 1983 so long as he or she had personal involvement in the alleged wrongdoing. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Personal involvement exists where the defendant participated in or had personal knowledge of and acquiesced to the deprivation of federally guaranteed rights. *Id.* It is well-settled that there is no respondeat superior liability under Section 1983. *Durmer v. O'Carroll,* 991 F.2d 64, 69 n. 14 (3d Cir.1993).

Plaintiff's Section 1983 claim is grounded on the Eighth Amendment, which obligates the state to provide for the basic human needs, including medical care and reasonable safety, of those incarcerated. *See DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 199-200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). An Eighth Amendment violation occurs when a prison official is deliberately indifferent to a substantial risk of serious harm to an inmate. *See Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir.1997). For an inmate to prevail on such a claim, he must prove that he is incarcerated under conditions posing a substantial risk of harm and that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247

(Cite as: 2003 WL 1493375 (E.D.Pa.))

Page 9

the official knew of and disregarded an excessive risk to the inmate's health and safety. *See Farmer,* 511 U.S. at 834-38; *Hamilton,* 117 F.3d at 746.

Incarcerated prisoners are guaranteed access to reasonable medical care and may hold prison officials liable if the medical care is deficient:

> Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed.

*Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citation and internal quotations omitted). To state a cognizable claim, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Deliberate indifference may exist in a variety of circumstances, including where "knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care" or where "short of absolute denial ... necessary medical treatment is ... delayed for non-medical reasons," or where "prison authorities prevent an inmate from receiving recommended treatment." *Monmouth County Correctional Institute Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987) (internal quotations omitted). A prison official is not liable merely because he demonstrates an "ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Rather, the plaintiff must demonstrate that the prison official acted or failed to act in spite of his or her knowledge of a substantial risk of serious harm to the plaintiff. *Farmer,* 511 U.S. at 842.

Taking Plaintiff's well-plead averments of fact as true, as this Court is required to do, Plaintiff nevertheless fails to allege practices amounting to an actionable Eighth Amendment violation. Plaintiff concedes that Commonwealth Defendants Baskin and Hale advised him that only a medical doctor could order the medical restrictions he wanted, and that his request not to be celled with a smoker was granted by a medical doctor. Plaintiff also concedes that a medical doctor prescribed the allergy prescription he requested. Furthermore, Plaintiff does not aver that prison officials failed to comply with necessary medical treatment as prescribed by a medical doctor and, thus, we cannot find that the Commonwealth Defendants exhibited deliberate indifference to support Plaintiff's allegations of an Eighth Amendment violation. Accordingly, Plaintiff's Section 1983 claim is dismissed in its entirety.

D. Injunctive Relief

*9 The Commonwealth Defendants also contend that Plaintiff lacks standing to seek the injunctive relief he requests since Plaintiff fails to allege that there exists a real and immediate threat he will again be harmed. This Court disagrees, and finds that Plaintiff has alleged facts sufficient to establish standing for injunctive relief.

A party invoking federal jurisdiction bears the burden of establishing the elements of standing. *See O'Brien v. Werner Bus Lines, Inc.,* Civ. A. No. 94-6862, 1996 U.S. Dist. LEXIS 2119 (E.D.Pa. Feb. 27, 1996). To establish standing, a plaintiff must show that: (1) he has suffered an "injury in fact;" (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). When a plaintiff seeks redress for a past wrong, a case or controversy exists only if accompanied by present adverse effects. *Lyons v. City of Los Angeles,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

While it appears that Plaintiff's claim for injunctive relief is moot, as his asthmatic episodes occurred during his now-completed sentence of confinement to the RHU, it remains possible that Plaintiff will be confined to the RHU in the future, and without adequate ventilation such that he again suffers injury in the form of asthma attacks. [FN14] (*See*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 10

Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247
**(Cite as: 2003 WL 1493375 (E.D.Pa.))**

Pl.'s Ex. F.) Thus, under the test for standing, Plaintiff sufficiently demonstrates that his injury is causally related to Graterford's practice of confining prisoners who have received a misconduct to the RHU, and a favorable decision enjoining the Commonwealth Defendants from inappropriately ventilating the RHU cell would alleviate the threat of injury to Plaintiff. Thus, taking Plaintiff's allegations and reasonable inferences therefrom as true, this Court finds that Plaintiff has standing to seek injunctive relief.

> FN14. Although Plaintiff does not expressly raise this concern in his Original Complaint, this Court can reasonably infer that Plaintiff's claim, while appearing moot, presents a situation that is capable of repetition yet evading review, a narrow exception to mootness doctrine. *County of Morris v. Nationalist Movement*, 273 F.3d 527, 534 (3d Cir.2001). This exception will rescue a moot controversy only if "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Spencer v. Kenma*, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *see also Doe v. Delie*, 257 F.3d 309, 313 (3d Cir.2001). There is a reasonable expectation that Plaintiff would be subject to the same action should he receive another misconduct and again find himself confined to the RHU.

### IV. CONCLUSION

*10 In sum, the Court finds that Plaintiff states a claim pursuant to Title II of the ADA against the Commonwealth Defendants in their official capacities only. Additionally, while Plaintiff concedes that his Section 1983 claim for alleged Eighth Amendment violations against the Commonwealth Defendants in their official capacities should be dismissed, this Court further finds that Plaintiff fails to state a Section 1983 claim for Eighth Amendment violations against the Commonwealth Defendants in their individual capacities. Finally, this Court finds that Plaintiff has standing to seek injunctive relief against the Commonwealth Defendants.

Accordingly, Plaintiff's Motion for Permission to File Attached Amended Complaint is DENIED, and the Commonwealth Defendants' Motion to Dismiss Original Complaint is GRANTED IN PART and DENIED IN PART.

### ORDER

AND NOW, this --- day of March, 2003, in consideration of the Motion for Permission to File Attached Amended Complaint filed by pro se Plaintiff Ronald B. Wesley ("Plaintiff") (Doc. Nos. 38 and 39) and the Response thereto by Defendants Graterford Superintendent Donald T. Vaughn, former Corrections Health Care Administrator Donna Hale, Lieutenant Philip Baskin, and Unit Manager William D. Conrad, in their individual and official capacities (collectively, the "Commonwealth Defendants") (Doc. No. 41), it is ORDERED that Plaintiff's Motion for Permission to File Attached Amended Complaint is DENIED.

In consideration of the Commonwealth Defendants' Motion to Dismiss Original Complaint (Doc. No. 40) and Plaintiff's Response thereto (Doc. No. 42), it is ORDERED that the Commonwealth Defendants' Motion to Dismiss Original Complaint is GRANTED IN PART and DENIED IN PART.

It is further ordered that the Commonwealth Defendants' Motion is GRANTED to the extent that Plaintiff's claim under the Americans with Disabilities Act ("ADA") as to the Commonwealth Defendants, in their individual capacities, and Plaintiff's entire claim under Section 1983 are DISMISSED. Plaintiff's ADA claim against the Commonwealth Defendants in their official capacities remains before this Court.

Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247

**Motions, Pleadings and Filings (Back to top)**

• 2:99cv01228 (Docket) (Mar. 10, 1999)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 11
Not Reported in F.Supp.2d, 2003 WL 1493375 (E.D.Pa.), 25 NDLR P 247
**(Cite as: 2003 WL 1493375 (E.D.Pa.))**

• 2:99cv01229 (Docket) (Mar. 10, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.